## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 21-60125-Civ-Scola/Goodman

------------------------------------------------------x

JIANGMEN BENLIDA
PRINTED CIRCUIT CO., LTD.,

Plaintiff/Counterclaim Defendant,

      -against-

CIRCUITRONIX, LLC,

Defendant/Counterclaim Plaintiff.

------------------------------------------------------x

# Notice of Appeal

Notice is hereby given that plaintiff/counterclaim defendant Jiangmen Benlida Printed

Circuit Co., Ltd. appeals to the United States Court of Appeals for the Eleventh Circuit, from

each and every aspect of the following judgment and orders entered in the United States District

Court, Southern District of Florida:

| | |
|---|---|
| ECF No. 294 | Final Judgment dated December 1, 2023. (Exhibit A). |
| ECF No. 221 | Order dated September 25, 2023, granting summary judgment, dismissing plaintiff Jiangmen Benlida Printed Circuit Co., Ltd.'s claims against defendant Circuitronix, and directing that the case proceed to trial on defendant/counterclaim plaintiff Circuitronix, LLC's counterclaims. (Exhibit B). |
| ECF No. 293 | Order dated December 1, 2023, denying plaintiff Jiangmen Benlida Printed Circuit Co., Ltd.'s motion for reconsideration of the order granting summary judgment. (Exhibit C). |

Please take further notice that plaintiff/counterclaim defendant Jiangmen Benlida Printed

Circuit Co., Ltd. appeals from each and every aspect of the final judgment, including all adverse

orders and evidentiary rulings issued during the entire proceeding, and during the trial of the

case, such including all adverse orders and evidentiary rulings on motions *in limine*, motions to preclude, evidentiary objections made prior to and during the trial, and objections to requests to charge and denials of plaintiff/counterclaim defendant Jiangmen Benlida Printed Circuit Co., Ltd. requests to charge, and all other adverse orders and rulings as, upon review of the full record and transcript, may become apparent to have been to plaintiff/counterclaim defendant Jiangmen Benlida Printed Circuit Co., Ltd.'s prejudice or to otherwise constitute reversible error, whether as a matter of law, or under an abuse-of-discretion standard, or otherwise.

Dated: New York, New York
        December 18, 2023

     **MAZZOLA LINDSTROM LLP**

     Richard E. Lerner
     Jean-Claude Mazzola
     *Counsel for appellant / plaintiff / counterclaim*
     *defendant Jiangmen Benlida Printed Circuit Co., Ltd.*
     1350 Avenue of the Americas, Second Floor
     New York, New York 10019
     917-584-4864
     646.216.8300
     richard@mazzolalindstrom.com
     jeanclaude@mazzolalindstrom.com

To: **(Via ECF)**

   PODHURST ORSECK, P.A.
   One S.E. 3rd Avenue, Suite 2300
   Miami, Florida 33131

   Attn: Stephen F. Rosenthal srosenthal@podhurst.com
      Matthew P. Weinshall mweinshall@podhurst.com
      Christina H. Martinez cmartinez@podhurst.com

United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Jiangmen Benlida Printed Circuit Co., Ltd., Counter-Defendant, ) ) ) | |
| v. ) ) | Civil Action No. 21-60125-Civ-Scola |
| Circuitronix, LLC, Counter-Plaintiff. ) ) ) | |

## **Final Judgment**

After the Court entered summary judgment in Circuitronix, LLC's favor, against Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida"), on Benlida's claims against Circuitronix (ECF No. 221), the court held a jury trial as to Circuitronix's remaining counterclaim against Benlida. After a six-day trial, the jury rendered its verdict in in this case, on October 24, 2023, in favor of Circuitronix, as Counter-Plaintiff, in the amount of $7,585,847, against Benlida, as Counter-Defendant. (ECF No. 273.) As required by Federal Rule of Civil Procedure 58, the Court now enters judgment as follows:

1. Judgment is entered in favor of Circuitronix, LLC, and against Jiangmen Benlida Printed Circuit Co., Ltd., as to Benlida's claims against Circuitronix.
2. Judgment is entered in favor of Circuitronix, LLC, and against Jiangmen Benlida Printed Circuit Co., Ltd., as to Circuitronix's breach-of-contract counterclaim in the amount of **$7,585,847**, for which sum let execution issue.

Interest shall accrue as provided for under the appropriate legal authorities. The Court directs the Clerk to **close** this case.

**Done and ordered** in Miami, Florida, on December 1, 2023.

_____
Robert N. Scola, Jr.
United States District Judge

United States District Court
for the
Southern District of Florida

| | |
|---|---|
| Jiangmen Benlida Printed Circuit Co., Ltd., Plaintiff, | ) ) ) |
| v. | ) )  Civil Action No. 21-60125-Civ-Scola |
| Circuitronix, LLC, Defendant. | ) ) ) |

## Order Granting Motion for Summary Judgment

Plaintiff Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida") complains Defendant Circuitronix, LLC, owes it over $13 million for unpaid invoices for printed circuit boards Circuitronix ordered and which Benlida delivered. (3rd Am. Compl. ("Compl." or the "complaint"), ECF No. 26.)[1] The complaint encompasses two counts: the first for breach of contract; and the second for account stated. (*Id.* ¶¶ 438–57.) After the Court granted in part and denied in part Circuitronix's motion to dismiss, Circuitronix filed an answer as well as a counterclaim (ECF No. 34). Circuitronix now seeks summary judgment, as to both counts on Benlida's complaint, arguing, among other points, that (1) nearly half of the 419 identified invoices belong to another company, Circuitronix (Hong Kong) Ltd. ("CTX-HK"); and (2) as to the remaining invoices, that were issued to *Circuitronix*, Circuitronix paid Benlida for all of them. (Def.'s Mot., ECF No. 184-1.) In response, Benlida counters that (1) CTX-HK placed its orders on Circuitronix's behalf; and (2) Benlida applied Circuitronix's payments to older unpaid invoices, not mentioned in its complaint. (Pl.'s Resp., ECF No. 188.) Circuitronix has timely replied (Def.'s Reply, ECF No. 193), both parties have submitted statements of facts (Def.'s Stmt. of Facts, ECF No. 184-2; Pl.'s Stmt. of Facts, ECF No. 189), and Circuitronix's motion is now ripe for review. For the reasons that follow, the Court **grants** Circuitronix's motion. (**ECF No. 184-1**.)

