IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

Case No. 23-14102-J

JIANGMEN BENLIDA PRINTED CIRCUIT CO., LTD,

*Plaintiff-Appellant*,

v.

CIRCUITRONIX, LLC,

*Defendant-Appellee.*

**BRIEF OF APPELLEE**

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

Stephen F. Rosenthal
Florida Bar No. 0131458
Christina H. Martinez
Florida Bar No. 1029432
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue, Ste. 2300
Miami, Florida 33131
T.: 305-358-2800/F: 305-358-2382
srosenthal@podhurst.com
cmartinez@podhurst.com

*Counsel for Appellee*

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Appellee submits this list, which includes the trial judge, and all attorneys, person, associations or persons, firms, partnerships or corporations that have an interest in the outcome of this review:

1.      Circuitronix, LLC

2.      Cole, IV, Chauncey

3.      Goodman, Jonathan, U.S. District Magistrate Judge

4.      Huang, Hanchao (Douglas)

5.      Huang, Sulan (Tracy)

6.      Huang, Xiangjiang

7.      Jiangmen Benlida Printed Circuit Co., Ltd.

8.      Kukreja, Rishi

9.      Lerner, Richard E.

10.     Martinez, Christina H.

11.     Mazzola, Jean-Claude

12.     Mazzola Lindstrom LLP

13.     Parisi, Mark

14.     Paulikens, Randall

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

15.    Podhurst Orseck, P.A.

16.    ROK Printed Circuit Co., Ltd.

17.    Rosenthal, Stephen F.

18.    Scola, Jr., Robert N., U.S. District Court Judge

19.    Weinshall, Matthew P.

20.    Wu, Yukun (Roger Wu)

## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit

Rules 26.1-1 through 26.1-3, Appellee states:

1.    There is no subsidiary, parent corporation, or publicly held

corporation that owns 10% or more of the stock of Circuitronix, LLC.


*/s/ Christina H. Martinez*
Christina H. Martinez
Florida Bar No. 1029432

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

## STATEMENT REGARDING ORAL ARGUMENT

Appellee Circuitronix, LLC ("CTX") respectfully submits that oral argument is unnecessary to resolve the issues raised on appeal. Although Appellant Benlida's appeal comes on the heel of a summary-judgment ruling and jury verdict, the district court's summary-judgment ruling rested primarily on a legal determination regarding whether Benlida's defense to the summary-judgment motion depended on a new legal theory for which it had failed to plead supporting factual allegations. The straightforward nature of its ruling obviates the need for the additional review that oral argument may afford heavily fact-laden appeals on summary-judgment rulings. The other pretrial ruling Benlida challenges, an order granting in part CTX's motion *in limine* to exclude portions of the testimony and opinions of Benlida's expert, follows necessarily from the summary-judgment decision and would not benefit from oral argument for the same reasons. Because the Court can adequately evaluate Benlida's arguments on the briefing, the expenditure of judicial resources attendant to oral argument is not warranted.

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346        www.podhurst.com

# TABLE OF CONTENTS

**PAGE**

STATEMENT REGARDING ORAL ARGUMENT ...................................................i

STATEMENT OF JURISDICTION.......................................................................1

ISSUES ON APPEAL ..........................................................................................1

STATEMENT OF THE CASE AND FACTS .........................................................2

    A.     CTX and Benlida's Contractual Relationship.......................................3

    B.     CTX's Payments to Benlida During the 2018-2019 Period...................6

    C.     Benlida Sues CTX for Alleged Non-Payment of Invoices ...................8

    D.     Benlida Fails to Disclose Its Damages Computation and
           Methodology ....................................................................................10

    E.     CTX Moves for Summary Judgment .................................................13

    F.     The Summary-Judgment Order and Its Implications.........................15

    G.     The Trial and Jury Verdict in Favor of CTX .....................................16

    H.     The District Court Denies Benlida's Motion for
           Reconsideration and Enters Judgment ..............................................17

SUMMARY OF ARGUMENT ............................................................................20

STANDARD OF REVIEW .................................................................................23

ARGUMENT .....................................................................................................23

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    |    www.podhurst.com

I.     THE DISTRICT COURT PROPERLY GRANTED SUMMARY JUDGMENT BECAUSE BENLIDA'S OPPOSITION RELIED ON GROUNDS FOR RELIEF NOT SUPPORTED BY ITS COMPLAINT ...............................................................................................23

       A.    The Law Precludes a Party From Resisting Summary Judgment on a Theory Unsupported by the Allegations of Its Pleading ....................24

       B.    The District Court Correctly Determined that Benlida's Complaint Did Not Give Notice of the New Theories of Recovery It Articulated at Summary Judgment ...................................29

           1.    As to the portion of Benlida's claims related to the invoices issued to CTX-HK, the complaint failed to give notice of Benlida's summary-judgment theory of the supposed bases of CTX's responsibility to pay ..................29

           2.    As to the portion of Benlida's claims related to the invoices issued to CTX, the complaint failed to give notice of Benlida's summary-judgment theory that the invoices allegedly remained unpaid under Benlida's use of a commingled FIFO accounting practice .......................35

II.    ALTERNATIVELY, SUMMARY JUDGMENT WAS APPROPRIATE BECAUSE THERE ARE NO DISPUTED ISSUES OF MATERIAL FACT REGARDING BENLIDA'S NEWLY DISCLOSED GROUNDS FOR RELIEF ....................................39

       A.    There Is No Dispute of Fact That CTX Is Not Responsible for Orders Placed by CTX-HK..............................................................39

           1.    CTX-HK's orders for customers on the exclusive customer list did not render CTX responsible to pay for CTX-HK's orders ..............................................40

           2.    The Business Authorization and Letter Agreement did not make CTX responsible for paying for CTX-HK's orders.......................................................................44

**Podhurst Orseck, P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

      B.     There Is No Dispute of Fact That CTX Overpaid Benlida for
              the TAC Invoices Issued to It .................................................................. 46

III.     THE COURT'S DECISION TO PRECLUDE RANDALL
       PAULIKENS' TESTIMONY WAS PROPER ............................................. 53

CONCLUSION ........................................................................................................ 57

CERTIFICATE OF COMPLIANCE ........................................................................ 58

CERTIFICATE OF SERVICE ................................................................................. 58

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

# TABLE OF AUTHORITIES

**PAGE(S)**

## CASES

*Akin v. PAFEC Ltd.*,

    991 F.2d 1550 (11th Cir. 1993) .......................................................................1

*Ashcroft v. Iqbal*,

    556 U.S. 556 (2009)......................................................................................29

*Bell Atl. Corp. v. Twombly*,

    550 U.S. 544 (2007)...............................................................................18, 24

*Bennett v. Schmidt*,

    153 F.3d 516 (7th Cir. 1998) .................................................................28, 29

*Brooks v. Blue Cross & Blue Shield*,

    116 F.3d 1364 (11th Cir. 1997) ....................................................................41

*Chapman v. AI Transp.*,

    229 F.3d 1012 (11th Cir. 2000) ...............................................................42, 51

*Conley v. Gibson*,

    355 U.S. 41 (1957)........................................................................................29

*Erickson v. Pardus*,

    551 U.S. 89 (2007).................................................................................24, 27

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

*Frasca v. NCL (Bahamas), Ltd.*,

    654 F. App'x 949 (11th Cir. 2016)...............................................................38

*GeorgiaCarry.Org, Inc. v. Georgia*,

    687 F.3d 1244 (11th Cir. 2012) ...........................................................25, 26

*Gilmour v. Gates, McDonald & Co.*,

    382 F.3d 1312 (11th Cir. 2004) ...........................................................25, 26

*Hurlbert v. St. Mary's Health Care Sys., Inc.*,

    439 F.3d 1286 (11th Cir. 2006) ...........................................................25, 26

*Johnson v. Shelby*,

    574 U.S. 10 (2014)......................................................................................27

*In re Pan Am. World Airways, Inc., Maternity Leave Pracs.*

    *& Flight Attendant Weight Program Litig.*,

    905 F.2d 145 (11th Cir. 1990) .....................................................................44

*In re Piper Aircraft Corp.*,

    244 F.3d 1289 (11th Cir. 2001) ..................................................................24

*Maestrelli v. Arrigoni*,

    476 So. 2d 756 (Fla. DCA 1985)..........................................................32, 33

*Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*,

    714 F.3d 1234 (11th Cir. 2013) ...........................................................24, 26

**Podhurst Orseck, P.A**.

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

*Molinos Valle Del Cibao, C. por A. v. Lama*,

    633 F.3d 1330 (11th Cir. 2011) .......................................41

*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*,

    60 F.4th 1314 (11th Cir. 2023) .....................................35

*Ott v. Bray*,

    154 So. 209 (Fla. 1934) ..............................................52

*PBT Real Estate, LLC v. Town of Palm Beach*,

    988 F.3d 1274 (11th Cir. 2021) .....................................28

*Randall v. Pettes*,

    12 Fla. 517 (1868)........................................14, 21, 49

*Ray v. Comm'r, Ala. Dep't of Corr.*,

    915 F.3d 689 (11th Cir. 2019) ......................................27

*Ramsey v. Gamber*,

    469 F. App'x 737 (11th Cir. 2012).............................43, 51

*Solitron Devices v. Veeco Instruments*,

    492 So. 2d 1357 (Fla. Dist. Ct. App. 1986).....................34

*US Iron v. GMA Garnett*,

    660 F. Supp. 3d 1212 (N.D. Fla. 2023),

    reconsid. den'd, 2023 WL 3685819 (N.D. Fla. 2023)............32, 33

**Podhurst Orseck, P.A.**

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

*United States v. Harrison*,

    534 F.3d 1371 (11th Cir. 2008) ..................................................23

*United States v. Thompson*,

    25 F.3d 1558 (11th Cir. 1994) ...................................................23

*Urrea v. Koplow*,

    359 So. 3d 1212 (Fla. Dist. Ct. App. 2023)...........................49, 50

*Vincent v. City Colleges of Chicago*,

    485 F.3d 919 (7th Cir. 2007) .....................................................28

*Welch v. Celotex Corp.*,

    951 F.2d 1235 (11th Cir.1992) ..................................................43

*Whitaker v. Milwaukee County*,

    772 F.3d 802 (7th Cir. 2014) .....................................................28

*Wiedeman v. Canal Ins. Co.*,

    770 F. App'x 497 (11th Cir. 2019)............................................54

*Xu v. Porsche Cars N. Am., Inc.*,

    No. 23-10585, 2023 WL 7295228 (11th Cir. Nov. 6, 2023).........43

## STATUTES

28 U.S.C. § 1291 .........................................................................1

28 U.S.C. § 1332 .........................................................................1

§ 671.103, Fla. Stat. ...................................................................34

**Podhurst Orseck, P.A**.

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

## RULES OF CIVIL PROCEDURE

Fed. R. Civ. P. 15 ...................................................................................25

Fed. R. Civ. P. 16(a)(3)(A) .....................................................................25

Fed. R. Civ. P. 37(c)...............................................................................55

S.D. Fla. Local R. 7.1(c)(1) .....................................................................48

S.D. Fla. Local R. 16.1(b)(3)(E) .............................................................25

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346    www.podhurst.com

## STATEMENT OF JURISDICTION

This Court has appellate jurisdiction because the order granting summary judgment in favor of Appellee, Circuitronix, LLC ("CTX"), Docket Entry ("DE") 221, is a final order. *See* 28 U.S.C. § 1291. Likewise, because "'all prior non-final orders and rulings which produced the judgment' are merged into the judgment," this Court has jurisdiction to review the order excluding portions of Appellant, Jiangmen Benlida Printed Circuit Co., Ltd.'s ("Benlida") expert's opinions. *Akin v. PAFEC Ltd.*, 991 F.2d 1550, 1563 (11th Cir. 1993).