### 1. Background[2]

Circuitronix is a domestic limited liability company, operating out of Florida. (Pl.'s Stmt. ¶ 1; Def.'s Stmt. ¶ 1.) Circuitronix says it specializes in the manufacture and distribution of printed circuit boards used in a variety of

---

[1] The Court previously dismissed Plaintiff ROK Printed Circuit Co., Ltd. ("ROK"), based on its failure to mediate prior to filing suit, as required by the parties' agreement. (Order, ECF No. 31, 3.)

[2] Unless indicated otherwise, the facts presented below are undisputed.

consumer products. (Def.'s Mot. at 2.) CTX-HK, although a Circuitronix affiliate, is a separate company, headquartered in Hong Kong. (Pl.'s Stmt. ¶ 3; Def.'s Stmt. ¶ 3 (denying only that the companies are "independently run and operated" but not that they are separate entities).) Benlida is a Chinese limited liability company that manufactures and sells printed circuit boards. (Def.'s Stmt. ¶ 4.)

 Since at least 2012, Benlida (along with ROK, its affiliate and former co-plaintiff) were engaged in a business relationship with Circuitronix, involving the manufacture, sale, processing, and distribution of printed circuit boards. (*Id.* ¶ 6 (defining the memorialization of that relationship as the "Manufacturing Agreement").) In 2014, the parties looped CTX-HK into their Manufacturing Agreement, as CTX-HK became involved in part of the post-production processing of the boards. (*Id.* ¶ 8.) In doing so, Circuitronix authorized CTX-HK to place orders with Benlida on Circuitronix's behalf and agreed to "assume all CTX-HK debts due on those orders." (*Id.* (cleaned up) (defining the memorialization of that arrangement as the "Business Authorization").)

 A few years later, however, in 2016, the parties entered into another agreement, the nature of which the parties partly dispute (the "Letter Agreement"). Circuitronix says that, through the Letter Agreement, the parties agreed to formally add CTX-HK directly into the 2012 manufacturing agreement. (*Id.* ¶ 9.) Benlida, however, denies this and instead maintains that the Letter Agreement merely provided that CTX-HK was to be included in negotiations aimed at developing a new manufacturing agreement (which never came to fruition). (Pl.'s Stmt. ¶ 9; Pl.'s Resp. at 16.) Importantly, the Letter Agreement provided that the Manufacturing Agreement and the Letter Agreement would "supersede any and all prior agreements or understandings between [Circuitronix] and [Benlida and ROK]"—thus superseding the Business Authorization in which Circuitronix assumed responsibility for certain of CTX-HK's orders. (Def.'s Stmt. ¶ 10.) While Benlida does not dispute that the Letter Agreement says this, it maintains that Circuitronix was nonetheless still responsible, under Florida law and as CTX-HK's principal, for paying CTX-HK's debts. (Pl.'s Stmt. ¶ 10.)

 Regardless, in 2018, Benlida asked Circuitronix to sign a new agreement which would have required it to make payments for CTX-HK's orders. (Def.'s Stmt. ¶ 11.) Circuitronix, however, declined. (*Id.* ¶ 12.) And, over a year later, Benlida's own accounting records reflected that, as of December 31, 2019, Circuitronix owed Benlida "USD 0.00" and that, actually, Circuitronix was due "USD 75,684.83" from Benlida. (*Id.* ¶ 13.) While Benlida says that it denies

this, its response to this fact is both procedurally as well as substantively defective and, therefore, the Court deems this fact undisputed.[3]

In any event, just over a year beyond the date referenced in that Audit Form, in January 2021, Benlida initiated this case, seeking over $13.5 million in damages, claiming that Circuitronix—and Circuitronix alone—failed to pay for hundreds of invoices issued in 2018 and 2019. (Pl.'s Stmt. ¶ 14.) Because much of the salient controversy raised in the parties' summary-judgment briefing centers on whether Benlida pleaded allegations that support the arguments it now raises in response to Circuitronix's motion, the Court reviews the contours of the complaint in detail.

Despite the complaint's being 51-pages long, its bare-bones substantive allegations are straightforward, confined within a narrow scope of facts.[4] According to the complaint, Circuitronix ordered circuit boards from Benlida (and ROK) in 2018 and 2019; the boards were delivered to and accepted by Circuitronix; but Circuitronix did not pay for them.[5] (Compl. ¶¶ 8, 11, 12.) In addition, Benlida references a December 2016 agreement, memorialized in October 2017, through which "the parties agreed to increases of 4% and 5% with respect to the . . . invoices." (*Id.* ¶ 433.) Benlida says that, under this agreement, there is an additional $2,115,927.57 owed, on top of the

---

[3] Circuitronix's record support for this fact is an audit confirmation form, prepared by an auditor engaged by Benlida. (Audit Form, ECF No. 177-1, 34.) In marking this fact "Denied," without any elaboration, Benlida cites to an "accompanying declaration of Wu Yukun," with no pincite or even any indication of where on the docket that declaration might be found. (Pl's Stmt. ¶ 13.) As a starting point, Benlida's citation is not in compliance with Local Rule 56.1(b)(1)(B)'s requirement that each statement be "supported by specific, pinpoint references to particular parts of record material." Indeed, "[w]hen a material fact requires specific evidentiary support, a general citation to an exhibit without a page number or pincite (*e.g.*, "Smith Affidavit" or "Jones Deposition" or "Exhibit A") is non-compliant." L.R. 56.1(b)(1)(B). Based on this defect alone, the Court deems Circuitronix's statement regarding the Audit Form undisputed. *Jones v. Unity Behavioral Health, LLC*, 20-14265, 2021 WL 5495578, at *4 (11th Cir. Nov. 23, 2021) (finding the trial court "authorized to deem admitted those facts" that the plaintiff failed to properly support "by specific, pinpoint references to particular parts of record material"). Additionally, though, Wu's declaration does not, in any event, controvert that Benlida's own accounting form showed that, if anything, Benlida owed Circuitronix in excess of $75,000 as of the end of 2019. Wu's declaration instead provides only that this Audit Form was accompanied by another form, showing that CTX-HK owed $12,154,164.25. (Wu Decl. ¶ 3, 187, 1.) But Wu's explanation, as Benlida's chief financial officer, that the Circuitronix Audit Form was "an error" because he viewed "the two companies as one and the same" does nothing to controvert either the existence or authenticity of the Audit Form or the information conveyed by it. (*Id.* ¶¶ 5–6.) In other words, Wu's legal conclusion, about the relationship between Circuitronix and CTX-HK, has no bearing on the facts conveyed by the Audit Form.