Subject-matter jurisdiction is based on diversity. *See* 28 U.S.C. § 1332. Benlida is a Chinese limited liability company. DE 184-2 ("CTX's SMF") 2, ¶ 4; DE 189 ("Benlida's SMF") 2, ¶ 4. CTX is a Florida company with its principal office in Fort Lauderdale, Florida. CTX's SMF 1, ¶ 1; Benlida's SMF 2, ¶ 1.

## ISSUES ON APPEAL[1]

I. Whether the district court properly entered summary judgment against Benlida on claims for breach of contract and account stated after Benlida's complaint failed to provide notice of the grounds upon which its recovery depended by omitting any

---

[1] Because the organization of Benlida's brief does not precisely follow its questions presented (IB 7-8), and these questions presented boil down to the three "points" Benlida addresses in its argument (Initial Brief ("IB") iii-v), CTX frames the issues according to those "points."

1

allegations regarding: (1) CTX's supposed responsibility to pay for orders placed by a separate company, Circuitronix (Hong Kong) Ltd. ("CTX-HK"), and (2) Benlida's secret, internal practice of commingling the accounts of CTX with those of CTX-HK that led Benlida to conclude the invoices it issued to CTX remained unpaid.

II.     Whether summary judgment is separately appropriate given the absence of material disputes of fact regarding Benlida's two unpled theories of relief.

III.    Whether, consistent with its summary-judgment ruling, the district court properly excluded portions of Benlida's expert's testimony regarding CTX-HK and Benlida otherwise waived its ability to appeal.

## <u>STATEMENT OF THE CASE AND FACTS</u>

This appeal arises from a grant of summary judgment that disposed entirely of Benlida's claims against CTX, leaving only CTX's counterclaims against Benlida for trial. DE 221 ("MSJ Order"). After a six-day trial on CTX's breach-of-contract counterclaim, the jury entered a verdict in favor of CTX, awarding it $7,585,847 in damages. DE 273. Benlida's brief on appeal focuses on the summary-judgment ruling, as well as a related order granting in part CTX's motion

2

**Podhurst Orseck, P.A**.

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

*in limine* precluding Benlida's accounting expert, Randall Paulikens, from

testifying about certain opinions concerning CTX-HK.

## A.    CTX and Benlida's Contractual Relationship[2]

CTX is a Florida corporation based in Ft. Lauderdale, specializing in the

manufacture, sale, and distribution of printed circuit boards ("PCBs") to North

American product manufacturers.  DE 184-2 (CTX's SMF) ¶ 1.[3]  A PCB  is a

physical base for connecting, supporting, and stabilizing electrical components,

typically made from conductors like copper which are then etched into non-

conductive sheets made of plastic laminate.  DE 34 at 9, ¶ 17; DE 43 at 2, ¶ 17.

CTX offers its customers—from automakers to consumer electronics companies—

PCBs that are quality-engineered to the customers' precise design specifications.

CTX has contractual relationships with other companies that operate factories, like

Benlida, to manufacture the PCB orders for CTX's customers.  CTX depends upon

Benlida to produce the PCBs at agreed-upon prices and quantities by specified

deadlines to meet CTX's customers' needs.

---

[2] Because all the challenged rulings on appeal depend on the summary-judgment ruling, CTX derives nearly all its background facts from the summary-judgment record that was before the district court.

[3] This brief cites CTX's corrected statement of material facts (DE 184-2) and corrected motion for summary judgment (DE 184-1 ("MSJ")), which was filed to correct for an omitted signature block and certificate of service.

3

Benlida and CTX have shared a decade-long business relationship which continues, albeit in a reduced capacity, to this day. Benlida is a Chinese limited liability company engaged in the manufacture and sale of printed circuit boards. CTX's SMF (DE 184-2) ¶ 4; Benlida's SMF (DE 189) ¶ 4. On March 1, 2012, Benlida and CTX entered into a written contract for the manufacture of PCBs, called the Standard Manufacturing and Representation Agreement ("Manufacturing Agreement"). CTX's SMF ¶¶ 5-7 (citing DE 177-1 at 7-20 (Ex. A to Declaration of Christina H. Martinez ("Martinez Decl."))). A second Chinese company, ROK Printed Circuit Co., Ltd. ("ROK"), was also a party to that agreement. CTX's SMF ¶ 6; Benlida's SMF ¶ 6. ROK was majority-owned by the same people who own Benlida, and also operated a PCB factory, now defunct. *Compare* DE 26 (Third Amended Complaint ("TAC")) ¶ 2 (detailing Benlida's LLC members), *with id.* ¶ 4 (detailing ROK's LLC members); *see also* Benlida's SMF ¶ 5 (stating ROK is no longer in operation).

The Manufacturing Agreement provides the key terms governing the parties' business relationship. It details, among other thing, the price terms for PCBs, how prices can increase, the period of time CTX has to pay Benlida's invoices, how much "lead-time" Benlida gets to manufacture and deliver PCBs to CTX from the time it accepts a purchase order, and what the monetary penalty is for late deliveries. DE 177-1 at 9-10.

4

CTX-HK is a Hong Kong–based company related to but separate from CTX, which was not originally a party to the Manufacturing Agreement. CTX's SMF (DE 184-2) ¶ 2; Benlida's SMF (DE 189) ¶ 2. CTX and CTX-HK service different customers, with CTX selling PCBs and products to customers in North America, and CTX-HK catering to customers in Europe and Asia.

Precisely because CTX-HK was not a party to the Manufacturing Agreement, and because the parties decided to formally involve CTX-HK in the distribution process for certain of CTX's orders with Benlida, CTX signed a "business authorization" document with Benlida on January 1, 2014. CTX's SMF ¶ 8 (citing DE 177-1 at 22 (Martinez Decl., Ex. B) (the "Business Authorization")). The one-page Business Authorization's English-language text provided, in its entirety, that:

> For the purposes of our company's business, Circuitronix, LLC[] hereby authorize[s] [CTX-HK] to place orders to your company [Benlida] on our behalf. [CTX] assumes all [CTX-HK]'s debts *due to these orders*.

*Id.* (citing Business Authorization) (emphasis added). By its terms, the Business Authorization only applied to debts related "to these orders" which CTX-HK placed on CTX's behalf. *Id.*

On July 21, 2016, the parties amended the Manufacturing Agreement through a Letter Agreement. CTX's SMF ¶ 9 (citing Martinez Decl., Ex. C);

5

Benlida's SMF (DE 189) ¶ 9.  The Letter Agreement added CTX-HK as a party to

the Manufacturing Agreement.  CTX's SMF (DE 184-2) ¶ 9; DE 34 (CTX's

Counterclaim) ¶ 3; DE 43 (Benlida's Answer to Counterclaim) ¶ 3 (admitting this

fact).  It also contained an integration clause that provided:

> This [Letter] Agreement and the [Manufacturing Agreement] represent
> the parties' full and complete understanding regarding the subject
> matter hereof. All prior agreements, covenants, representations or
> warranties, express or implied, oral or written, that refer or relate to the
> employment relationship have either been merged into this [Letter]
> Agreement and/or the [Manufacturing Agreement] or have been
> intentionally omitted therefrom. This [Letter] Agreement and the
> [Manufacturing Agreement] supersede any and all prior agreements or
> understandings between [CTX] and [Benlida and ROK].

CTX's SMF ¶ 10 (citing DE 177-1 at 25, ¶ 6) (emphasis added).

Seemingly grasping that it could no longer brandish the 2014 Business

Authorization to claim CTX was required to pay it for debts incurred from CTX-HK

orders, on October 5, 2018, Benlida sent CTX a proposed agreement that would have

obligated CTX to make such payments for CTX-HK.  CTX's SMF ¶ 11 (citing DE

177-4 (SMF Ex. 4 - Excerpts of Transcript of Huang Sulan Deposition) at 43:2-9;

DE 177-1 at 30-32 (Martinez Decl., Ex. D (email attaching "Letter of Authorization

for Payment Entrust"))).  CTX did not sign it.  CTX's SMF ¶ 12; DE 177-4 at 221:2-

9.

## B.    CTX's Payments to Benlida During the 2018-2019 Period

CTX sent Benlida frequent payments on the invoices for its orders, including

6

during the operative period of Benlida's eventual complaint: December 2018 to December 2019. CTX's SMF (DE 184-2) ¶ 23 (citing DE 177-6 (Declaration of Lina Ochoa ("Ochoa Decl.") ¶ 3). Given the Manufacturing Agreement provided for payment 60 days after Benlida's monthly statement (DE 177-1 at 10, § 4.1 (specifying "payment terms of AMS 60 days from the date of the invoice")), which was generated around the time of its invoice, CTX's payments for shipments were due between 60-90 days from the date of Benlida's shipments, depending on the day of the month of the shipment. CTX memorialized its payments in emails regularly transmitting monthly "Payment Details," which it sent to Benlida on a roughly quarterly basis (or roughly every 90-days). CTX's SMF ¶ 23 (citing Ochoa Decl. ¶¶ 4-6); *see* DE 177-4 at 261:7-262:24; DE 177-5 (SMF Ex. 5 - Excerpts of Transcript of Wu Yukun Deposition) at 192:8-20.

In those Payment Details, CTX identified payments it had made during that month-long period and listed the corresponding invoices to which it intended Benlida apply its payments. CTX's SMF ¶ 23 (citing Ochoa Decl. at ¶¶ 4-6).

Benlida's main point person with respect to the CTX business relationship— Sales Director Tracy Huang, admitted that she understood the Payment Details CTX sent Benlida to be communicating the payments CTX expected to be applied to the invoices listed therein. CTX's SMF at ¶ 24 (citing DE 177-4 at 253:6-254:3). Despite this understanding, Benlida did not honor those payment

7

instructions.  It neither informed CTX that it disagreed with CTX's direction of payments nor otherwise told CTX that it was applying CTX's payments to older debts incurred by *either* CTX *or* CTX-HK, which was separately placing orders. CTX's SMF (DE 184-2) ¶ 25 (citing, e.g., DE 177-4 at 324:11-325:14; 326:5-327:3).  As discussed in Part D, *infra*, that covert practice did not come to light until years later, at the close of fact discovery, when Benlida employees were finally deposed in May 2023.

## C.    Benlida Sues CTX for Alleged Non-Payment of Invoices

Benlida filed suit against CTX on January 19, 2021, asserting claims for breach of contract and account stated based on CTX's alleged failure to pay specified invoices.  CTX-HK was not named as a party.