[4] Pages six through forty-seven are comprised of 419 paragraphs, listing the invoices Benlida alleges Circuitronix has not paid.

[5] Benlida clarifies now that some of the invoices were actually paid off, reducing the total sought in the complaint by $230,744.78. (Pl.'s Resp. at 15 n. 8.)

$11,539,408.36 originally invoiced amounts, resulting in a total liability, as set forth in the complaint, of $13,655,335.93, plus interest and costs. (*Id.* ¶¶ 436–37.)

As to its breach-of-contract claim specifically, Benlida says that, in exchange for the boards, which Benlida delivered to Circuitronix's designated place of delivery, "[Circuitronix] agreed to pay [Benlida]". (*Id.* ¶¶ 439–40.) Benlida also notes that Circuitronix received and accepted the shipments without any complaints or protestations. (*Id.* ¶ 441.) According to Benlida, it timely demanded payment but Circuitronix (1) did not "make full payment" for the goods and (2) instead complained that Benlida and ROK owed Circuitronix "a total of $6,561,044.21, citing an extra-contractual and unconsented-to lead time penalty and citing an Excel spreadsheet of purported itemizations." (*Id.* ¶ 444.)

In support of its other cause of action—account stated—Benlida adds that Circuitronix "expressly agreed" to purchase the boards and pay for the amounts specified in the invoices. (*Id.* ¶¶ 447–48.) According to Benlida, the invoices sent to Circuitronix "reflect the dollar amounts agreed to by Circuitronix for the purchase of the goods" which Circuitronix accepted without protest. (*Id.* ¶¶ 451–52.) Further, says Benlida, Circuitronix did not object to the invoiced amounts but nonetheless "failed to remit payment." (*Id.* ¶¶ 454–55.)

In contrast, much of Benlida's opposition to Circuitronix's motion for summary judgment is based on theories that (1) Circuitronix is responsible for goods that CTX-HK ordered and (2) Benlida applied Circuitronix's payments, submitted in response to the listed invoices, to old debts, incurred by both Circuitronix as well as CTX-HK well before the timeframe outlined in the complaint.

### 2. Legal Standard

Under Federal Rule of Civil Procedure 56, "summary judgment is appropriate where there 'is no genuine issue as to any material fact' and the moving party is 'entitled to a judgment as a matter of law.'" *See Alabama v. N. Carolina*, 130 S. Ct. 2295, 2308 (2010) (quoting Fed. R. Civ. P. 56(a)). At the summary judgment stage, the Court must view the evidence in the light most favorable to the nonmovant, *see Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158-59 (1970), and it may not weigh conflicting evidence to resolve disputed factual issues, *see Skop v. City of Atlanta, Ga.*, 485 F.3d 1130, 1140 (11th Cir. 2007). Yet, the existence of some factual disputes between litigants will not defeat an otherwise properly grounded summary judgment motion; "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v.*

*Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where the record as a whole could not lead a rational trier of fact to find in the nonmovant's favor, there is no genuine issue of fact for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[O]nce the moving party has met its burden of showing a basis for the motion, the nonmoving party is required to 'go beyond the pleadings' and present competent evidence designating 'specific facts showing that there is a genuine issue for trial.'" *United States v. $183,791.00*, 391 F. App'x 791, 794 (11th Cir. 2010) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)). Thus, the nonmoving party "may not rest upon the mere allegations or denials of his pleadings, but [instead] must set forth specific facts showing that there is a genuine issue for trial." *See Anderson*, 477 U.S. at 248 (citation omitted). "Likewise, a [nonmovant] cannot defeat summary judgment by relying upon conclusory assertions." *Maddox-Jones v. Bd. of Regents of Univ. of Ga.*, 2011 WL 5903518, at *2 (11th Cir. Nov. 22, 2011). Mere "metaphysical doubt as to the material facts" will not suffice. *Matsushita*, 475 U.S. at 586.

### 3. Analysis

Circuitronix's motion divides the invoices listed in Benlida's complaint into two tranches: one that it says reflects orders placed by CTX-HK and the other that it acknowledges it placed itself. As to the first tranche, Circuitronix says CTX-HK, and not Circuitronix, is responsible for those orders. And as to the second, Circuitronix says it paid Benlida in full (or even more than in full).

In response, as to the first tranche of invoices, Benlida does not deny that those orders were placed by CTX-HK. But, says Benlida, the evidence shows that CTX-HK, in placing those orders, was acting either as Circuitronix's agent or as Circuitronix's alter ego, contending that Circuitronix and CTX-HK are actually "one and the same company." (Pl.'s Resp. at 8.) As to the second tranche, Benlida does not deny that Circuitronix sent payments to Benlida but, instead, explains that Benlida applied those payments to older—rather than current—debts, owed by both Circuitronix and CTX-HK. (*Id.* at 17–24.) As Circuitronix points out, Benlida neglected to mention any of these theories, or any facts supporting them, in its complaint. The Court agrees with Circuitronix that this failure is fatal to Benlida's ability to ward off summary judgment.

Notably, nowhere among the complaint's allegations is there any indication that Benlida is seeking to hold Circuitronix liable under an agency or alter-ego theory nor is there any hint that Benlida applied all of Circuitronix's payments to old debts, belonging to both Circuitronix and CTX-HK, that were incurred prior to the time frame specifically delineated in the complaint. Instead, Benlida's entire complaint focuses on goods ordered by

Circuitronix alone, in 2018 and 2019, and for which Circuitronix failed to remit any payment. There is no mention of (1) another entity who was purchasing goods on Circuitronix's behalf or (2) any payments that were contemporaneously received from Circuitronix but which Benlida used to apply to older debts—not only belonging to Circuitronix but to another company entirely. The threshold issue then, before the Court, is whether Benlida's theories of liability are properly before the Court. Because none of the complaint's factual allegations support, or even directly imply support, for Benlida's new theories, the Court concludes, as more fully explained below, they are not properly raised.