The Court promptly required Benlida to file a first and then second amended complaint, which CTX moved to dismiss. *See* DE 14.  Benlida later sought and obtained leave to add ROK as a plaintiff (DEs 24, 25), after which the two companies together filed the operative Third Amended Complaint (hereinafter, the "complaint") (DE 26 ("TAC")).  CTX moved to dismiss the complaint, arguing both that it should be dismissed as to ROK and that CTX-HK was an indispensable party that had not been joined.  DE 27.  The court granted the motion to dismiss in part, dismissing ROK from the litigation (DE 31 at 1-3), but denying the part of the motion addressing CTX-HK's indispensability because the court could not identify

8

any place in the complaint that mentioned any contract which would implicate

CTX-HK's interests (*id.* at 4-5).

The complaint lists 419 allegedly unpaid invoices that Benlida issued to

CTX *or to CTX-HK* between December 2018 and December 2019 ("the TAC

Invoices"). DE 26, ¶¶ 13-431. These allegations identifying each of the TAC

Invoices employ the identical structure: they note the invoice in question, state it

was issued "to Circuitronix," provide the amount allegedly owed, and assert that

CTX has not paid the invoice. The following allegation exemplifies the formulaic

pleading:

> Invoice CCT-BLD-181229001 was issued by plaintiffs to Circuitronix
> for a total of $34,608.09. To date, Circuitronix has paid no portion of
> the amount owed.

*Id.* at ¶ 13. *Compare id.* ¶¶ 14-431.

Not only did the complaint not name CTX-HK as a defendant, it did not

mention CTX-HK at all, much less allege that CTX assumed any debts of CTX-

HK. Further, while the complaint pled the existence of a "contract" (*id.* at ¶ 440),

the parties' Manufacturing Agreement, that instrument did not mention CTX-HK.

Some of the TAC Invoices, however, bear an identifying "CCT-HK" code or

similar designation indicating that they were invoices Benlida had issued to CTX-

HK. *See, e.g.*, *id.* at ¶ 261 (listing Invoice BLDCCT-HK181218001). In

discovery, Benlida eventually conceded that 170 of the 419 total invoices in the

complaint were actually issued to non-party CTX-HK. CTX's SMF (DE 184-4)

¶ 18 (citing DE 177-1 at 45-48 (Martinez Decl., Ex. G (CTX's Request for

Admissions)); *id.* at 51-52 (Ex. H (Declaration of Huang Hanchao)); *see also* DE

177-5 at 34:18-37:10).

The complaint also did not reference older debts or any invoices from before

the 2018-2019 time span of the TAC Invoices. Nor did it explain how Benlida

concluded that "Circuitronix has paid no portion of the amount owed" for invoices

issued to CTX despite CTX's regular, sizeable payments for shipments during that

period of time.

In all, the complaint claimed CTX owed it $11,539,408.36 based on alleged

non-payment of invoices plus $2,115,927.57 based on a price-increase variable, for

a total of $13,655,335.93.[4]

In CTX's Answer and Counterclaim, it asserted six affirmative defenses and

also filed a counterclaim against Benlida for breach of contract. *See, e.g.*, DE 34 at

11-15. As a result of Benlida's various breaches, CTX claimed at trial that Benlida

owed *it* over $12 million. DE 281-61, 281-62, 281-66, 281-72.

### D. Benlida Fails to Disclose Its Damages Computation and Methodology

Consistent with its Answer and Counterclaim, CTX consistently maintained

---

[4] In the course of litigation, Benlida revised that damages number slightly.

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

that it was in an overpaid situation with Benlida with respect to the TAC Invoices. CTX's SMF (DE 184-2) at ¶ 23 (citing DE 177-6 at ¶ 3 (attesting that "CTX paid those invoices" specified in the complaint)).

But Benlida repeatedly resisted CTX's efforts throughout discovery to apprehend how Benlida could nevertheless contend that CTX owed it money. Benlida's initial disclosures failed to include a computation of its damages or its accounting methodology, or to explain how Benlida considered the invoices it sent to CTX to have remained unpaid when CTX had sent Benlida payment for those invoices between 2018 and 2020. DE 177-1 at 35-43 (Martinez Decl., Ex. F (initial disclosures)).

Benlida also failed to disclose its use of a "first-in, first-out" ("FIFO") accounting methodology during the course of discovery before a stay in the case beginning in June 2022. CTX had served interrogatories attempting to obtain information regarding Benlida's damages computation and methodology in April of 2022, but Benlida failed to disclose in response its commingled FIFO methodology for computing damages—by which it had been secretly applying payments received from CTX to debts it claimed CTX-HK owed. DE 177-1 at 57-58 (Martinez Decl., Ex. J (CTX's interrogatories)). CTX was also unable to discover Benlida's commingled FIFO practice through depositions prior to the stay. Although CTX had made four witnesses available for their depositions

11

between May 24-27, 2022, Benlida refused to produce its witnesses in person, owing to onerous pandemic-related travel restrictions still in place in China.  DE 66.

The court entered an administrative stay on June 2, 2022, the day after the parties mediated the case and reached an agreement in principle to settle.  DE 80. For the next eleven months, the main litigation was paused as the parties engaged in protracted settlement negotiations, entered into a settlement agreement, and then engaged in collateral litigation over CTX's exercise of its right to withdraw from the settlement.  *See* DEs 104 to 151.  During those months, CTX remained in the dark about Benlida's commingled FIFO methodology and how Benlida was claiming that the TAC Invoices remained unpaid.

Following the reopening of the case on April 5, 2023, the court set a compressed pre-trial schedule, with fact discovery ending on June 8, 2023.  *See* DE 150, 152, 153.  Benlida thus did not disclose its accounting until it served interrogatory responses over a year after the interrogatories had been propounded. DE 177-1 at 57-58 (Martinez Decl., Ex. J); *id.* at 66, ¶ 1 (Ex. K (Benlida's May 18, 2023 unsworn interrogatory responses)); *id.* at 75-82 (Ex. L (Benlida's May 24, 2023 sworn corrected interrogatory responses)).  Those responses belatedly revealed that Benlida claimed that, between December 18, 2018 and July 1, 2020, its shipment amount to CTX totaled $10,058,195.91, while CTX had paid Benlida

12

$12,240,285.87. CTX's SMF (DE 184-2) ¶¶ 21-22 (citing DE 177-1 at 54, ¶ 14 (Ex. I (Benlida's revised response to interrogatory 14)). In other words, Benlida's own sworn discovery reflected that CTX had paid Benlida *over $2 million more* than the amount of product Benlida shipped to CTX during the time period covered in the complaint.

It was not until the deposition of Benlida witnesses in May 2023—just two weeks before the close of fact discovery—that CTX learned that Benlida had kept a *combined* accounts-receivables book for both CTX and CTX-HK. Benlida had secretly been applying payments from CTX to debts of CTX *and* CTX-HK alike. *See* DE 177-5 at 192:8-193:7; DE 177-4 at 247:5-249:8, 254:4-255:17; 324:11-20. Benlida admitted that it knew this accounting practice was contrary to what CTX expected, but did it anyway and did not inform CTX it was doing so. DE 177-4 at 253:13-254:20.

### E.    CTX Moves for Summary Judgment

CTX moved for summary judgment as to all of Benlida's claims. *See* DE 184-1. It argued first that Benlida had not articulated any facts in the complaint that could support a theory under which CTX could be made responsible for debts owed by CTX-HK. *Id.* at 6-11. As to claims on the TAC Invoices issued directly to CTX (and not CTX-HK), CTX argued that there was no dispute of fact that it had paid all the invoices Benlida alleged were unpaid. *Id.* at 11-18. Only by

13

secretly and impermissibly applying CTX's payments either to CTX-HK debts or to "older, unspecified debt Benlida contends existed," CTX argued, could Benlida maintain that the TAC Invoices were "still unpaid." *Id.* at 13. CTX argued Benlida should not be permitted to benefit from this commingled FIFO methodology given its failure to both allege its use of that methodology in the complaint or to timely reveal it in its initial disclosures. *Id.* at 13-14.

Benlida's opposition urged denial, asserting CTX was responsible for the debts of CTX-HK, which was variously acting as CTX's "agent … (or as a constituent part ….)." DE 188 ("Opp'n") at 1. Benlida argued that since only CTX had the right to submit orders on its "Exclusive Customer" list, CTX-HK's orders for those same customers were necessarily placed "as CTX-US's agent." *Id.* at 2-5. It also attempted to suggest that there was an "issue of material fact concerning whether CTX-HK was CTX-US's agent" based on the Business Authorization and CTX-HK's "defer[ence]" to CTX in operational matters. *Id.* at 5-6, 8.

With respect to CTX's arguments regarding the TAC Invoices issued to CTX (as opposed to those issued to CTX-HK), Benlida argued that Florida law allowed it to apply CTX's payments to both companies' alleged debts and to disregard CTX's express instruction regarding attribution of payments through the payment details. *Id.* at 14-17 (citing *Randall v. Pettes*, 12 Fla. 517, 534 (1868)).

14

CTX replied why that is not the case.  *See* DE 193.

### F.    The Summary-Judgment Order and Its Implications

The district court granted CTX's motion in its entirety.  *See* DE 221.

Regarding the TAC Invoices issued to CTX-HK, the court agreed that summary

judgment was appropriate given that "Benlida's complaint supplies neither any

notice nor factual allegations that could be construed as advancing its vicarious

liability theories."  *Id.* at 9.  Similarly, with respect to the TAC Invoices issued to

CTX itself, the court found that "nothing in the complaint provides notice … that

Benlida applied Circuitronix's 2018 and 2019 payments to older invoices,

reflecting amounts Circuitronix and CTX-HK had failed to pay in the past."  *Id.* at

10.

The  court's order had the effect of flipping the trial, effectively making

CTX the plaintiff and Benlida the defendant on CTX's counterclaim for breach of

contract.  Prior to that ruling, the parties had fully briefed Benlida's motion *in

limine* (DE 196, 202, 212), CTX's motion to exclude or limit the testimony of

Benlida's so-called "rebuttal" expert, Randall Paulikens (DE 197, 201, 205), and

CTX's omnibus motion *in limine* (DE 198, 203, 204).

In CTX's motion to exclude or limit certain testimony of Benlida's expert,

CTX opposed as improper rebuttal the introduction of any opinions or testimony

by Mr. Paulikens regarding Benlida's affirmative damages calculation (DE 197 at

15

6-8), and his related critique of the damages assessment by CTX's accounting experts for their omission of CTX-HK and ROK from the damages analysis (*id.* at 9-11). The motion also challenged as legal conclusions Mr. Paulikens' opinions regarding CTX's supposed control over CTX-HK and the two companies' corporate relationship, arguing they were also likely to lead to juror confusion. *Id.* at 14-18.

At calendar call on October 3, 2023, the court granted in part and denied in part the three motions *in limine* in an Omnibus Order on Pretrial Motions. DE 237. It granted CTX's omnibus motion, and precluded Benlida from presenting at trial, among other things, "evidence of CTX-HK's debts or Circuitronix's responsibility therefore." *Id.* at 1, § 2. As to CTX's motion to exclude or limit Mr. Paulikens' testimony, the court advised that "Benlida may not introduce its rebuttal expert's testimony to the extent he opines on Circuitronix's experts' failures to account for CTX-HK's debts and on the relationship between Circuitronix and CTX-HK." *Id.* at 2. The court granted in part and denied in part Benlida's motion.