Although Rule 8(a) sets forth "a liberal pleading standard for civil complaints," that standard, importantly, does not afford plaintiffs the "opportunity to raise new claims at the summary judgment stage." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004). This "simplified notice pleading standard relies on liberal discovery rules and summary judgment motions to define disputed facts and issues and to dispose of unmeritorious claims." *Id.* (cleaned up). But that liberality depends on a plaintiff's sufficiently framing its claims at the inception of litigation. *See id.* at 1315 (recognizing that "[e]fficiency and judicial economy require that the liberal pleading standards under [the United States Supreme Court's decision in] *Swierkiewicz* and Rule 8(a) are inapplicable after discovery has commenced" and that a plaintiff cannot amend its complaint after the fact, "through argument in a brief opposing summary judgment").[6] The issue boils down to the expectations that spring from a complaint: the complaint should sufficiently put an opposing party—as well as the Court—on notice of, at a minimum, the grounds supporting the plaintiff's claims without the defendant or the Court having to "infer all possible claims that could arise out of facts set forth in the complaint." *Gilmour*, 382 F.3d at 1315; *see also Cacciamani v. Target Corp.*, 622 F. App'x 800, 804 (11th Cir. 2015) ("The district court correctly held that [the plaintiff's] new responsive theory at the summary-judgment stage was too little, too late. It is the complaint that must give the defendant notice of what the plaintiff complains."); *Moise v. Miami-Dade Cnty.*, 17-20993-CIV, 2018 WL 4445111, at *12 (S.D. Fla. Aug. 22, 2018) (Lenard, J.) ("Federal courts also routinely hold that a plaintiff may not assert a new theory supporting an existing claim in response to a motion for summary judgment.").

---

[6] It is worth noting that "that *Gilmour* was decided before the Supreme Court decided [*Twombly* and *Iqbal*], effectively promulgating a stricter pleading standard than that of *Swierkiewicz*." *San Francisco Residence Club, Inc. v. Baswell-Guthrie*, 897 F. Supp. 2d 1122, 1201 (N.D. Ala. 2012).

The Court's fuller evaluation of each of Benlida's new theories of liability follows.

### A. The complaint provides no hint that Benlida's theory of relief rests on Circuitronix's liability through some form of vicarious liability for debts incurred by CTX-HK.

Rather than address Circuitronix's argument head on, regarding Benlida's failure to plead facts supporting its agency or alter-ego theories of liability, Benlida focuses most of its argument on those portions of the record that it says support the inference of both theories. Benlida's response to Circuitronix's pleading concerns are confined primarily to one paragraph of its twenty-page response. Within that paragraph, Benlida says it has never shifted its focus, always basing its case on the allegations in its complaint. (Pl.'s Resp. at 15.) In support, Benlida points to (1) its allegations that "Circuitronix ordered circuit boards from plaintiffs"; (2) that nearly half of the invoices listed in the complaint are "*invoiced to CTX-HK*"; and (3) its allegations that Circuitronix "expressly agreed to pay the amounts specified in the invoices." (*Id.* (emphasis in original).) Without elaboration, Benlida then contends "[t]hese are still the bases of recovery today" and that there has been "no change of position" and "no surprise." (*Id.*) Then, without citing any legal authority or connecting its theory to the facts it identifies, Benlida announces, "By operation of principal-agent law, [Circuitronix] is liable for the goods purchased by CTX-HK, and by the language of [two agreements], it is liable as well." (*Id.*) Without more, the Court is not persuaded.

First, Benlida's reliance on its allegations that "Circuitronix ordered circuit boards from plaintiffs" and that Circuitronix "expressly agreed to pay the amounts specified in the invoices" actually undercuts its position that it has been proceeding under an agency or alter-ego theory all along. Both allegations attribute the debt to orders placed by Circuitronix itself, going so far as to describe Circuitronix as having "*expressly*" agreed to pay for the orders. Those allegations are diametrically opposed to allegations of agency or alter ego. Indeed, as Benlida itself points out, to establish liability based on the actions of an agent, a plaintiff would have to show: "(1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent." *Goldschmidt v. Holman*, 571 So. 2d 422, 424 (Fla. 1990).[7] Benlida fails to point to any allegations in the complaint that would support any one of these

---

[7] There appears to be no dispute that Florida law applies to this litigation based on a governing-law provision in the parties' agreement. (*See, e.g.*, Pl.'s Resp. at 20.)

elements, never mind all three.[8] Nor does the complaint come even close to alleging a basis for piercing CTX-HK's corporate veil.[9]

Further, Benlida's reliance on representations it made in response to Circuitronix's motion to dismiss, based in part on Rule 19, is also unavailing. In that briefing, Benlida sought to ward off Circuitronix's claim that CTX-HK was either a necessary or indispensable party by characterizing Circuitronix's responsibility for CTX-HK's orders as undisputed and uncontested. In other words, according to Benlida, CTX-HK's status as either an agent or Circuitronix's alter ego was simply undeniable, or at least undenied, and therefore not at issue in this case. And, since there was no mention whatsoever of CTX-HK in Benlida's complaint, the Court found itself hard pressed to conclude that CTX-HK had "an interest in *this* litigation," at least as it was framed in Benlida's pleading. (Order, ECF No. 31, 5 (emphasis in original).) Between the absence of a single allegation about CTX-HK—never mind about CTX-HK's status as an agent or alter ego—in the complaint and Benlida's insisting that CTX-HK had absolutely "no interest in the outcome of the case" (Pl.'s Resp. to Mot. to Dismiss, ECF No. 28, 9), Benlida adeptly avoided the jurisdictional implications of CTX-HK's being joined in this case. Certainly, had Benlida properly pleaded the facts upon which its agency and alter-ego theories are based, CTX-HK's interest in this litigation would have been laid bare: a finding in Circuitronix's favor as to the agency or alter-ego claims would necessarily have at least some bearing on CTX-HK's own potential liability for the debts listed in the complaint. But, in trying to avoid the jurisdictional implications of including or joining CTX-HK in this case, by not pleading any agency or alter-ego theories in its complaint and claiming any question in that regard to be a nonissue, Benlida cannot raise the point now. *See Ewing v. Carnival Corp.*, 19-20264-CIV, 2020 WL 3839699, at *16 (S.D. Fla. July 7, 2020) (Goodman, Mag. J.) ("[The plaintiff] may be correct that [the defendant] knew of [the plaintiff's] agency theory by the time [the defendant] submitted its summary judgment memoranda, but that does not alter the reality that the

---

[8] To the extent Benlida might seek to rely on a theory of apparent agency, its complaint supplies no allegations in that regard either. *See Franza v. Royal Caribbean Cruises, Ltd.*, 772 F.3d 1225, 1252 (11th Cir. 2014) ("[A]pparent agency liability requires finding three essential elements: first, a representation by the principal to the plaintiff, which, second, causes the plaintiff reasonably to believe that the alleged agent is authorized to act for the principal's benefit, and which, third, induces the plaintiff's detrimental, justifiable reliance upon the appearance of agency.").