### G. The Trial and Jury Verdict in Favor of CTX

Trial began on October 16, 2023 and lasted six full days. On the first day, after the jury was impaneled, the parties made their opening arguments and CTX began its case-in-chief, beginning with the testimony of its CEO, Rishi Kukreja. DE 319. Over the next three days, CTX completed Mr. Kukreja's examination and

16

called Lina Ochoa, Sourabh Sharma, and its forensic accounting experts, Barry

Mukamal and Mark Parisi, to the witness stand.  DE 319-322.  It also played

videos of deposition designations of Benlida's employees and, after Benlida opted

not to call its expert, Randall Paulikens, CTX read into evidence the designations

of his deposition.  DE 323.  Benlida did not object to CTX's introduction of Mr.

Paulikens' deposition designations.  *Id.* at 1448:15- 1449:10.

After both parties rested their cases, the court read its instructions and

submitted the case to the jury after the parties' closing remarks.  DE 270; DE 324

at 1637:25-1650:2.  After less than two hours of deliberation, the jury returned a

verdict for CTX, awarding the company $7,585,847 in damages.  DE 273.

### H.    The District Court Denies Benlida's Motion for Reconsideration and Enters Judgment

The parties filed multiple post-trial motions.  Benlida moved for

reconsideration of the summary-judgment order.  DE 267.  Citing deposition

testimony by CTX's principal, Rishi Kukreja, which attested to his general

awareness that Benlida had sued CTX for CTX-HK orders, Benlida criticized the

court for concluding that the complaint did not put CTX on notice that Benlida was

seeking recovery for orders made by CTX-HK.  *Id.* at 1-2, 9-10.  It likewise

challenged the court's determination that it had inadequately pled its claims,

insisting that the federal notice-pleading standard did not require it to allege a

17

precise legal theory, or allege that CTX was responsible for the orders placed by its supposed agent, CTX-HK. *Id.* at 2-7. The motion additionally took issue with, among other things, the court's decision to reject portions of Benlida's evidence based on its failure to set forth pincite citations (*id.* at 7-8), and to disregard legal conclusions within its CFO, Roger Wu's declaration in support of the summary-judgment opposition (*id.* at 8-9).

The court denied Benlida's motion for reconsideration, finding Benlida had failed to establish it was warranted. DE 293 at 2. Because Benlida merely "rehashed" old arguments or presented new arguments it could have raised but failed to in the summary-judgment briefing, the court concluded that Benlida had not carried its burden. *Id.* The district court dismissed Benlida's citation to Mr. Kukreja's general awareness that Benlida sought to recoup CTX-HK debts, explaining that "[s]imply setting forth 'the mere possibility of loss causation,' does not come even close to providing a defendant with 'fair notice of the grounds for entitlement to relief.'" *Id.* at 3 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557, 561 (2007)). The court also corrected Benlida's mischaracterization of its order, clarifying that it had *not* "required Benlida to plead a specific legal theory," but rather had demanded only compliance with "basic federal pleading standards" which required factual allegations to support the legal conclusions providing a complaint's framework. *Id.*

18

The same day it issued its order on this reconsideration motion and CTX's separate post-trial motion for judgment as a matter of law (not relevant in this appeal), the court entered final judgment in favor of CTX. DE 294.

Benlida timely appealed (DE 295) and filed an amended notice of appeal (DE 335) after the court entered its amended final judgment on April 22, 2024 (DE 333).

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

# SUMMARY OF ARGUMENT

The district court's soundly reasoned order granting summary judgment—and the follow-on order granting in part CTX's motion *in limine* to exclude certain expert opinions by Mr. Paulikens—should both remain undisturbed.

As to the summary-judgment ruling, affirmance is warranted on either or both of two separate grounds.

First, the court recognized that Benlida's summary-judgment opposition relied on legal theories that were not supported by the factual allegations in Benlida's complaint. This Court's precedent does not allow a party opposing summary judgment to articulate a new legal theory in support of its claims for relief where its complaint fails to give notice of factual allegations that could plausibly support the theory or where the theory fundamentally changes the party's claim. This "bound-by-the-pleadings" principle precludes a plaintiff from effectively amending its complaint through its argument in response to a summary-judgment motion, presenting a moving target in circumvention of the rules of civil procedure.

That principle supports the district court's grant of summary judgment. As to the TAC Invoices issued to CTX-HK, the complaint gave no hint of any grounds by which CTX, a different company, could be responsible for those invoices. Likewise, as to the TAC Invoices issued to CTX, the complaint failed to give any

**Podhurst Orseck, P.A**.

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

hint that Benlida was claiming CTX had not paid invoices issued to it between 2018 and 2020 based on Benlida's use of a commingled FIFO accounting methodology by which it had been secretly applying CTX's payments, for invoiced shipments to CTX, to the oldest debts of *either* company, CTX or CTX-HK. Nothing in Benlida's complaint contained plausible allegations that could support—and would thus have notified CTX that Benlida intended to rely on—any theory by which CTX was responsible to pay for invoices Benlida had issued to CTX-HK, or that CTX could still owe money for invoices Benlida had issued to it based on some secret commingled FIFO accounting practice across two companies. The court correctly precluded Benlida from pivoting to theories of relief that were not supported by the allegations of its complaint to evade summary judgment.

Summary judgment is separately appropriate because, even considering Benlida's new theories, there was no dispute of material fact that CTX was not responsible for CTX-HK invoices and that it *overpaid* for the TAC Invoices issued to it.

As to the TAC Invoices issued to CTX-HK, neither the fact that CTX-HK placed orders for exclusive customers, the Business Authorization, nor the Letter Agreement do the work of showing CTX was on the hook for invoices issued to CTX-HK.

21

And, evidence including Benlida's own sworn interrogatory responses revealed that the CTX's payments on invoices issued to *it* during the operative period identified in the complaint exceeded by over $2 million value of Benlida's shipments to CTX. Benlida's resistance to that conclusion by reference to *Randall v. Pettes*, 12 Fla. 517 (1868) and to its commingled FIFO methodology is unavailing. Under Florida law, the *Randall* principle does not apply to situations where a creditor (Benlida) seeks to apply payments from one debtor (CTX) to the supposed debts of another (CTX-HK). Additionally, Benlida's decision about how to apply CTX's payments was foreclosed by CTX's express instructions, through "Payment Details," about which outstanding invoices it was paying with its payments. Under Florida law, those Payment Details need not have been contemporaneous with payment to render effective CTX's allocation instructions.

Whether as a matter of its failure to give proper notice of the defenses it raised for the first time at summary judgment or because those defenses, on their merits, did not create an issue of material fact, summary judgment was appropriate.

The court's partial grant of CTX's motion *in limine* to exclude opinions by Benlida's accounting expert, Mr. Paulikens, related to CTX-HK logically followed from the summary-judgment ruling. Even setting aside the summary-judgment ruling, the order granting the motion *in limine* should be affirmed because Mr. Paulikens offered both improper rebuttal opinions and because some of his

22

opinions were impermissible legal conclusions.  To the extent Benlida argues the

court abused its discretion in precluding certain opinions related to matters other

than CTX-HK, the court's *in limine* order did not prevent Benlida from calling Mr.

Paulikens as a witness to testify about these other matters.  Benlida chose as a

matter of trial strategy not to call its expert, or even make a proffer of his

testimony, so it also waived any basis to seek a reversal of the *in limine* ruling.

## STANDARD OF REVIEW

CTX agrees with Benlida's articulation of the standard of review governing

orders granting summary judgment.  *See* IB 9-10.  District court decisions granting

motions *in limine* are generally reviewed for abuse of discretion.  *United States v.

Harrison*, 534 F.3d 1371, 1373 (11th Cir. 2008).  When a district court rules on a

motion *in limine* based on a conclusion of law, the Court reviews the decision *de

novo.  United States v. Thompson*, 25 F.3d 1558, 1563 (11th Cir. 1994).

## ARGUMENT

**I.    THE DISTRICT COURT PROPERLY GRANTED SUMMARY
       JUDGMENT BECAUSE BENLIDA'S OPPOSITION RELIED
       ON GROUNDS FOR RELIEF NOT SUPPORTED BY ITS
       COMPLAINT**

With respect to CTX's arguments as to both the TAC Invoices issued to

CTX-HK and the remaining invoices issued to CTX, the district court rightly

determined that Benlida's summary-judgment response relied on theories based on

facts that were nowhere to be found in the allegations of Benlida's complaint. Eleventh Circuit precedent forbids a party opposing summary judgment to pivot to a legal theory dependent on facts it failed to plead. The district court's reasoning and conclusions that Benlida's complaint provided "no hint" of the facts supporting its new summary-judgment defenses merited summary judgment (DE 221 at 7, 10) are supported by this Court's binding precedent.

### A. The Law Precludes a Party From Resisting Summary Judgment on a Theory Unsupported by the Allegations of Its Pleading

The district court's decision was firmly rooted in this Court's long line of cases foreclosing plaintiffs from raising new claims and theories in opposition to a summary-judgment motion where their complaint failed to provide notice of those claims and the supporting grounds for relief. The operation of what we'll call this "bound-by-the-pleadings" principle counsels in favor of affirmance.

The bound-by-the-pleadings principle is grounded in fundamental notions of the efficient and fair litigation of a case. The pleadings "frame the scope of litigation." *In re Piper Aircraft Corp.*, 244 F.3d 1289, 1298 (11th Cir. 2001). "Plaintiffs are the masters of their claims." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013). The plaintiff's complaint must provide a "short and plain statement of the claim," Fed. R. Civ. P. 8(a)(2), to "give the defendant 'fair notice of what the … claim is and the grounds upon which it

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). The rules of civil procedure allow for amendments to the complaint, Fed. R. Civ. P. 15, and a district court's scheduling orders set the deadline by which a plaintiff can amend its complaint, Fed. R. Civ. P. 16(a)(3)(A); *see* S.D. Fla. Local R. 16.1(b)(3)(E) (allowing the parties to propose such a deadline). The deadline to amend the pleadings is typically set before the close of discovery and, correspondingly, the deadline to file dispositive motions. That was the case here.[5]

Thus, when a defendant moves for summary judgment, it does so against a fixed framework bounded by the operative complaint. This Court's bound-by-the-pleadings rule precludes a plaintiff from eluding summary judgment by presenting a moving target: effectively seeking to amend its complaint in response to the motion, circumventing the rules of civil procedure and the applicable scheduling order. The bound-by-the-pleadings rule provides: "A plaintiff may not amend her complaint through argument in a brief opposing summary judgment." *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1315 (11th Cir. 2004); *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006);

---

[5] The deadline to amend the pleadings was June 29, 2021 (DE 22); the extended deadlines for fact discovery and filing dispositive motions were June 8 and 9, 2023, respectively (DE 153 at 1-2).

25

*GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 n.27 (11th Cir. 2012);

*Merle Wood & Assocs., Inc.*, 714 F.3d at 1237. Therefore, a summary-judgment

defense that articulates a new basis for relief must be rejected where the complaint

"provide[s] no notice whatsoever" of that new basis for relief, *Hurlbert*, 439 F.3d

at 1297, or no "factual allegations that could possibly be construed" as advancing

that basis or theory, *GeorgiaCarry.Org, Inc.*, 687 F.3d at 1258. Nor does it "afford

plaintiffs with an opportunity to raise new claims at the summary judgment stage."