[9] Under Florida law, in order "to pierce the corporate veil and hold a parent corporation liable for its subsidiary's actions," a plaintiff must "demonstrate first, that the subsidiary was a mere instrumentality of the parent, and second, that the parent engaged in improper conduct through its organization or use of the subsidiary." *SEB S.A. v. Sunbeam Corp.*, 148 F. App'x 774, 800 (11th Cir. 2005) (cleaned up).

*Complaint* does not expressly invoke agency or vicarious liability.") (emphasis in original).

Accordingly, even if Benlida was able to point to genuine issues of material fact supporting its vicarious liability theories (as it attempted to do in the first twelve pages of its opposition), its efforts would be futile. The parties do not dispute that 170 of the invoices identified in Benlida's complaint reflect goods ordered by CTX-HK. But the complaint never mentions CTX-HK itself at all. While the codes Benlida uses to identify these invoices include the letters "HK," that alone falls far short of signaling the full blown vicarious-liability-based theories Benlida now promotes. There is not a single allegation in the complaint indicating that Circuitronix assumed any of CTX-HK's debts or that CTX-HK was acting as Circuitronix's agent or alter ego. And, tellingly, even at this late juncture, Benlida itself is not even sure which of those two theories of liability it ultimately seeks to apply. (*See, e.g.*, Pl.'s Resp. at 5 (describing CTX-HK as either "an agent of CTX-US or a de facto constituent part of [Circuitronix]"); 8 (contending that "CTX-HK functioned either as [Circuitronix's] agent when it placed orders, or the two entities functioned as one and the same company"); 9 (similar); 14 (maintaining that "[Circuitronix] and CTX-HK functioned as, respectively principal and agent, or as different sales offices of the same business organization").)

While a complaint certainly need not set forth "the precise theory advanced by the plaintiff," "the federal notice pleading standard" requires that it at least provide "allegations as to every material point necessary to sustain a claim on any legal theory" the plaintiff seeks to pursue. *Ray v. Comm'r, Alabama Dep't of Corr.*, 915 F.3d 689, 697 n. 3 (11th Cir. 2019). Since Benlida's complaint supplies neither any notice nor factual allegations that could be construed as advancing its vicarious liability theories, the Court rejects those theories when presented, belatedly, in response to Circuitronix's motion for summary judgment. *See Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006) (rejecting new theory of liability raised in summary-judgment briefing where the complaint had provided "no notice" of it "whatsoever"). Accordingly, the Court grants summary judgment in Circuitronix's favor as to the invoices identified in the complaint which the parties agree were all issued to CTX-HK. (Def.'s Stmt. ¶ 19; Pl.'s Stmt. ¶ 19.)

**B. The complaint provides no hint that Benlida's theory of relief rests on its application of Circuitronix's invoice payments to debts incurred either outside the time period of the complaint or by CTX-HK.**

This leaves for resolution only the second tranche of invoices, issued to Circuitronix. As to these invoices, the parties do not dispute that Benlida shipped $10,058,195.91 worth of goods to Circuitronix between December 2018 and July 2020 and that Circuitronix paid Benlida $12,240,285.87 within that timeframe. (Def.'s Stmt. ¶¶ 20–22; Pl.'s Stmt. ¶¶ 20–22.) But, says Benlida, none of these payments were applied to the relevant invoices in the complaint; instead, Benlida applied these payments "to the oldest invoices on its books, in accordance with Florida law" (Pl.'s Stmt. ¶ 23), using what the parties call a first-in/first-out accounting practice ("FIFO"). In support of its contention, in disputing Circuitronix's statement of facts, Benlida cites generally to 60 pages of deposition excerpts and various exhibits thereto. (*Id.*)

Among Circuitronix's arguments in support of its entitlement to summary judgment on the second tranche of invoices, similar to its argument as to the first tranche, is that nothing in the complaint provides notice to Circuitronix that Benlida applied Circuitronix's 2018 and 2019 payments to older invoices, reflecting amounts Circuitronix and CTX-HK had failed to pay in the past. (Def.'s Mot. at 13–14; Def.'s Reply at 7–8.)

Notably, once again, Benlida does not offer any real counter to Circuitronix's position that Benlida failed to plead the accounting grounds on which it now relies to support its claims. Instead, Benlida simply insists, without offering any analysis, that "Benlida clearly notes in the [complaint] that [Circuitronix] has unpaid invoices from 2018[] and 2019" and that, by listing each invoice number and its corresponding amount, "the only methodology required" to evaluate Benlida's claim is "simple math." (Pl.'s Resp. at 20–21.) Similarly, without citing any legal authority or specific allegations, Benlida summarily submits that is has "adequately alleged the elements of [an] action for an account stated, thereby putting [Circuitronix] on notice that it was seeking recovery of a balance due on a running account, for an aggregate total of $13,655,335.93." (*Id.* at 21.) Without explaining how, Benlida also argues that the mere fact that its complaint identifies the invoices as unpaid should have alerted Circuitronix that FIFO practices were being applied. (Pl.'s Stmt. ¶ 26.) To Benlida, Circuitronix's pleading argument is nothing more than a "red herring" (Pl.'s Resp. at 20), apparently unworthy of serious response. The Court disagrees.