*Gilmour*, 382 F.3d at 1314.[6]

The district court's decision to dispose of Benlida's claims at summary

judgment relied upon, and was squarely in line with, this authority. *See* DE 221 at

6, 12 (citing *Gilmour*), 9 (citing *Hurlbert*). We demonstrate this in Part I.B.,

below.

Benlida attacks a strawman when it suggests, wrongly, that the district court

demanded that Benlida "specify in detail the precise legal theory giving rise to

recovery," or prohibited the articulation at summary judgment of a legal theory

already supported by allegations in the complaint. IB 33 (internal quotation marks

omitted). To the contrary, the court explicitly held that "none of the complaint's

---

[6] Benlida did not preserve its late-stage appellate argument that the district court should have afforded it leave to "replead" to add an allegation of principal/agent liability. IB 41. Benlida never sought leave to amend on this basis. *See generally* DE 188 (summary-judgment opposition).

*factual allegations* support, or even directly imply support, for Benlida's new theories." MSJ Order (DE 221) 6 (emphasis added). The court did not require Benlida to expressly plead any theory of liability. Instead, it explained that complaints must put the opposing party and the court "on notice of, at a minimum, *the grounds* supporting a plaintiff's claims." *Id.* (emphasis added). That is fully consistent with the law governing pleading. *See Erickson*, 551 U.S. at 93 (complaint must "give the defendant fair notice of what the … claim is *and the grounds* upon which it rests") (quotation marks omitted); *Ray v. Comm'r, Ala. Dep't of Corr.*, 915 F.3d 689, 697 n.3 (11th Cir. 2019) (the "notice pleading standard only requires *allegations as to every material point* necessary to sustain a claim on any legal theory, even if it is not the precise theory advanced by the plaintiff") (emphasis added). As Benlida appears to acknowledge, its defenses at summary judgment depended on whether its complaint pled "'*facts* to show that [its] claim has substantive plausibility.'" IB 37 (quoting *Johnson v. Shelby*, 574 U.S. 10, [12] (2014); (emphasis added)).

Consistent with these authorities, and as discussed below, because Benlida "neglected to mention any of [its new theories], *or any facts supporting them*, in its complaint" (MSJ Order at 5 (emphasis added)), those theories were not "properly before the court" (*id.* at 6), and summary judgment was appropriate.

Before examining the gulf separating what Benlida pled and what it argued

27

at summary judgment, we note that the authority Benlida invokes (IB 37-41) in no way detracts from the court's rejection of Benlida's new arguments at summary judgment. *PBT Real Estate, LLC v. Town of Palm Beach*, 988 F.3d 1274, 1286 (11th Cir. 2021), *Bennett v. Schmidt*, 153 F.3d 516, 517 (7th Cir. 1998) (both cited at IB 38), *Whitaker v. Milwaukee County*, 772 F.3d 802, 808 (7th Cir. 2014), and *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 923-37 (7th Cir. 2007) (both cited at IB 40-41), all involve reversals of dismissals for failure to comply with hyper-technical pleading requirements.[7] But in each of those cases, unlike here, the pleadings had laid out "essential allegations" making the alleged complained-of "events … into a 'claim for relief.'" *Bennett*, 153 F.3d at 517; *see also PBT Real Estate*, 988 F.3d at 1286; *Whitaker*, 772 F.3d at 808; and *Vincent*, 485 F.3d at 921, 925.

Unlike those complaints, Benlida's complaint did not even go so far as to allege *conclusorily* that CTX was responsible for invoices to CTX-HK or that Benlida deemed invoices unpaid because of its application of a commingled FIFO accounting practice to allocate payments as between debts of both CTX and CTX-HK. And, unlike the district courts that were reversed in *PBT Real Estate*, *Bennett*,

---

[7] *See PBT Real Estate*, 988 F.3d at 1286; *Bennett*, 153 F.3d at 517-18; *Whitaker*, 772 F.3d at 807-08; and *Vincent*, 485 F.3d at 924.

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

*Whitaker*, and *Vincent*, the court here merely demanded the pleading of basic,

underlying facts that would have lent plausible support to the theories Benlida

unveiled at summary judgment, *not* the formalistic recitation of those theories.[8]

### B. The District Court Correctly Determined that Benlida's Complaint Did Not Give Notice of the New Theories of Recovery It Articulated at Summary Judgment

The district court properly concluded that Benlida had failed to adequately

allege the grounds supporting its previously undisclosed theories of recovery

concerning the first set of TAC Invoices issued to CTX-HK, and the remaining set

of TAC Invoices issued to CTX directly.  We address the distinct components of

Benlida's claims separately.

#### 1. As to the portion of Benlida's claims related to invoices issued to CTX-HK, the complaint failed to give notice of Benlida's summary-judgment theory of the supposed bases of CTX's responsibility to pay

Summary judgment was appropriate based on the district court's valid

determination that Benlida's defenses at summary judgment were not properly

---

[8] The Court should disregard Benlida's reliance on *Bennett*'s statement that it need not allege "all, *or any*, of the facts logically entailed by a claim."  IB 38 (emphasis added; internal quotation marks omitted) (quoting *Bennett*, 153 F.3d at 518-19). That outdated recitation of the law is a relic of the pleading standard under *Conley v. Gibson*, 355 U.S. 41 (1957), before *Iqbal* and *Twombly* firmly rejected the notion that a "wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some 'set of [undisclosed] facts' to support recovery."  *Twombly*, 550 U.S. at 561 (Court's alteration).

**Podhurst Orseck, P.A**.
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

before the court since Benlida had "suppl[ied] neither any notice nor factual allegations that could be construed as advancing its vicarious liability theories" or any theories by which CTX could be held liable for TAC Invoices issued to CTX-HK. MSJ Order (DE 221) at 9.

This ruling was correct: as the court noted (*id.*), the complaint contains no mention of CTX-HK, much less any allegation addressing how or why CTX could be responsible for invoices issued to that other company. The complaint plainly defines "Circuitronix" as the Florida-based corporation *only* (DE 26 at 4, ¶ 5), and does not so much as hint at the existence of CTX-HK or any alleged agents, subdivisions, or affiliates. We are at a loss how Benlida can argue with a straight face that its complaint "expressly alleged that CTX[] was responsible to pay for each of the CCT-HK Invoices because they were issued pursuant to the Manufacturing Agreement and that CTX-US was therefore obligated to pay them." IB 28 (notably *not* citing the complaint). Nothing in the complaint does *anything* to connect CTX to the listed invoices whose "CCTHK" code numbers indicate were issued to a different company, CTX-HK. And while the complaint pled the existence of a "contract" (DE 26 at ¶ 440), nothing in that instrument (the parties' Manufacturing Agreement) mentioned CTX-HK.

According to Benlida, the allegedly "unpaid invoices represented PCBs ordered by CTX-HK for CTX[]'s Exclusive Customers." IB 25. But the

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346     www.podhurst.com

complaint contains no mention whatsoever of "exclusive customers."  Despite this omission, Benlida misleadingly asserts that it "pled, in 171 separate paragraphs" that "orders processed through CTX-HK were intended for CTX[]'s Exclusive Customers, thereby making CTX[] responsible for payment."  IB 5.  Far from it. The complaint does not mention by name the Manufacturing Agreement (much less "CTX's exclusive customers"), does not identify the provision in the Manufacturing Agreement that defines exclusive customers, and does not so much as hint at how CTX could have been "responsible" for paying invoices issued to CTX-HK.  Nor does the complaint reference the Business Authorization or any other agreement or writing from which a plausible argument might be made that CTX-HK was authorized to submit orders to Benlida on CTX's behalf, such that it could be inferred that CTX would be financially responsible for them.

This complete absence of pertinent factual allegations failed to put CTX on notice of the true nature of Benlida's claim and the grounds upon which it rested. Benlida cannot sidestep this conclusion by arguing on appeal that the court unfairly faulted it for an imperfect articulation of a vicarious-liability theory.  IB 38.  The court also did not formalistically require that Benlida employ talismanic words of "agency" or "alter ego" in articulating its claim, as Benlida seems to suggest.  IB 26-27.

Rather, the district court appropriately condemned Benlida for the total

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

dearth of factual allegations supporting those theories. *See, e.g.*, DE 221 at 8 (noting the "absence of a single allegation about CTX-HK—never mind about CTX-HK's status as an agent or alter ego—in the complaint"); *id.* (reasoning CTX-HK's potential interest in the litigation would have been made apparent "had Benlida properly pleaded the facts upon which its agency and alter-ego theories are based"); *id.* at 9 ("There is not a single allegation in the complaint indicating that Circuitronix assumed any of CTX-HK's debts or that CTX-HK was acting as Circuitronix's agent or alter ego.").

Further, Benlida may not fault the court for recognizing Benlida's claim as one for breach of contract but then "rel[ying] on tort law concepts regarding imputation of liability" (IB 28). Benlida's criticism is somewhat unclear because its own cited cases—*Maestrelli v. Arrigoni*, 476 So. 2d 756 (Fla. DCA 1985) and *US Iron v. GMA Garnett*, 660 F. Supp. 3d 1212 (N.D. Fla. 2023), *reconsid. den'd,* 2023 WL 3685819 (N.D. Fla. 2023)—recognize that a plaintiff must set forth *some* allegations regarding agency relationships, even in the contractual context. *Maestrelli*, 476 So. 2d at 757 (discussing baseline allegations required for "one suing upon a contract made for the defendant by an agent"); *US Iron*, 660 F. Supp. 3d at 1220 (same). Benlida's complaint did not satisfy this minimal requisite.

These cases do not support Benlida's (apparent) position that it need not have pled *any* facts related to agency or alter-ego status. For example, although

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

*US Iron* rejected that a plaintiff needs to specifically refer to agency in the complaint, the complaint in that case "detail[ed] the negotiations [between the plaintiff and a defendant's alleged agent] that resulted in 'a contract between the parties.'" 660 F. Supp. 3d at 1220. Relying on *US Iron*, Benlida insists it is sufficient to "merely allege the legal effect of the agent's action by averring that the contract was made by the principal himself.'" IB 27 (citing *US Iron*, 660 F. Supp. 3d at 1220; emphasis removed). But Benlida forgets that it had not made any similar allegations about the actions of the supposed agent here, CTX-HK, which might arguably have bound CTX.