As a starting point, Benlida relies on a quote from a recent order issued by this Court where the Court pointed out that, although a pleader need not

"allege a 'specific fact' to cover every element or to plead 'with precision' each element of a claim," it must nonetheless set forth "either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory." (Pl.'s Resp. at 22 (quoting *Haynes v. Carnival Corp.*, 20-21921-CIV, 2020 WL 7711642, at *2 (S.D. Fla. Dec. 29, 2020) (Scola, J.)). Benlida appears to focus only on the first part of that quote rather than the latter, which echoes longstanding caselaw explaining that "the purpose of Rule 8's liberal pleading guidelines is to 'give the defendant fair notice of what the claim is and the grounds upon which it rests.'" *Cacciamani*, 622 F. App'x at 804 (quoting *Twombly,* 550 U.S. at 555). Here, Benlida's claims are for breach of contract and account stated.  As Benlida itself acknowledges, the only grounds proffered in the complaint to support these claims are that (1) Circuitronix ordered goods; (2) Benlida delivered those goods to Circuitronix; and (3) Circuitronix did not pay for those goods. That is, the sole focus of liability set forth in Benlida's barebones complaint is that Circuitronix failed pay for the goods that Benlida invoiced Circuitronix for.

The problem with Benlida's reliance on Circuitronix's failure to pay, as the only ground upon which Circuitronix's liability is premised, is that the undisputed facts show, as set forth in detail above, that Circuitronix actually *did* pay Benlida for the invoiced amounts. Accordingly, the only way for Benlida to establish Circuitronix's liability is to introduce new grounds. These grounds, as Benlida now describes them, are that the payments Circuitronix remitted on the identified invoices were applied to *older*, unpaid invoices. That is, while the Court agrees with Benlida, that the theory of liability is not new—failure to pay for goods ordered and received—the grounds upon which that theory now rests are. In other words, Circuitronix is not liable because it failed to pay the invoiced amounts; rather, Benlida's real claim, revealed in recently disclosed discovery and in response to Circuitronix's motion for summary judgment, is that Circuitronix is liable because Circuitronix had an outstanding debt due and so Benlida applied all of Circuitronix's invoice payments to those debts rather than the invoiced amounts listed in the complaint.

Further, not only does Benlida now claim that Circuitronix's payments were applied to older debts belonging to Circuitronix, but that Circuitronix's payments were also applied to older debts belonging to CTX-HK. (*E.g.*, Pl.'s Resp. at 22.) This only compounds the flaws in Benlida's argument: its theory of liability rests not only on an unpleaded first-in/first-out accounting practice, but on an application of that policy to debts that the Court has already found were not properly alleged as belonging to Circuitronix in the first place.

As Circuitronix points out, Benlida's allegations that it relied on a first-in/first out accounting methodology, without more, is not even implied, never

mind explicitly referenced, anywhere in Benlida's complaint. The mere listing of the unpaid invoices does not, as Benlida posits, provide notice that its claims rest on the application of FIFO accounting practices. While that is perhaps a basis Circuitronix could have possibly inferred, assuming the validity of Benlida's new allegations, the liberal pleading standards that apply simply do not require defendants to "infer all possible claims that could arise out of facts set forth in the complaint." *Gilmour*, 382 F.3d at 1315. Instead, "the proper procedure" would have been for Benlida to seek leave to amend its complaint to assert the new grounds. *Id.* But, without such an amendment, Circuitronix would have no way of anticipating (1) that Benlida's theory of liability rested on Benlida's having applied the $12,240,285.87 that Circuitronix issued in payments, on invoices received in in 2018 and 2109, to older, unspecified amounts Benlida claimed were unpaid; (2) that some of those allegedly unpaid amounts, to which Benlida applied Circuitronix's payments, were incurred by CTX-HK; or (3) the relevance of debts incurred by both companies prior to the timeframe specifically defined by Benlida's allegations. Benlida does not even acknowledge, in its complaint, the more than $12 million paid by Circuitronix. Nor does it allege that any invoices generally, never mind specifically identified invoices, issued outside the timeframe delineated in the complaint, were left unpaid. (*See, e.g.*, Def.'s Mot. at 15 (noting that "Benlida apparently has no documentation showing which older debts it applied CTX's current payments to"); Pl.'s Stmt. ¶ 23 (referring to payments from Circuitronix as being applied to, generally, the "oldest invoices on its books").) In sum, Benlida's position that, on the one hand, the invoices listed in the complaint "are the only invoices at issue" is simply incompatible with its newly proffered theory that Circuitronix's payments were applied to invoices that are not mentioned anywhere in the complaint or otherwise specifically identified anywhere in the record. Accordingly, the Court grants summary judgment in Circuitronix's favor as to the second tranche of invoices as well.

### 4. Conclusion

Because the parties do not dispute that Circuitronix owed, at most, $10,058,195.91 on the invoices listed in the complaint (attributable to goods ordered by Circuitronix) (Def.'s Stmt. ¶ 21; Pl.'s Stmt. ¶ 21); and because the parties do not dispute that Circuitronix remitted at least that amount to Benlida (Def.'s Stmt. ¶ 22; Pl.'s Stmt. ¶ 22; Pl.'s Am. Interrog. Resp., ECF No. 177-1, 54 (reflecting a payment total of $12,240,285.87 from Circuitronix to Benlida from the date of the earliest invoice listed in the complaint through July 1, 2020), the Court finds no genuinely disputed issue of material fact as to

Circuitronix's liability on either of Benlida's claims.[10] Accordingly, and for the reasons more fully set forth above, the Court **grants** Circuitronix's motion for summary judgment (**ECF No. 184**) as to both counts of Benlida's complaint. Because the Court agrees with Circuitronix that Benlida improperly raised new theories and grounds for relief in its opposition briefing, essentially sandbagging Circuitronix's ability to defend itself in this case, it declines to address Circuitronix's additional arguments that (1) there are no genuinely disputed issues of material fact regarding those new theories and grounds (based on either Circuitronix's vicarious liability for CTX-HK's debts or Benlida's first-in/first-out accounting policy); or (2) Benlida should be sanctioned for its late disclosure of its alleged accounting methodology.

Because the Court's order disposes of Benlida's claims against Circuitronix, only Circuitronix's counterclaims against Benlida remain for resolution at trial. As this has substantially narrowed the scope of the upcoming trial, the Court orders the parties, by noon on **September 29, 2023**, to (1) file an amended joint pre-trial stipulation, excising those aspects of the stipulation that have been mooted by this order; (2) file amended witness and exhibit lists (each exhibit must be individually listed, not consolidated with other exhibits); and (3) submit a joint report that identifies which aspects of the parties' motions in limine or to strike (ECF Nos. 196, 197, 198) are now obviated. The parties may not, without prior leave of Court, use this as an opportunity to expand on any of their presentations or briefing. Additionally, in light of what appears to be the parties' ongoing business relationship, combined with the resolution of a substantial aspect of the parties' dispute, the Court orders the parties to revisit the possibility of a reconciliation prior to trial and to file a status report on or before noon on **October 2, 2023**, notifying the Court of the results of that conference and whether the parties are able to further narrow any of their remaining differences.