The only other case Benlida cites for its apparent point that it was free not to have made any allegations related to its agency theory similarly involved a plaintiff's "alleg[ations] that [an agent] delivered material to a job site at the request of the defendant." *Maestrelli*, 476 So. 2d at 757. Benlida's complaint, however, did not contain even the scarcest trace of an allegation that could have provided notice of an alleged principal-agent relationship or indeed any relationship as between CTX and CTX-HK. Again, CTX-HK—the supposed agent—was never even mentioned in the complaint.[9]

---

[9] Benlida also may not resort to sections 671.103 and 671.205, Florida Statutes, to argue that "CTX[] had notice that Benlida was seeking to hold it liable under the [Manufacturing Agreement] for unpaid 'CCT-HK' Invoices." IB 26-32. Section 671.103 provides that, as a matter of *substantive* contract interpretation under the

33

Benlida cannot escape affirmance by pointing out that CTX had notice, regardless of the faulty pleading, based on CTX's principal's and its experts' general awareness that Benlida was suing CTX for invoices issued to CTX-HK. IB 39, 40, & 35 n.16. The general inference that "CTX[] was being sued for unpaid 'CTT-HK' Invoices" (IB 39) does not supply adequate notice of how Benlida purported to hold one company responsible for paying the debts of another. Mr. Kukreja did not have an inkling from the complaint about the *basis* by which Benlida sought to hold CTX liable for CTX-HK's debts.

After all, CTX and CTX-HK are distinct corporate entities, and Benlida's statement that the complaint "alleged that pursuant to the Manufacturing Agreement, CTX[] was responsible [for allegedly unpaid CTX-HK invoices]" is just fictional. IB 39. The complaint never once mentions the "Manufacturing Agreement" between the CTX and Benlida. It alleges only that Benlida "performed [its] obligations under the contract by delivering" PCBs to CTX (DE

---

Florida Commercial Code, background "principles of law and equity, including … principal and agent" concepts, supplement the Code's provisions unless displaced by a specific provision. § 671.103, Fla. Stat. But the fact that the Code "does not exist in a vacuum," and that background Florida contract principles "'continue to be applicable to commercial transactions'" (IB 26 (quoting *Solitron Devices v. Veeco Instruments*, 492 So. 2d 1357, 1360 (Fla. Dist. Ct. App. 1986))), says nothing about the pleading required for such claims under *federal* (or even state) law.

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

26 at ¶ 440), and that, "[i]n exchange for the circuit boards manufactured by [Benlida] and sold to defendant [CTX], the latter agreed to pay the former therefore." *Id.* at ¶ 439. That is all.

The complaint also does not identify any specific provisions of the contract—including those about exclusive customers—that were allegedly breached. And it certainly never pleads that any language in that agreement made CTX responsible for invoices issued to CTX-HK. Under this Court's clear precedent, even if CTX "knew full well" the Benlida sought to recover from it for invoices to CTX-HK, "that fact, even if true, would not relieve [Benlida] of its obligation to follow the pleading requirements and allege in its [complaint] [the facts that] served as a basis for liability." *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314, 1320 (11th Cir. 2023).

> **2. As to the portion of Benlida's claims related to invoices issued to CTX, the complaint failed to give notice of Benlida's summary-judgment theory that invoices allegedly remained unpaid based on Benlida's use of a commingled FIFO accounting practice**

Benlida's failure to plead factual allegations supporting its claims also infected its basis for arguing that CTX had not paid for its own invoices. The basis Benlida articulated for the first time in opposition to summary judgment was its undisclosed, commingled FIFO accounting methodology for applying payments received from CTX to invoices Benlida had issued to CTX or CTX-HK. The

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346      www.podhurst.com

district court rightly determined summary judgment was appropriate because "nothing in the complaint provides notice to Circuitronix that Benlida applied Circuitronix's 2018 and 2019 payments to older invoices, reflecting amounts Circuitronix and CTX-HK had failed to pay in the past."  DE 221 at 10.

The district court did not err in rejecting Benlida's contention that the complaint's list of allegedly unpaid invoices was sufficient to "alert[] Circuitronix that FIFO practices were being applied" and that only "simple math" was required to understand Benlida's claim.  *Id.*  According to Benlida's arguments at summary judgment, CTX owed money on the TAC Invoices from 2018 and 2020 (issued to CTX or CTX-HK) because Benlida was applying CTX's payments—on invoices issued to CTX between 2018 to 2020—to CTX-HK's older outstanding debt.  DE 188 at 2 (explaining that Benlida applied "monies paid by CTX[] and CTX-HK … to the oldest debts first" and arguing that, "because the debt that CTX-HK was unable or unwilling to pay was ultimately owed by the principal CTX[], it was proper for Benlida to apply CTX[]'s payments to old CTX-HK debts before more recent CTX[] debts").

But the allegations in the complaint are sparse and do not bear out Benlida's more robust theory of its claim at summary judgment.  The complaint discusses only PCBs "that were purchased, but not paid for, in 2018, 2019 and 2020," alleging that Benlida issued the listed "invoices, and caused the [PCBs] that were

36

ordered by Circuitronix to be delivered." DE 26 at ¶¶ 11-12. It is completely silent about how Benlida accounted for the substantial payments CTX made to it during that period of time. And it does not explicitly mention, let alone plausibly imply: the allegedly outstanding older debt; Benlida's FIFO method of applying payments to invoices; or Benlida's undisclosed practice of applying CTX's payments on a FIFO basis across debts allegedly owed by CTX *or* CTX-HK. The scant allegations of the complaint were insufficient to provide CTX with notice that the basis for Benlida's position that CTX had not paid invoices was Benlida's application of CTX's payments from 2018 to 2020 to allegedly unpaid pre-2018 invoices issued to CTX-HK, none of which were identified or even hinted at in the complaint.

The district court's discussion pinpoints the deficiency in Benlida's pleading and betrays the flaws in Benlida's simplistic characterization of its ruling on appeal: while the complaint made clear that Benlida was alleging CTX had failed to pay for the goods that Benlida invoiced it for (i.e., the TAC Invoices actually issued to CTX), given that "the undisputed facts show Circuitronix actually *did* pay Benlida for the invoiced amounts," "the only way for Benlida to establish Circuitronix's liability is to introduce new grounds." MSJ Order (DE 221) at 11. Benlida's claim developed at summary judgment is not the straightforward one that the complaint suggested—that Circuitronix simply failed to pay the amounts

37

invoiced to it.  As the court noted, although Benlida's general "theory of liability is not new," the factual "grounds upon which that theory now rests are." *Id.* at 11.

Contrary to Benlida's characterization, the court was not wholly precluding Benlida from "'introduc[ing] additional facts at the summary judgment stage.'"  IB 35 (quoting *Frasca v. NCL (Bahamas), Ltd.*, 654 F. App'x 949, 954 n.6 (11th Cir. 2016)).  Rather, given the paucity of initial facts in the complaint, Benlida's summary-judgment briefing could not supply the *only* facts that would support Benlida's claims for relief.  Benlida's deficient pleading is distinguishable from the one in *Frasca*, where the plaintiff's claim was "premised on [a] slip and fall on a slippery deck on Defendant's cruise ship, whatever the source of the water causing the fall may have been," and where this Court excused a technically "erroneous statement in Plaintiff's complaint" that identified the wrong source of water that made the deck slippery.  *Frasca*, 654 F. App'x at 954 n.6.  There, the plaintiff had alleged that the slippery deck had caused his fall, and the defendant was at least on notice of the "causal theory" supporting the plaintiff's recovery.  *Id.*  Here, Benlida's complaint failed to plead any facts from which CTX could infer how Benlida was claiming the listed invoices remained unpaid, despite CTX having sent Benlida money for them.  Because the complaint does not even hint at the undisclosed accounting methodology by which Benlida commingled its accounts receivable for CTX and CTX-HK, the court did not err in ruling that Benlida could

38

not rely on that wholly undisclosed basis for its claims to oppose undisputed

evidence that CTX had, in fact, paid for all of the TAC Invoices issued to it.

## II. ALTERNATIVELY, SUMMARY JUDGMENT WAS APPROPRIATE BECAUSE THERE ARE NO DISPUTED ISSUES OF MATERIAL FACT REGARDING BENLIDA'S NEWLY DISCLOSED GROUNDS FOR RELIEF

Because the trial court granted summary judgment for the reasons discussed

in Part I, it "decline[d] to address [CTX's] … arguments that … there are no

genuinely disputed issues of material fact regarding [Benlida's] new theories and

grounds for relief." DE 221 at 13. Those "new theories" were (1) Benlida's

amorphous vicarious-liability theory for CTX-HK's debts and (2) Benlida's

commingled FIFO application of payments to CTX's oldest debts to argue the

TAC Invoices to CTX remained unpaid. Although an affirmance on the grounds

laid out in Part I would obviate the need to consider the merits of Benlida's new

theories, summary judgment would also have been appropriate in spite of them as

well.

### A. There Is No Dispute of Fact That CTX Is Not Responsible for Orders Placed by CTX-HK

Because there were no disputes of material fact regarding Benlida's inability

to show CTX was responsible for CTX-HK's debts, summary judgment was

appropriate as to the portion of Benlida's claims related to invoices to CTX-HK.

At bottom, Benlida cannot point to any record evidence that created a genuine

39

issue of material facts as to how one company, CTX, can be made responsible for

the debts of another, CTX-HK, or (as Benlida has articulated most recently on

appeal (*e.g.*, IB 30)) how those debts can be considered CTX's own.

> **1. CTX-HK's orders for customers on the exclusive customer list did not make CTX responsible to pay for CTX-HK's orders**

Benlida's faulty logic that its legal theory regarding exclusive customers

foreclosed summary judgment (IB 41-50) cannot justify a reversal.

Setting aside the pleading deficiency that the complaint contains *no mention*

of the exclusive customer list (*see supra* Part I.B.1), the existence of that list, or the

fact that CTX-HK placed orders with Benlida for those customers, does not lead to

the facile conclusion that Benlida offers—that "orders processed through CTX-HK

were intended for CTX[]'s Exclusive Customers, *thereby making CTX[]*

*responsible for payment*." IB 5 (emphasis added); *see also* IB 7 (articulating first

issue on appeal as a question "of CTX[]'s *own* liability for the CCT-HK Invoices,

because they were issued for orders placed *for CTX[]'s Exclusive Customers* by

CTX-HK") (Benlida's emphasis).

Benlida's logic jumps over the fact that Florida law, which governs the

substantive state-law claims in this diversity case, does not allow one person or

corporation to be made liable for the acts of another absent some basis for

vicarious liability, agency, or an alter-ego relationship. Corporations like CTX and

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

CTX-HK are presumed to be distinct legal entities, and Florida courts do not "easily disregard this fiction" of corporate separateness. *Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330, 1349 (11th Cir. 2011). Benlida cannot reasonably argue that CTX-HK's act of placing orders to Benlida for customers CTX had designated as "exclusive" between it and Benlida somehow by itself overcome that presumption.

The CTX-HK invoices from the complaint, which are incorporated by reference into the pleading, *Brooks v. Blue Cross & Blue Shield*, 116 F.3d 1364, 1369 (11th Cir. 1997), do not support Benlida's conclusion that the "Manufacturing Agreement's exclusivity requirements make CTX[] liable for breach, not vicariously, but rather for its own failure to pay those invoices." IB 28. The invoices themselves reflect that they were issued to *CTX-HK*, not to CTX. *E.g.*, DE 186-4 at 14 (invoices Benlida issued to CTX-HK). And the invoices bear no other notation indicating, as Benlida contends, that CTX is the party responsible for payment. IB 28. The only fair reading of the invoices themselves demonstrates that Benlida sent the invoices to CTX-HK. Benlida's argument about exclusive customers simply does not explain what gives Benlida the right to sue a different company for debts owed on those invoices.