**Done and ordered** in Miami, Florida, on September 25, 2023.

_____
Robert N. Scola, Jr.
United States District Judge

---

[10] As noted above, it is also undisputed that, as of December 31, 2019, Benlida's own accounting "reflected that [Circuitronix] owed Benlida 'USD 0.00' and that [Circuitronix] was due USD 75,684.83." (Def.'s Stmt. ¶ 13.)

United States District Court
for the
Southern District of Florida

| | | |
|---|---|---|
| Jiangmen Benlida Printed Circuit Co., Ltd., Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 21-60125-Civ-Scola |
| Circuitronix, LLC, Defendant. | ) ) | |

### Order Denying Both Benlida's Motion for Reconsideration and Circuitronix's Motion for Judgment as a Matter of Law

The dispute in this case centers around tens of millions of dollars' worth of printed circuit boards, manufactured by Plaintiff and Counter-Defendant Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida") which it sold and distributed to Defendant and Counter-Plaintiff Circuitronix, LLC. Benlida complains that Circuitronix owes it over $13 million for unpaid invoices for printed circuit boards which Benlida delivered. (3rd Am. Compl. ("Compl." or the "complaint"), ECF No. 26.) Circuitronix, however, in its counterclaim, maintains, to the contrary, that it overpaid Benlida, by over $10 million, and seeks to recover that overpayment. (Ans. and Countercl., ECF No. 34.) The Court granted summary judgment in Circuitronix's favor with respect to the entirety of Benlida's complaint (SJ Order, ECF No. 221) and thereafter held a six-day jury trial on Circuitronix's claims against Benlida. After deliberating, the jury unanimously found that Benlida had breached the parties' contract, awarding $7,585,847 in damages to Circuitronix. (Verdict, ECF No. 273.) Five days into the trial, Benlida moved for reconsideration of the Court's order granting summary judgment. (Benlida's Mot., ECF No. 267.) At the close of all the evidence, Circuitronix moved orally for partial judgment as a matter of law, also filing a written motion (Circuitronix's Mot., ECF No. 269), which the Court reserved ruling on. Both motions have now been fully briefed and are ripe for the Court's determination (Circuitronix's Resp., ECF No. 288; Benlida's Reply, ECF No. 291; Benlida's Resp., ECF No. 290; Circuitronix's Reply, ECF No. 292.) After a careful review of the record, the briefing, and the relevant legal authorities, the Court **denies** Benlida's motion for reconsideration (**ECF No. 267**) and **denies in part and denies as moot in part** Circuitronix's motion for judgment as a matter of law (**ECF No. 269**).

**1. Benlida fails to establish that reconsideration is warranted.**

"[I]n the interests of finality and conservation of scarce judicial resources, reconsideration of an order is an extraordinary remedy that is employed sparingly." *Gipson v. Mattox*, 511 F. Supp. 2d 1182, 1185 (S.D. Ala. 2007). A motion to reconsider is "appropriate where, for example, the Court has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." *Z.K. Marine Inc. v. M/V Archigetis*, 808 F. Supp. 1561, 1563 (S.D. Fla. 1992) (Hoeveler, J.) (citation omitted). "Simply put, a party may move for reconsideration only when one of the following has occurred: an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or prevent manifest injustice." *Longcrier v. HL-A Co.*, 595 F. Supp. 2d 1218, 1247 (S.D. Ala. 2008) (quoting *Vidinliev v. Carey Int'l, Inc.*, No. CIV.A. 107CV762-TWT, 2008 WL 5459335, at *1 (N.D. Ga. Dec. 15, 2008)). However, "[s]uch problems rarely arise and the motion to reconsider should be equally rare." *Z.K. Marine Inc.*, 808 F. Supp. at 1563. Certainly, if any of these situations arise, a court has broad discretion to reconsider a previously issued order. Absent any of these conditions, as here, however, a motion to reconsider is not ordinarily warranted.

Benlida submits that reconsideration is warranted in order "to correct a clear error and thereby prevent a manifest injustice." (Benlida's Mot. at 2.) According to Benlida, the Court's clear error manifested in several ways: (1) by the Court's failure to apprehend that Benlida's complaint put Circuitronix on notice that Benlida sought recovery from Circuitronix for circuit boards ordered by another company, Circuitronix (Hong Kong) Ltd. ("CTX-HK") (*id.* at 2–3); (2) by the Court's improperly requiring Benlida to plead its agency theory (*id.* at 3–8); (3) by the Court's not affording Benlida an opportunity to cure its violation of Local Rule 56.1(b)(1)(B) (*id.* at 8–9); (4) by the Court's disregarding the declaration of one of Benlida's witnesses (*id.* at 9–10); and (5) by the Court's improperly focusing on Benlida's allegation that Circuitronix "expressly agreed to pay the amounts specified in the invoices" (*id.* at 12–13). While Benlida has made its disagreement with the Court's order granting Circuitronix's motion for summary judgment abundantly clear, it has nonetheless failed to satisfy its heavy burden of establishing that reconsideration is warranted.

As an initial matter, Benlida's grievances either rehash arguments that have already been raised and addressed or present new arguments or facts that could have been presented in response to the motion for summary judgment but weren't. Neither avenue paves a path towards reconsideration. *See Z.K. Marine*, 808 F. Supp. at 1563 ("A motion for reconsideration should

not be used as a vehicle to present authorities available at the time of the first decision or to reiterate arguments previously made.").

Furthermore, Benlida's arguments all fail on their merits as well. First, Benlida appears to misapprehend the distinction between presenting "enough facts to state a claim to relief that is plausible on its face," on the one hand, and a merely "wholly conclusory statement of claim," on the other. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 561, 570 (2007). Thus, Benlida's reliance on Circuitronix's principal's deposition testimony indicating his awareness that Benlida sought to recoup payment from Circuitronix for orders placed by CTX-HK misses the point. Simply setting forth "the mere possibility of loss causation," does not come even close to providing a defendant with "fair notice of the *grounds* for entitlement to relief." *Id.* at 557, 561 (emphasis added). Accordingly, Circuitronix's awareness that Benlida was suing it for orders placed by CTX-HK does nothing to remedy Benlida's pleading deficiency.