Even accepting the description of the parties' course of dealing, as laid out by Benlida's sales director, Ms. Huang (IB 43-44), Benlida's and CTX's

41

noncompliance with the exclusivity provisions of the Manufacturing Agreement by allowing CTX-HK to place orders for those customers demonstrates at most a breach of those provisions. That CTX did not sue Benlida for breaching its exclusivity rights does not mean that the parties somehow thereby implictly rewrote the contract to reflect that CTX *assumed liability* for those technically impermissible CTX-HK orders. Benlida introduced zero evidence of such an agreement. Nor do Benlida's arguments—even accepted as true—that CTX "benefited from the [exclusivity] terms of the Manufacturing Agreement in various ways" (IB 29; *see also* IB 43-44) create a material issue of fact regarding CTX's lack of responsibility for CTX-HK's orders.

First, Benlida's evidence of CTX's "benefits" depends entirely on trial testimony—not summary-judgment evidence. IB 29 (citing Trial Tr. (Vol. III) (DE 321) 745-46, 683-84, 705-07, 757-59).[10] Benlida cannot disturb the summary judgment ruling by reference to evidence it belatedly introduced at trial, since that was not before the district court for purposes of summary judgment. *Chapman v. AI Transp.*, 229 F.3d 1012, 1026 (11th Cir. 2000) ("The rule is that 'a federal

---

[10] Benlida first hints at this supposedly "disregarded" evidence in its statement of the case. IB 6 (arguing the court's determination that CTX was not responsible for CTX-HK invoices disregarded, among other things, "historical business practices, … discount structures applied to all orders, … lead-time penalties calculated on all orders," etc.) (emphasis removed); *see also* IB 10 n.2 (acknowledging its use of post–summary judgment evidence).

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

appellate court may examine *only* the evidence which was before the district court when the latter decided the motion for summary judgment.'") (quoting *Welch v. Celotex Corp.,* 951 F.2d 1235, 1237 n.3 (11th Cir.1992)); *Ramsey v. Gamber*, 469 F. App'x 737, 742 (11th Cir. 2012) (refusing to consider deposition testimony on appeal that was not in front of trial judge when ruling on motion for summary judgment).

Although Benlida claims it addressed these "benefits" "in opposition to summary judgment" (IB 29 (citing DE 188 at page "3 *et seq.*")), its response below was devoid of any such discussion. *See* DE 188 at 3-10. On appeal, Benlida depicts the discount structures applied to CTX and CTX-HK orders, the lead-time penalties calculated to orders by both of the two companies, and their use of the same inside sales team based in India, among others, as "benefits" and evidence that CTX-HK's orders for exclusive customers automatically made CTX responsible for paying the invoices. IB 5-6. But, at most, Benlida's summary-judgment opposition mentioned these points—e.g., that CTX's Kukreja determined discounts or lead-time penalties—in the context of its discussion about CTX's supposed control over CTX-HK. DE 188 at 8-9. Nothing in that discussion hinted at Benlida's current argument that this evidence has any bearing on its exclusive-customer theory—that by placing orders for exclusive customers, CTX-HK was impliedly placing orders on CTX's behalf. That new argument is thus unpreserved

43

**Podhurst Orseck, P.A**.

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

and may not be considered on appeal.  *Xu v. Porsche Cars N. Am., Inc.*, No. 23-10585, 2023 WL 7295228, at *1 (11th Cir. Nov. 6, 2023) ("'[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it.'") (quoting *In re Pan Am. World Airways, Inc., Maternity Leave Pracs. & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990)).

### 2. The Business Authorization and Letter Agreement did not make CTX responsible for paying for CTX-HK's orders

Setting aside the failure to mention or plead anything regarding the 2014 Business Authorization or the 2016 Letter Agreement, neither of those writings made CTX liable to pay for orders by CTX-HK.  *But see* IB 48-50.

Benlida seemingly abandons reliance on the Business Authorization as a basis to argue CTX assumed CTX-HK's debts.  *See* IB 17; 48-50 (discussing primarily the Letter Agreement).  For good reason:  the plain language of the Business Authorization stated it applied to limited situations where CTX-HK had placed an order with Benlida *on CTX's behalf*—not simply on orders CTX-HK placed.  DE 177-1 at 22.  And the Business Authorization plainly did not provide that *all* CTX-HK orders constitute orders on behalf of CTX.

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Even if the Business Authorization's language were susceptible to an alternative reading, that would not create a dispute of material fact because the Letter Agreement expressly superseded the earlier instrument. The Letter Agreement provided that, except as expressly modified by its terms, the Manufacturing Agreement would remain in full force and effect. DE 177-1 at 25, § 1. Through its integration clause, the Letter Agreement expressly superseded all other prior agreements and understandings between CTX and Benlida—including, necessarily, the Business Authorization. *Id.* at 25, § 6. The unmistakable effect of this Letter Agreement, and its merger provision, was to render the Business Authorization inoperative as of July 21, 2016, the date the Letter Agreement was executed. Because the earliest TAC Invoices were issued in December 2018, *every* invoice Benlida sued upon post-dated the execution of the Letter Agreement. Thus, to the extent the Business Authorization could even fairly be construed to make CTX liable for all CTX-HK debts, that responsibility would have expired years before the earliest of the TAC Invoices sued upon.

The Letter Agreement by its own terms also does not make CTX liable for CTX-HK orders. It added CTX-HK as a party to the Manufacturing Agreement (*id.* at 24), giving that company a direct basis to place orders upon Benlida, including, implicitly, for CTX's exclusive customers. Benlida notes that, through the Letter Agreement, CTX "expressly agreed to continue making payments to

45

Benlida" (IB 49), but neglects to mention that CTX agreed to "continue to make payments … irrespective of the Discrepancy," which involved a disagreement "*between CTX[] and Manufacturer [Benlida]*" only regarding the state of "certain accounts under the [Manufacturing Agreement]"—which CTX-HK was not yet a part of. DE 177-1 at 24 (emphasis added). So the payments CTX agreed to continue making were its for its *own* purchase orders. That "CTX-HK made no such express agreement" to pay Benlida (IB 49) does not authorize reading words into the Letter Agreement to make the leap that Benlida does—that "CTX [thereby] agreed to pay for orders placed by CTX-HK" (IB 48).[11]

### B. There Is No Dispute of Fact That CTX Overpaid Benlida for the TAC Invoices Issued to It

Because there were no disputes of fact that CTX's payments to Benlida exceeded the value of Benlida's invoices to CTX during the time span covered by the TAC Invoices, summary judgment was appropriate as to that aspect of Benlida's claims as well.

---

[11] Although it is extrinsic evidence of Benlida's understanding of the effect of the Letter Agreement, Benlida requested in October 2018 that CTX sign a new agreement making it responsible for orders by CTX-HK. CTX's SMF (DE 184-4) ¶ 11 (citing DE 30-1); *id.* at ¶¶ 11-12 (citing DE 177-4 at 221:2-9). That overture separately demonstrates that Benlida did not believe CTX was obligated to cover CTX-HK's debts. CTX never signed the proposed agreement. DE 177-4 at 221:2-9.

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

The record evidence leading to this inexorable conclusion is unambiguous. Benlida asserted that the value of its shipments to CTX between December 24, 2018 and July 1, 2020—the approximate time span corresponding to the alleged damages arising from the TAC Invoices—amounted to $10,058,195.91. CTX's SMF (DE 184-2) ¶ 22 (citing DE 177-1 at 54). Yet Benlida admitted that it received $12,240,285.87 from CTX during that same time period. *Id.* So, based on Benlida's own admissions, CTX paid Benlida approximately $2.4 million more than the value of the TAC Invoices issued to CTX that Benlida claims were unpaid.

Corroborating that straightforward arithmetic, an outside audit record reflects that that, based on the "balance … from the account books of our company" as of December 31, 2019, CTX owed Benlida "$0.00" and Benlida actually owed CTX $75,684.83. CTX's SMF ¶ 13 (citing DE 177-1 at 34 (Martinez Decl., Ex. E)). The court did not err in disregarding the declaration of Benlida's chief financial officer, Roger Wu, which attempted to refute the plain language of this form. DE 221 at 3 n.3. As the court recognized, Mr. Wu's declaration did not so much negate the content of the form as explain his belief that CTX and CTX-HK were "one and the same" company. *Id.* That perception does not create an issue of fact.

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346        www.podhurst.com

Benlida's lengthy diatribe (IB 47-48) regarding the court's decision to hold it accountable for failing to include pincites in its discussion of the Wu declaration (DE 221 at 3 n.3) does not demonstrate reversible error. The Local Rules expressly require statements of material fact to be supported "by specific, pinpoint references to particular parts of record material, including … affidavits." S.D. Fla. Local R. 56.1(b)(1)(B). The court was under no obligation to provide Benlida with an opportunity to remedy its non-compliance with the rule. Benlida separately complains that the court's denial of its request for an extension of time to respond to the motion for summary judgment was "problematic" and hindered its ability to add pincites for Mr. Wu's declaration. IB 23 n.13. Again, there is no abuse of discretion in the court's decision to hold Benlida to the time limit for filing opposing memoranda. S.D. Fla. Local R. 7.1(c)(1). Regardless, the court's decisions in both respects were harmless because it nonetheless considered the Wu declaration's contents and rejected its attempt to refute the audit confirmation.

Benlida resists the straightforward conclusions flowing from its own sworn admissions, but its tactics in doing so—by reference to a covert, improper use of a commingled, FIFO methodology for applying CTX's payments (IB 35-37)—fail to create a material issue of fact.

First, apart from not having *pled* that it applied CTX's payments using the commingled FIFO practice, nor disclosed it through initial disclosures, Benlida

48

may not employ this practice, on these facts, under Florida law. Benlida's favored authority, *Randall v. Pettes*, 12 Fla. 517, 535 (1868) (cited at IB 4, 7, 10, 36), is inapplicable to this case. That precedent sets forth the general principle that, absent a contractual provision to the contrary or timely instruction from the debtor as to how it wants its payment applied, a creditor may allocate a debtor's payments to any of that debtor's outstanding debts, as the creditor sees fit.

That principle does not apply, however, where, as here, the creditor is choosing between applying payments to debts belonging to two distinct debtors. *Urrea v. Koplow*, 359 So. 3d 1212, 1215 (Fla. Dist. Ct. App. 2023) (explaining that the general principle "stand[s] for the proposition that if a *single* debtor did not specify how funds were to be applied, then the creditor was free to apply the funds to whichever of the debtor's multiple debts … is desired") (emphasis added). In *Urrea*, the Florida appellate court reversed a ruling allowing the creditor to apply a debtor's payment without allocation instructions from one individual's debt to the debt of a separate debtor, her company. The court explained that *Randall*'s general principle applied in cases where a "single debtor had multiple debts or judgments against him or her" but is "inapplicable" to the facts of that case, which "involve[d] two separate judgments and two separate debtors." *Id.* So too here. As the *Urrea* court indicated, the corporate veil between those two debtors could not be pierced

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

absent a showing of bad faith. *Id.* at 1215 n.4.[12]  As a matter of Florida law,

Benlida was not free to apply CTX's payments to pay CTX-HK's debts by way of

a combined accounts-receivable book of its choosing.