Second, and relatedly, Benlida's repeated insistence that the Court improperly required Benlida to plead a specific theory is misplaced. That is a mischaracterization of the Court's order. As the Court explained, Benlida's complaint is deficient because it "supplies neither any notice nor factual allegations that could be construed as advancing its vicarious liability theories." (SJ Order at 9.) This is not a hyper-technical application of the law or the imposition of a heightened pleading standard, as Benlida protests. Rather, it is a straightforward and unremarkable application of basic federal pleading standards: "While legal conclusions can provide the framework of a complaint, they must be supported by *factual allegations*." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (emphasis added).[1]

Next, Benlida complains about the Court's assessment of an affidavit submitted by one of its auditors. First, Benlida takes issue with the Court's "excessively formalistic" (Benlida's Mot. at 9) insistence that Benlida comply with the Court's local rule requiring parties to supply "specific, pinpoint references to particular parts of record material," L. R. 56.1(b)(1)(B)), when disputing an opposing party's statement of fact. Second, Benlida complains the Court improperly made a credibility determination when it disregarded the affidavit. The Court is not persuaded as to either point. To begin with, Benlida cites no legal authority, and the Court is aware of none, that allows for an exception to Rule 56.1 where "there is no mystery as to where in the docket the . . . declaration was." (Benlida's Mot. at 8.) Nor does Benlida cite to any authority supporting its theory that a Court is required to afford a

---

[1] Perhaps muddying the waters here, Benlida's complaint not only lacks factual allegations, but it also fails to even include any conclusory allegations regarding the vicarious-liability theories it advanced in response to Circuitronix's motion for summary judgment.

noncompliant party the opportunity to cure its defective statement of material facts. Further, the Court did not make a credibility determination as to the declaration. Instead, it disregarded the auditor's statement to the extent his statement encompassed a legal conclusion—that Circuitronix was responsible for CTX-HK's debt. *See Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir. 1991) ("The evidence presented [in opposing a motion for summary judgment] cannot consist of conclusory allegations or legal conclusions.").

Finally, Benlida's position that it was clear error for the Court to focus on Benlida's allegation that Circuitronix "expressly agreed" to pay the amounts specified in the invoices is meritless. To begin with, Benlida itself highlighted that allegation in its response to Circuitronix's motion. (ECF No. 188, 11.) Further, Benlida highlighted that allegation in an effort to support its newly advanced theory of vicarious liability. The Court's analysis merely pointed out that Benlida's own reliance on an alleged express agreement actually undercut its contention that Circuitronix was responsible for CTX-HK's debts based on principles of vicarious liability.

In short, Benlida's arguments on reconsideration are improperly raised and, in any event, fail on their merits.

**2. Aside from those aspects of Circuitronix's motion for judgment as a matter of law that were mooted by the verdict, Circuitronix fails to carry its heavy burden as to the remainder.**

As acknowledged by the parties, the only aspect of Circuitronix's motion for judgment as a matter of law that was not mooted is Circuitronix's position that it should be awarded $317,539 in damages for improper premium charges, in addition to the verdict amount. In support, Circuitronix points to "substantial evidence," not disproved by Benlida, that Circuitronix submitted payment for these premiums that it was not required to pay. While this may be true, the Court finds this is not enough to warrant judgment as a matter of law.

Ordinarily, "[a] motion for judgment as a matter of law is . . . made against the party asserting a claim on the basis that the party failed to meet its burden of proof to establish its claim." *Handley v. Werner Enterprises, Inc.*, 655 F. Supp. 3d 1348 (M.D. Ga. 2023), *aff'd,* 23-10587, 2023 WL 6628921 (11th Cir. Oct. 11, 2023). In such a case, courts should grant judgment as a matter of law only "if the evidence is so overwhelmingly in favor of the moving party that a reasonable jury could not arrive at a contrary verdict." *Middlebrooks v. Hillcrest Foods, Inc.,* 256 F.3d 1246 (11th Cir. 2001). Here, however, the proponent of the claim, bearing the burden of proof, seeks the judgment as a matter of law. In that case, "granting judgment as a matter of law in favor of a

party bearing the burden of proof," is considered "an extreme step which can be done only when the evidence favoring the claimant is so one-sided as to be of overwhelming effect." *Handley v. Werner Enterprises Inc.*, 23-10587, 2023 WL 6628921, at *3 (11th Cir. Oct. 11, 2023). Courts consider this a more exacting standard, requiring a showing that the movant "has established his case by evidence that the jury would not be at liberty to disbelieve." *Weese v. Schukman*, 98 F.3d 542, 547 (10th Cir. 1996) (cleaned up). "As a result of this heavy burden, courts rarely grant judgment as a matter of law in favor of the party having the burden of proof." *OneSource Facility Services, Inc. v. Mosbach*, 205CV525FTM34DNF, 2008 WL 11430040, at *4 (M.D. Fla. Nov. 18, 2008) (cleaned up). Circuitronix fails to convince the Court it has met this demanding standard—indeed it does not even direct any argument towards it.

Instead, Circuitronix paints its argument with broad strokes, contending in mostly summary fashion that it "put forth substantial evidence" in support of its claim, pointing to its principal's testimony, by way of an "example," as well as "undisputed documents." (Circuitronix's Mot. at 3–4.) Without more, the Court finds this is not enough to support taking the "extreme step" of granting judgment as a matter of law in Circuitronix's favor, especially where the testimony relied on issues from Circuitronix's own principal. *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 151 (2000) ("[T]he court should give credence to the evidence favoring the nonmovant as well as that evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that that evidence comes from disinterested witnesses.").

### 3. Conclusion

For the reasons set forth above, the Court **denies** Benlida's motion for reconsideration (**ECF No. 267**) and **denies in part and denies as moot in part** Circuitronix's motion for judgment as a matter of law (**ECF No. 269**). Because a jury verdict has been rendered and it appears no further issues remain for resolution, the Court directs the Clerk to **close** this case. A separate judgment will follow. Any pending motions are denied as moot.

**Done and ordered** in Miami, Florida, on November 30, 2023.

Robert N. Scola, Jr.
United States District Judge