In a footnote, Benlida tries to wave away the impediment of *Urrea* by

arguing that it applied CTX's payments not to CTX-HK's *debts*, but to the *invoices*

placed by CTX-HK for the exclusive customers.  IB 36 n.20.  The distinction

Benlida is trying to make is unclear:  when a buyer like CTX-HK places orders

with Benlida, it necessarily generates a debt in its account balance with the seller

that is due to be paid.  Further, Benlida's simplistic position to dismiss *Urrea*

wholly fails to grapple with the corporate distinction between CTX and CTX-

HK—and the absence of any agreement that might otherwise make CTX liable for

CTX-HK's orders.

Second, the *Randall* principle also does not apply where, as here, the debtor

has given a timely instruction regarding the allocation of its payments.  Between

December 2018 and July 2020, CTX made payments on the TAC Invoices that

---

[12] The *Urrea* court's comment about veil-piercing also underscores the weakness
of Benlida's argument that CTX's responsibility for CTX-HK's debts can be
implied merely because CTX-HK placed orders for exclusive customers.  *See* Part
II.A.1, *supra*.  Because Benlida failed to plead facts supporting CTX-HK's alleged
alter-ego status—like *Urrea*'s bad-faith showing—and because it failed to create
an issue of fact regarding that alleged status, it cannot bind CTX with liability for
CTX-HK orders.

50

were memorialized in emails regularly transmitting "Payment Details" documents to Benlida, which identified payments that CTX had made during the contractually relevant payment period and the corresponding invoices to which CTX intended those payments to be applied. DE 177-4 at 261:7-262:24; DE 177-5 at 192:8-20; Ochoa Decl. (DE 177-6), ¶¶ 4-6. These emails listed invoices to CTX from roughly the prior three-month period. *See* CTX's SMF (DE 184-2), ¶ 23; Benlida's SMF (DE 189), ¶ 23 (failing to dispute regular transmission); *see also* DE 177-6 at 6 (Payment Detail); DE 185-7 at 29-60 (Payment Details). Benlida's Sales Director, Ms. Huang, admitted that she understood CTX's Payment Details to contain CTX's instruction that the payments be applied to the invoices listed therein. DE 177-4 at 14:9-17, 253:6-254:3.

Benlida largely ignores the uncontested Payment Detail evidence indicating that CTX instructed Benlida about how to apply its payments—further foreclosing the applicability of the *Randall* rule. Benlida's passing reference to post–summary judgment trial testimony about delays in the transmission of the Payment Details or CTX Operations Manager Lina Ochoa's awareness that Benlida was applying payments on a FIFO basis (IB 36 n.19) may not be retroactively considered on review of the summary-judgment order. *Chapman*, 229 F.3d at 1026; *Ramsey*, 469 F. App'x at 742.

**Podhurst Orseck, P.A**.

One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

Regardless, Florida law does not require the Payment Details to have been delivered *contemporaneously* with the payment in order for the allocation instruction reflected in it to be effective. Absent contract terms to the contrary, a debtor only needs to convey payment instructions "with reasonable promptness after payment." *Ott v. Bray*, 154 So. 209, 210 (Fla. 1934). The Manufacturing Agreement provided for payment 60 days after Benlida's monthly statement (DE 177-1 at 10, § 4.1 (specifying "payment terms of AMS 60 days from the date of the invoice")) such that CTX's payment for shipments was due between 60-90 days from the date of Benlida's shipments (depending on the day of the month of the shipment). Given CTX's transmission of the Payment Details spanning invoices for the prior three months (or roughly 90-day period), CTX's instructions were "reasonably prompt."

For these reasons, Benlida may not invoke *Randall* to support its use of a commingled FIFO methodology to insist there is a dispute of fact over what its own admissions acknowledged: that CTX's payments to Benlida on its invoices exceeded Benlida's invoices to CTX during the relevant time period in the complaint. There is no basis for reversal on the merits.

**Podhurst Orseck, P.A**.
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346 | www.podhurst.com

## III.  THE COURT'S DECISION TO PRECLUDE RANDALL PAULIKENS' TESTIMONY WAS PROPER

The only ruling Benlida explicitly challenges other than the summary-judgment ruling is the order granting CTX's motion *in limine* to exclude the opinions and testimony of Benlida's accounting expert, Randall Paulikens, regarding CTX-HK and CTX's supposed control over CTX-HK and responsibility for CTX-HK's debts.  IB 50-54 (discussing DE 237).  Benlida's argument on this ruling is little more than a rehash of its arguments to overturn the summary-judgment ruling.  *E.g.*, IB 52 (arguing the district court erred in precluding evidence that CTX owed money for orders placed by CTX-HK for exclusive customers); IB 53 (arguing that Benlida pled that CTX owed money on invoices to CTX-HK and that Benlida did not waive its claim).  Because this ruling flowed naturally from the court's summary-judgment ruling, the court's *in limine* decision to preclude portions of Mr. Paulikens' opinions and testimony should likewise be affirmed.

Contrary to Benlida's suggestion that the court "compounded the prejudice" of its summary-judgment and *in limine* rulings by issuing a curative instruction (IB 53), that instruction was warranted to remedy any prejudice arising from the violation of those prior rulings.  Despite the summary-judgment ruling precluding the introduction of evidence "of CTX-HK's debts or Circuitronix's responsibility

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

therefor" (DE 237), the jury nevertheless heard testimony and viewed trial exhibits referencing CTX-HK.  *E.g.*, DE 323 at 1293:8-11, 1296:13-24, 1306:9-18 (Tracy Huang's trial testimony).  On multiple occasions, CTX attempted to anticipate and block Benlida's efforts to elicit testimony about CTX-HK or introduce related evidence.  *E.g.*, DE 322 at 1018:4-1038:7, 1145:18-1149:1.  CTX also objected when Benlida elicited testimony or introduced evidence in violation of the court's prior rulings about CTX-HK's irrelevance, and requested curative instructions.  *E.g.*, DE 321 at 683:8-15; DE 322 at 1176:23-1177:4.

In light of the court's summary-judgment and *in limine* rulings that CTX-HK was not part of the case, and CTX's objections and requests for court intervention whenever Benlida ran afoul of those rulings, it was not an abuse of discretion for the court to issue curative instructions to clarify any potential jury confusion about CTX-HK's irrelevance.  *See, e.g.*, *Wiedeman v. Canal Ins. Co.*, 770 F. App'x 497, 500 (11th Cir. 2019) (no abuse of discretion in not ordering a new trial after curative instruction to cure prejudice of counsel's improper remarks in light of prior motion *in limine* ruling).

Moreover, even if the Court were to reverse the summary-judgment decision, to allow Mr. Paulikens to offer his opinions related to CTX-HK in a new trial would run afoul of this Court's rules regarding rebuttal expert reports and proper expert testimony.  Whereas CTX submitted a report by its two accounting

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

experts in support of its counterclaims by the June 8, 2023 deadline for doing so, Benlida elected not to submit an expert report supporting its claims. DE 153 (scheduling order). Mr. Paulikens' so-called "Response Report" in reality supported Benlida's case in chief by, among other things, faulting CTX's experts for failing to consider in their analysis CTX-HK—a key component of Benlida's theory of its own affirmative case. DE 197-1 ("Paulikens Report") at 1, 8, 13-14. CTX's experts were prepared to analyze transactions between CTX-HK, ROK, and Benlida as part of a rebuttal to an affirmative report from Benlida. DE 197-2 at 3 n.4. But, because Rule 26(a)(2)(D) does not contemplate expert "replies" to rebuttal reports, allowing Mr. Paulikens to criticize CTX's experts for omitting discussion of such variables, which were irrelevant to CTX's case in chief, would have deprived CTX of the possibility of responding to Benlida's criticisms in its own rebuttal report. Benlida's late disclosure of Mr. Paulikens's affirmative opinions was thus neither substantially justified nor harmless. Fed. R. Civ. P. 37(c).

Apart from being improper "rebuttal," the contention that Benlida's transactions with CTX need to be "contextualized" with a perceived responsibility of CTX for CTX-HK's invoices (IB 51) is separately inadmissible under Rule 702. DE 197 at 13-18. Among other things, that contention relies on and expounds on impermissible and unsupported *legal* conclusions regarding CTX's purported

55

corporate indistinctness from and control over CTX-HK and CTX's alleged responsibility for invoices Benlida issued to CTX-HK. DE 197 at 14-17.

In addition to its contextualization bullet point, Benlida seems to argue on appeal that the Omnibus Order precluded it from introducing three other conclusions reached by Mr. Paulikens which are *unrelated* to CTX-HK. IB 51. Benlida is, however, estopped from urging reversal based on these three remaining conclusions because it elected not to attempt to elicit these opinions by calling Mr. Paulikens as a witness at trial. Benlida grouses that, "but for the *in limine* orders [Mr. Paulikens] would have … testified at trial" about four conclusions. IB 50-51. But it never called him during trial or made a proffer of his testimony. Only the first of the four conclusions Benlida lists—regarding the purported need to "contextualize[]" CTX's overpayments with its supposed responsibility for CTX-HK's invoices (IB 51)—was foreclosed by the court's order. That ruling merely precluded Benlida from introducing Mr. Paulikens' testimony "to the extent he opines on Circuitronix's experts' failures to account for CTX-HK's debts and on the relationship between Circuitronix and CTX-HK." DE 237 at 2.[13]

---

[13] It is not even clear Mr. Paulikens could properly have testified about those subjects had it called him as a witness. For instance, Mr. Paulikens admitted that he "didn't specifically take a position" on whether CTX made timely payment instructions. DE 197-3 ("Paulikens Dep.") at 170:16-25. *Compare* IB at 51 (third bullet, asserting CTX did not designate which invoices it was paying).

56

Benlida cannot accuse the district court of error for its own strategic decision not to call Mr. Paulikens as a witness. *See* DE 323 (Trial Tr. Vol. V) at 1448:15-1449:1 (CTX counsel requesting permission to read deposition designations for Mr. Paulikens since Benlida "declined to call Mr. Paulikens as their expert").

## CONCLUSION

For the foregoing reasons, the orders challenged on appeal should be affirmed.

DATED this 28th day of October, 2024.

Respectfully submitted,

*/s/  Christina H. Martinez*
Stephen F. Rosenthal
Florida Bar No. 0131458
Christina H. Martinez
Florida Bar No. 1029432
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue, Ste. 2300
Miami, Florida 33131
T.: 305-358-2800/F.: 305-358-2382
srosenthal@podhurst.com
cmartinez@podhurst.com

*Counsel for Appellee*

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346          www.podhurst.com

## CERTIFICATE OF COMPLIANCE

Counsel for Appellee hereby certifies that the type style utilized in this brief is 14 point Times New Roman proportionally spaced, and there are 12,997 words in the motion.

/s/     *Christina H. Martinez*
Christina H. Martinez


## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of October, 2024, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/     *Christina H. Martinez*
Christina H. Martinez

**Podhurst Orseck, P.A.**
One SE Third Avenue, Suite 2300, Miami, FL 33131 • Miami 305.358.2800 Fax 305.358.2382 • Fort Lauderdale 954.463.4346        www.podhurst.com