# 23-14102

## In the
## United States Court of Appeals
### For the Eleventh Circuit



JIANGMEN BENLIDA PRINTED CIRCUIT CO., LTD.,

*Plaintiff-Counter Defendant-Appellant,*

ROK PRINTED CIRCUIT CO., LTD.,

*Plaintiff,*

versus

CIRCUITRONIX, LLC,

*Defendant-Counter Claimant-Appellee.*

_____

ON APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA,
NO. 0:21-cv-60125-RNS (HON. ROBERT N. SCOLA)

## REPLY BRIEF FOR PLAINTIFF-COUNTER DEFENDANT-APPELLANT

RICHARD E. LERNER
JEAN-CLAUDE MAZZOLA
MAZZOLA LINDSTROM, LLP
*Attorneys for Plaintiff-Counter Defendant-Appellant*
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
(646) 216-8300
richard@mazzolalindstrom.com
jeanclaude@mazzolalindstrom.com

APPELLATE INNOVATIONS
(914) 948-2240

22156

**Certificate of Interested Persons and Corporate Disclosure Statement**

Pursuant to Eleventh Circuit Local Rule 26.1-1(a)(2) the undersigned counsel of record for plaintiff-appellant Jiangmen Benlida Printed Circuit Co., Ltd. certifies that the following is the full and complete list of plaintiff's members/owners:

Huang Xiangjiang

Huang Hanchao

Zhang Qing

Liu Yusheng

Guangdong Yuda Investment Partnership

# TABLE OF CONTENTS

**Page**

Certificate of Interested Persons and Corporate Disclosure Statement .................C-1

Table of Contents ........................................................................................................i

Table of Authorities ..................................................................................................iv

Introduction ................................................................................................................1

Argument in Reply

Point I:

The Facts Alleged in the TAC Put CTX-US on Notice; CTX-

US's Feigned Ignorance and Attacks on the TAC Are Legally

Improper and Red Herrings Without Any Basis in Fact or Law .......................3

   A. The TAC Sufficiently Noticed CTX-US that Benlida Sought to Hold

     CTX-US Accountable for "CCT-HK"-Denominated Invoices for

     CTX-US's Exclusive Customers ................................................................3

       1. Benlida Was Not Required to Plead Facts Demonstrating

         Agency .........................................................................................8

       2. Benlida Did Not Raise a New Claim on Summary Judgment ....13

   B. CTX-US Admitted It Was on Notice that Benlida Was Suing for

     Nonpayment of CTX-HK Invoices for Exclusive Customer Orders;

     CTX-US Was Also on Notice of Benlida's FIFO Accounting

     Practices ...................................................................................................17

i

Point II:

    Benlida Raised Disputed Issues of Material Fact on Summary
    Judgment; Resolution of Those Facts in CTX-US's Favor
    Was Contrary to Law and Improperly Took the Role of Fact-
    Finding Away from the Jury ............................................................20

     A. CTX-US's Liability for CTX-HK's Exclusive Customer Orders is a
       Central—and Hotly Disputed—Issue of Material Fact...........................20

     B. Benlida's Evidence Demonstrating the Benefits CTX-US Received
       Under the Manufacturing Agreement for Orders Placed for CTX-US's
       Exclusive Customers by CTX-HK and Mr. Wu's Declaration All
       Raise Triable Issues of Material Fact........................................................21

     C. Whether CTX-HK Was an Agent or Alter Ego of CTX-HK is a
       Question of Fact that Should Have been Presented to the Jury ...............23

     D. The Question of Whether There Was a Breach of the Manufacturing
       Agreement Was a Question of Fact that Should Have Been Presented
       to the Jury ................................................................................................24

     E. A Determination Whether CTX-US's Payment Instructions Were
       "Reasonably Prompt" is Another Disputed Issue of Fact ........................25

Point III:

    The Court Erred in Precluding Paulikens from Offering

    Rebuttal Testimony ...........................................................................27

Conclusion ...........................................................................................28

# TABLE OF AUTHORITIES

**Page**

**Cases:**

*Am. Home Assur. v. Nat'l R.R. Passenger,*

    908 So. 2d 459 (Fla. 2005)................................................................10

*Ashcroft v. Iqbal,*

    556 U.S. 662 (2009) ....................................................................3, 6

*Avena v. Imperial Salon & Spa,*

    740 Fed. Appx. 679 (11th Cir. 2018)..............................................7

*Bell Atlantic Corp. v. Twombly,*

    550 U.S. 544 (2007) ......................................................3, 4, 6, 8, 16

*Brackin Tie, Lumber & Chip v. McLarty Farms,*

    704 F.2d 585 (11th Cir. 1983)..........................................................9

*Farley v. Chase Bank,*

    37 So. 3d 936 (Fla DCA 2010) ........................................................4

*Font v. Stanley Steemer,*

    849 So.2d 1214 (Fla. DCA 2003) ..................................................23

*Hendry v. Grange Mut.,*

    372 F.2d 222 (5th Cir. Unit B 1967)..............................................26

*Hunt v. Aimco Properties,*

    814 F. 3d 1213 (11th Cir. 2016)......................................................16

iii

*Hurlbert v. St. Mary's Health Care Sys.,*

    439 F.3d 1286 (11th Cir. 2006)..............................................................13, 14, 16

*Johnson v. Unique Vacations,*

    498 F. App'x 892 (11th Cir. 2012) ....................................................................23

*Maestrelli v. Arrigoni, Inc.,*

    476 So.2d 756 (Fla. DCA 1985) ..................................................................12, 13

*Mahgoub v. Miami Dade Cmty. College,*

    2006 U.S. App. LEXIS 9291 (11th Cir. 2006) ...................................................14

*McManus v. Amerijet Intl.,*

    2024 U.S. App. LEXIS 22143 (11th Cir. Aug. 30, 2024) ..................................16

*Moise v. Miami-Dade Cnty.,*

    2018 WL 4445111 (S.D. Fla. Aug. 22, 2018)....................................................14

*MSP Recovery Claims v. United Auto. Ins.,*

    60 F.4th 1314 (11th Cir. 2023) ..........................................................................14

*NAEH Media Group v. City of Lauderhill,*

    2024 U.S. App. LEXIS 6358 (11th Cir. 2024) ...................................................15

*Ness Racquet Club v. Ocean Four 2108,*

    88 So. 3d 200 (Fla. DCA 2011) .........................................................................25

*Ott v. Bray,*

    114 Fla 547 (1934) .............................................................................................26

Randall v. Pettes,

    12 Fla. 517 (1869) ..........................................................................26

Ray v. Comm'r, Alabama Dep't of Corr.,

    915 F.3d 689 (11th Cir. 2019)...........................................................7

Resort v. Twin Vee Catamarans,

    2018 US Dist LEXIS 251336 (SD Fla Jan. 22, 2018) ......................1

Rivell v. Private Health Care Sys.,

    520 F.3d 1308 (11th Cir. 2008)........................................................16

Sanjuan v. American Bd. of Psychiatry & Neurology,

    40 F.3d 247 (7th Cir. 1994)................................................................8

Swierkiewicz v. Sorema N.A.,

    534 U.S. 506 (2002) ...............................................................3, 6, 16

Urrea v. Koplow,

    359 So. 3d 1212 (Fla. DCA 2023) ..................................................26

US Iron v. GMA Garnett,

    660 F.Supp.3d 1212 (ND Fla 2023)................................................12

Villazon v. Prudential Health Care Plan,

    843 So.2d 842 (Fla. 2003)...............................................................23

**<u>Statutes, Rules and Treatises:</u>**

23 Williston on Contracts § 63.15 (4th ed. 2002)....................................................25

Fla Stat § 671.103 ....................................................................................................24

Fla Stat § 671.203 ....................................................................................................24

Fla Stat § 671.205 ....................................................................................................24

FRCP 8 ..........................................................................................................3, 6, 16

FRCP 26 ....................................................................................................................19

**Introduction**

Plaintiff-appellant Benlida submits this brief in reply to defendant CTX-US's[1] appellee brief in further support of its appeal of several determinations below, including orders granting summary judgment in favor of CTX-US, denying Benlida's motion for reconsideration, and certain *in limine* rulings.

Far from refuting Benlida's arguments, CTX-US's brief contorts legal standards and disregards factual evidence in the record. For example, while CTX-US acknowledges the propriety of the *de novo* standard of review, it ignores the well-settled principle that the record must be reviewed in the light most favorable to the non-moving party—Benlida—and pretends that its points are *a priori* truths, many of which need not even be supported by legal precedent, and that material issues of fact may be decided as a matter of law against Benlida. CTX-US says (p.22) that "what we'll call this 'bound-by-the-pleadings' principle counsels for affirmance." But this is an appeal from an order granting summary judgment, not a motion to dismiss. The bound-by-the-pleadings principle is applied on motions to dismiss, not on motions for summary judgment. See, *e.g.*, *Resort v. Twin Vee Catamarans*, 2018 US Dist LEXIS 251336, *14-15 (SD Fla Jan. 22, 2018)("This Court is bound by the allegations in the Complaint when ruling on this Motion [to dismiss]. Accordingly, the Release is more appropriately raised as an affirmative

---

[1] The same abbreviations as are used in the opening brief are used herein.

defense and will not be considered at this stage."). CTX-US employs these sleights of hand in order to distract from the overwhelming arguments in favor of reversal that are firmly rooted in the record and law.

As set forth in Point I, Benlida's TAC was sufficient under applicable notice pleading standards. Rather than presenting "alternative facts," Benlida's argument was derivative of the pleadings, and—viewed in the most favorable light—Benlida demonstrated that the TAC's factual allegations were supported by the evidence, in that the "CCT-HK"-denominated invoices were issued for PCBs made for CTX-US's Exclusive Customers.

As detailed in Point II the jury was entitled to decide whether there was a triable issue of fact as to CTX-US's liability for the "CCT-HK"-denominated invoices—along with other material disputed facts—and the district court impermissibly usurped the jury's fact-finding role. Additionally, as briefly argued in Point III, precluding Benlida from demonstrating CTX-US's responsibility for "CCT-HK"-denominated invoices stemming from orders placed for CTX-US's Exclusive Customers was prejudicial. Benlida's expert CPA Paulikens should have been permitted to rebut CTX-US's expert CPAs by showing that they had disregarded the economics of the relationship and course of dealing, which an accountant must take into account. Based on the "overpayment" fiction, which

Benlida was barred from rebutting with expert testimony, CTX-US obtained a windfall.

**Argument in Reply**

**Point I:** **The Facts Alleged in the TAC Put CTX-US on Notice; CTX-US's Feigned Ignorance and Attacks on the TAC Are Legally Improper and Red Herrings Without Any Basis in Fact or Law.**

**A.** **The TAC Sufficiently Noticed CTX-US that Benlida Sought to Hold CTX-US Accountable for "CCT-HK"-Denominated Invoices for CTX-US's Exclusive Customers.**

Benlida's complaint satisfied the *Twombly* notice-pleading standard of FRCP 8(a)(2): a "heightened fact pleading of specifics" is not required; instead, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility is not about whether the factual allegations are likely to be true, for they are "accepted as true." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, plausibility means that the factual allegations pled must be "suggestive enough to render [the element] plausible." *Twombly*, at 556; *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002)(under FRCP 8(a)(2), a fact need not be pled just because it would eventually need to be established for a plaintiff to prevail at trial; a plaintiff need not plead specific facts beyond those necessary to state a claim and the grounds showing entitlement to relief).

Here, the TAC satisfies this standard. Benlida pled two legal claims in the TAC—breach of contract and account stated.[2] The TAC alleged that CTX-US was responsible for paying those invoices. Unlike in *Twombly*, Benlida **did** plead facts that on their own would establish, "without more," the existence of CTX-US's obligation to pay for the "CCT-HK"-denominated invoices. *Twombly*, at 554. In particular, the TAC (ECF-26, ¶¶439-40) specified the existence of a contract between CTX-US and Benlida, obligating CTX-US to pay certain invoices, and (¶¶261-431) listed each "CCT-HK" invoice that CTX-US was contractually responsible to pay, which CTX-US had failed to pay, resulting in damages. That is all that was required. The TAC alleged: (a) offer and acceptance of individual purchase orders (¶¶ 7-8); (b) performance by Benlida (*id.*); and (c) the issuance of invoices and non-payment by CTX-US (¶12).[3] These are **factual allegations, not legal conclusions**. The TAC also alleges (¶8) that the goods were worth "$13,655,335.93," the combined value of the price-increased CTX-US invoices

---

[2] An account stated is "an agreement between persons who have had previous transactions, fixing the amount due in respect of such transactions, and promising payment….[¶]Thus, when an account statement has been rendered to and received by one who made no objection thereto within a reasonable time, a prima facie case for the correctness of the account and the liability of the debtor has been made. An objection impliedly admits the correctness of the amounts on the account stated when it does not challenge them...." *Farley v. Chase Bank*, 37 So. 3d 936, 937 (Fla DCA 2010)(citations omitted).

[3] Kukreja testified that he received the invoices and had no material objections to them. (TT-776-777).

*and* "CCT-HK"-denominated invoices, and that the invoices were all issued pursuant to the "contract"— namely, the Manufacturing Agreement, for CTX-US's Exclusive Customers.[4] Thus, Benlida's TAC pled that the goods ordered by "defendant Circuitronix" *included* the goods invoiced *sub nom* "CCT-HK," and that CTX-US was obligated to pay for them.

CTX-US argues there was no express mention of "Manufacturing Agreement" in the TAC; however, its answer (ECF-34) shows it knew what contract was being referenced.[5] CTX's denials as to the application of such contract to "CCT-HK" invoices go to the factual merits of the dispute, not to the TAC's sufficiency.

The TAC (¶¶432-37) also contains factual allegations concerning the parties' agreement regarding price increases. The agreed-upon increases, as alleged, applied to all PCBs manufactured for CTX-US's Exclusive Customers (¶433),

---

[4] "**First Cause of Action: Breach of Contract:** ¶439. In exchange for the circuit boards manufactured by plaintiffs and sold to defendant Circuitronix, the latter **agreed** to pay the former therefor. ¶440. Plaintiffs performed their obligations under the **contract** by delivering such circuit boards to defendant Circuitronix at the latter's designated place of delivery." (Emphasis added).

[5] ECF-34 "¶447. ADMITTED that CTX ordered goods from Plaintiff **pursuant to the terms of the parties' contract**, DENIED in all other respects. ¶448. ADMITTED that CTX agreed to pay the purchase **price specified by the parties' contract** and **subject to its terms and conditions, including quality, delivery, and lead-time, among other things**, and amounts stated in invoices subject to these considerations. DENIED in all other respects." (Emphasis added).

whether the orders were placed by CTX-US or CTX-HK. Benlida therefore pled

with factual particularity both mutual agreement and consideration for the

increases, applicable to ***all*** of the identified invoices, including the "CCT-HK"-

denominated invoices, and CTX-US admitted as such.[6] Thus, even "without

more," Benlida's allegations sufficed under *Iqbal*, *Twombly*, *Swierkiewicz*, and

FRCP 8(a)(2) to give CTX-US notice of a breach-of-contract/account-stated claim

that CTX-US was obligated to pay "CCT-HK"-denominated invoices. With respect

to account stated, Benlida alleged: "¶447. Defendant Circuitronix expressly agreed

to purchase the aforesaid goods from plaintiffs. ¶448. Defendant Circuitronix

expressly agreed to pay the amounts specified in the invoices. ¶449. Plaintiffs

delivered the aforesaid goods as specified in the invoices. ¶450. Plaintiffs

presented the accounts stated by sending the invoices to defendant Circuitronix,

which constituted the bills for the goods delivered."

CTX-US argues (p.20) that "[a]s to the TAC Invoices issued to CTX-HK,

the complaint gave no hint of any grounds by which CTX[-US], a different

company, could be responsible for those invoices." But Benlida alleged all such

invoices were issued for purchases under the ***contract***, and by its answer CTX-US

---

[6] ECF-34 "¶433. ADMITTED that in December 2016 the parties discussed and partly agreed upon parameters for certain pricing adjustments, both increases and decreases, based upon various factors including lead time, production volume, and shipment volume, among other things. DENIED in all other respects."

"ADMITTED" this (ECF-34, ¶447), and also "ADMITTED" receipt of all of "the invoices" alleged in the TAC (see TAC ECF-26, ¶450, and Answer, ECF-34, ¶450), which includes the "CCT-HK"-denominated invoices. CTX-US thus showed that it understood that the Manufacturing Agreement was the operative contract that governed purchases for CTX-US's Exclusive Customers. (ECF-26, TAC ¶¶447-448, and ECF-24, Answer to same), and that it was being sued therefor. That such "CCT-HK"-denominated invoices were, as alleged, provided to CTX-US (ECF-26, ¶450; Answer, ECF-34, ¶450) sufficed, under plausibility pleading principles, to give CTX-US notice that it was being sued for nonpayment thereof. CTX-US may dispute the truth of this material factual allegation at trial, but as a matter of **pleading**, the grounds were sufficiently alleged.

The district court misapplied *Ray v. Comm'r, Alabama Dep't of Corr.*, 915 F.3d 689, 697 n.3 (11th Cir. 2019), as has CTX-US (p.27). Both overlook that *Ray* continues: "The pleading must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, *or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial*." *Ray*, at 697 n.3; see also *Avena v. Imperial Salon & Spa*, 740 Fed. Appx. 679, 680 (11th Cir. 2018)("'while notice pleading may not require that the pleader allege a "specific fact" to cover every element or allege

"with precision" each element of a claim,' a complaint still must contain either direct or inferential allegations respecting all the material elements necessary to sustain a recovery under some viable legal theory.")(Citations omitted).

Here, the TAC contained allegations from which an inference could fairly be drawn that Benlida would present evidence that CTX-US was liable for those invoices, and Kukreja did draw that inference, as he admitted he was aware that Benlida was suing CTX-US for the "CCT-HK"-denominated invoices. (ECF-267, pp.194-196).

Beyond that, a plaintiff need not plead additional facts supporting any particular theory of recovery. *Twombly*, at 562-563 ("once a claim has been stated adequately, it may be supported ***by showing any set of facts consistent with the allegations in the complaint***.")(emphasis added; citing *Sanjuan v. American Bd. of Psychiatry & Neurology*, 40 F.3d 247, 251 (7th Cir. 1994)(once a claim for relief has been stated, a plaintiff "receives the benefit of imagination, so long as the hypotheses are consistent with the complaint")).

### 1. Benlida Was Not Required to Plead Facts Demonstrating Agency.

Having pled a breach-of-contract claim due to non-payment of the "CCT-HK"-denominated invoices, Benlida was entitled to "receive[] the benefit of imagination, so long as the hypotheses [were] consistent with the complaint." *Twombly*, at 563. When CTX-HK placed orders for PCBs for CTX-US's Exclusive

Customers it did so as either an agent, division, or alter ego of CTX-US. This is an elaboration on the facts underlying the claim, rather than alternative inconsistent facts at odds with the TAC.

In opposition, CTX-US presents the strawman argument that Benlida is seeking to have it pay the "debts" of a completely different company, as though it is a veritable stranger to CTX-HK. To the contrary, it has consistently been Benlida's position that all orders placed for PCBs pursuant to the contract between Benlida and CTX-US were the responsibility of CTX-US to pay. They were the debts of CTX-US, because the PCBs were manufactured for CTX-US's Exclusive Customers.[7] Benlida is not asking CTX-US to pay the debts of CTX-HK; it is asking that it pay *its own debts*, as obligor, for PCBs manufactured for CTX-US's Exclusive Customers.

The district court disregarded that Benlida alleged that CTX-US was responsible, ***in its own behalf***, to pay for the PCBs, and reinterpreted the argument to be that Benlida was seeking to hold CTX-US ***vicariously liable*** for CTX-HK's

---

[7] While CTX-HK was a co-obligor as to orders that it placed for CTX-US's Exclusive Customers, there was no requirement that it be made a party to this lawsuit. See *Brackin Tie, Lumber & Chip v. McLarty Farms*, 704 F.2d 585 (11th Cir. 1983)(co-obligor is not a necessary party to a lawsuit). Indeed, the district court held, when it denied CTX-US's original motion to dismiss, that CTX-HK was not a necessary party to the lawsuit, since complete relief—*i.e.*, payment of all the moneys due on all the invoices referenced in the complaint—could be accorded as between Benlida and CTX-US. (ECF-31).

"debts." CTX-US (p.31) mischaracterizes Benlida's position on appeal as that the district court "unfairly faulted it for an imperfect articulation of a vicarious liability theory." Benlida, however, has never argued that CTX-US is vicariously liable for orders placed by CTX-HK. Such would be outside the purview of contract law, as vicarious liability is a tort law concept, inapplicable to contract claims. *Am. Home Assur. v. Nat'l R.R. Passenger*, 908 So. 2d 459, 467-68 (Fla. 2005)("vicarious liability can be described as...liability [] imputed ***based on the tortious acts of another***")(citations omitted; emphasis added). There was no reason, in this breach-of-contract action, to have pled that CTX-US's liability was "vicarious," rather than direct, for the orders submitted by CTX-HK for PCBs for CTX-US's Exclusive Customers.

CTX-US also argues (at n.11) that it declined to sign a new agreement in 2018 that would have required CTX-US to pay for CTX-HK orders, contending this constitutes "extrinsic evidence" of Benlida's understanding that CTX-US was not obligated to pay for orders placed for its Exclusive Customers by CTX-HK. This is another example of CTX-US asking the Court to review the record in the light *most hostile to Benlida*. In opposition, Benlida submitted Tracy Huang's declaration (ECF-186, ¶29) explaining—as the cover email (ECF-177-1) for the 2018 agreement makes clear—that it "was sent to CTX-US because the Chinese

customs authorities had pressed for it; however, as the customs authority dropped the request, Benlida did as well."

Benlida argued below (as it does here) that when CTX-HK would send Benlida an offer to buy PCBs from Benlida for CTX-US's Exclusive Customers, it was an order for the benefit of CTX-US. This is either because CTX-US interacted with Benlida through CTX-HK, or because CTX-HK, *de facto*, was CTX-US. Regardless of whether CTX-HK was an agent for CTX-US, alter ego, or mere division, when Benlida would accept a CTX-HK order for PCBs for CTX-US's Exclusive Customers, CTX-US was bound, ***pursuant to the Manufacturing Agreement between Benlida and CTX-US***, to pay for such PCBs, just as Benlida was bound to manufacture them.

While CTX-HK may also have had an obligation to pay for the PCBs, CTX-HK was not a party to the Manufacturing Agreement. The party ultimately responsible pursuant to that contract was CTX-US. Benlida was happy to be paid by CTX-HK. But if CTX-HK did not pay, CTX-US still had the status of obligor because CTX-US had accepted the bilateral obligation to pay.

On summary judgment, Benlida argued that CTX-HK was acting as an agent of, division of, or alter-ego of, CTX-US. But CTX-US was itself responsible for paying for orders placed by CTX-HK for its Exclusive Customers, whether CTX-HK was acting as its agent, division, or alter ego. CTX-HK's status was, and

remains, amorphous, and quite beside the point; each alternative is absolutely consistent with the allegations in the TAC.

CTX-US faults (p.32) Benlida for its citation to *Maestrelli*, arguing that the case was miscited because, even where there is a breach-of-contract claim, the plaintiff must still set forth some allegations regarding the agency relationship. But *Maestrelli* says exactly the opposite of what CTX-US claims, and exactly the proposition for which it was cited by Benlida—*viz*., that it is sufficient to allege that the principal is responsible, without even referencing any agent:

> A principal's liability for the acts of his agent is not a "theory of liability," in the sense of a cause of action, such as debt or express or implied contract that must be pleaded to invoke the trial court's subject matter jurisdiction and to meet due process notice requirements. As a general rule, one suing upon a contract made for the defendant by an agent ***need not refer to the agency*** in the complaint but may merely allege the legal effect of the agent's action ***by averring that the contract was made by the principal himself***.

*Maestrelli v. Arrigoni, Inc.*, 476 So.2d 756, 757 (Fla. DCA 1985)(emphasis added).

CTX-US argues in the same sentence that Benlida also miscited *US Iron v. GMA Garnett*, 660 F.Supp.3d 1212 (ND Fla 2023). That court, however, also stated that agency need not be pled in a breach-of-contract case: "Defendant initially argues that plaintiff 'failed to plead a claim for agency in its complaint and this failure is terminal to [plaintiff]'s case,' but that argument is meritless because under Florida law, a plaintiff 'need not refer to the agency in the complaint but may

merely allege the legal effect of the agent's action by averring that the contract was made by the principal himself.'" (quoting *Maestrelli*, at 757).

CTX-US adds words to a quote from the case to suggest that agency was pled, stating that the complaint therein detailed the negotiations "[between the plaintiff and a defendant's alleged agent]." Those bracketed words do not appear in the decision, and the insertion distorts the holding that it is enough to allege the defendant was subject to liability, without reference to any agency theory.

When an agent or alter ego buys on behalf of a principal, it is both factually and technically correct to say that the principal buys the goods. *Maestrelli*, at 757. For this reason, Benlida alleged CTX-US was contractually responsible for paying for PCBs ordered by CTX-HK for CTX-US's Exclusive Customers. In opposing summary judgment, there was no departure from the complaint. Rather, the proof was entirely consistent.

## 2. Benlida Did Not Raise a New Claim on Summary Judgment.

*Hurlbert*,[8] CTX-US's key case, was misapplied by the district court (ECF-221, p.9), and CTX-US (pp.25-26). In *Hurlbert*, the plaintiff asserted a cause of action for interference with medical leave under the FMLA. The complaint predicated the claim on plaintiff's *own* serious health condition. But on summary

---

[8] *Hurlbert v. St. Mary's Health Care Sys.*, 439 F.3d 1286 (11th Cir. 2006).

judgment, it was argued that plaintiff's ***mother's*** serious health condition was the predicate. *Hurlbert*, at 1297.

Likewise, *MSP Recovery Claims v. United Auto. Ins.*, 60 F.4th 1314, 1320 (11th Cir. 2023), is miscited (p.35). In *MSP*, this Court held that the plaintiff opposing summary judgment could not assert a fact that was alternative to, and not supportive of, the allegations in the complaint. There, the plaintiff had to establish the defendant as a primary obligor, whereupon the plaintiff as secondary obligor would be able to seek reimbursement. The complaint alleged that, per the defendant insurer's ***insurance policy***, the defendant was made a primary obligor. As in *Hurlbert*, this Court decided that the summary-judgment argument was based on ***a settlement agreement***, which was unpled and alternative to, rather than derivative of, the complaint's factual allegation of primary-payer status under the insurance policy.

The district court recited the proposition that "Federal courts also routinely hold that a plaintiff may not assert a new theory supporting an existing claim in response to a motion for summary judgment." (See ECF-221, pp.6-7 (citing *Moise v. Miami-Dade Cnty.*, 2018 WL 4445111, *12 (S.D. Fla. Aug. 22, 2018)). However, Benlida did not assert a new theory, and the cases cited by *Moise* for this legal proposition are distinguishable. For example, in *Mahgoub v. Miami Dade Cmty. College*, 2006 U.S. App. LEXIS 9291 (11th Cir. 2006), cited by *Moise* at *28, the

complaint made a Title VII claim based on certain occurrences. When the occurrences were found to be stale, the plaintiff argued on summary judgment that his claim was instead based on more recent occurrences. This was rejected as an alternative factual claim beyond the complaint's scope.

Benlida has done no such thing; Benlida did not raise a new claim in opposition to summary judgment. Rather, it made an argument that was within the scope of the TAC's factual allegation that CTX-US was contractually responsible to pay "CCT-HK"-denominated invoices. This is not only made evident by the exclusivity provisions of the Manufacturing Agreement, but also by the parties' course of conduct—for example, CTX-HK added names to the list of CTX-US's Exclusive Customers, and then placed orders requesting that Benlida produce PCBs for CTX-US's Exclusive Customers. (See, *e.g.*, ECF-186, p.2, ¶5, and ECF-186-1 (email requests from both CTX-US and CTX-HK to add customers to the Exclusive Customer List)).

The evidence opposing summary judgment is "better characterized" as additional facts submitted in support of the claim pled, rather than a "fundamental change" in its nature. *NAEH Media Group v. City of Lauderhill*, 2024 U.S. App. LEXIS 6358, *9-10 (11th Cir. 2024)("In our view, no amendment of the complaint was necessary for plaintiffs to argue this evidence at summary judgment....***[T]he question at summary judgment is not whether the complaint stated a plausible***

**claim, but whether the evidence reasonably could support a verdict for the nonmoving party on its claims.**" (Emphasis added; unpublished; citing *Hurlbert*; other citations omitted). On a practical level, this makes sense, given that additional facts are learned in discovery that may support a party's cause of action.

Under FRCP 8(a)(2), a complaint need not satisfy the higher burden of establishing a *prima facie* case. *Hunt v. Aimco Properties*, 814 F. 3d 1213, 1221-1222 (11th Cir. 2016). "That's because the *prima facie* case is an evidentiary standard, not a pleading requirement." *McManus v. Amerijet Intl.*, 2024 U.S. App. LEXIS 22143, *7-8 (11th Cir. Aug. 30, 2024)(citations omitted). "It is sufficient if the complaint succeeds in identifying facts that are suggestive enough to render the element plausible." *Rivell v. Private Health Care Sys.*, 520 F.3d 1308, 1309-1310 (11th Cir. 2008)(citations omitted).

Nonetheless, CTX-US argued that Benlida did not explicitly lay out its summary judgment argument in the TAC. But the pleading standard that CTX-US advances is precisely the heightened pleading standard rejected in *Swierkiewicz*, 534 U.S. 506, and by *Twombly*, at 563, 569-570: (emphasis added)

> Even though Swierkiewicz's pleadings "detailed the events leading to his termination, provided relevant dates, and included the ages and nationalities of at least some of the relevant persons involved with his termination," the Court of Appeals dismissed his complaint for failing to allege certain additional facts that Swierkiewicz would need at the trial stage to support his claim in the absence of direct evidence of discrimination....We reversed on the ground that ***the Court of Appeals had impermissibly applied what***

***amounted to a heightened pleading requirement by insisting that
Swierkiewicz allege "specific facts" beyond those necessary to state his
claim and the grounds showing entitlement to relief***....Here, in contrast, we
do not require heightened fact pleading of specifics, ***but only enough facts
to state a claim to relief that is plausible on its face***.

**B.     CTX-US Admitted It Was on Notice that Benlida Was Suing for
Nonpayment of CTX-HK Invoices for Exclusive Customer
Orders; CTX-US Was Also on Notice of Benlida's FIFO
Accounting Practices**

As good faith and fair dealing are the touchstone of commerce, candor is the

touchstone of litigation. Yet on summary judgment, CTX-US feigned ignorance

that it was being sued for the "CCT-HK"-denominated invoices, though Kukreja

acknowledged he was aware that his company was being sued for such invoices

(ECF-267, pp.194-196), as did both of CTX-US's expert witnesses. (ECF-201-1,

pp.126-127; ECF-201-2, pp.62-63,131).[9] And in its answer to the account-stated

claim, CTX-US "ADMITTED" receipt of the invoices. (See TAC ECF-26, ¶450,

and Answer, ECF-34, ¶450).

Likewise, CTX-US feigned ignorance of Benlida's accounting methods,

contending Benlida had been covertly applying payments to older invoices on a

FIFO basis, notwithstanding that Benlida's pleadings—*viz*., its answer to CTX-

US's counterclaim—stated that moneys received were applied on a FIFO basis.

---

[9] Again, at trial, Kukreja acknowledged receipt of all of the invoices, with no
material objections. (TT-776-777).

(ECF-42 ("¶36. Deny as alleged, and note that overpayments offset past debt, on a FIFO–first-in-first-out–basis")). Benlida's interrogatory responses, which (contrary to CTX-US's remonstrations of belatedness (p.12)) were served within two weeks of CTX-US's lodging of the interrogatories, and were thus extraordinarily timely,[10] and set forth that FIFO attribution was applied to the payments to Benlida. (See also ECF-189, ¶¶16 & 26).

Lina Ochoa, operations manager of all of the Circuitronix companies, acknowledged she was aware that Benlida was applying payments on a FIFO basis. (TT-889-890).[11] CTX-US's expert also acknowledged that FIFO is proper when there is a running account between the parties. (ECF-201-1, pp.241-242, 248).[12] Benlida's expert concurred, stating that such is customary and that the alternative

---

[10] Speaking of the duty of candor, CTX-US's original interrogatories of April 23, 2022, were timely objected to by Benlida on April 27, 2022, principally because they far exceeded the limit of 25 questions. CTX-US did not re-propound proper interrogatories until May 4, 2023, which Benlida responded to on May 18, 2023. See ECF-185-1,2,3,4,5. (Not included in appendix). While CTX-US complains (pp.11-12) that it took Benlida a year to respond to the interrogatories, this is utterly disingenuous, as it took CTX-US over a year to re-propound proper interrogatories, which were responded to by Benlida within two weeks of receipt.

[11] Benlida bookkeeper Chen Zhanjiao also testified at deposition that payments, when received, were logged on a FIFO basis. (ECF-185-7, pp.24-25).

[12] "*Q.*…[I]s there anything unreasonable about the payee applying that money to their oldest invoices? *A.* [Parisi] That's one option." (ECF-201-1, pp.241-242).

would be contrary to normal business practices and impracticable. (ECF-197-3, pp.82, 111-112, 168-169, 256-258).

The parties' longtime course of dealing also demonstrates that, not only was CTX-US aware of Benlida's use of FIFO accounting for both entities, Kukreja also instructed Benlida, in writing, to "offset" CTX-US's payments on CTX-HK's account. (ECF-187-2). "Payments owed need to be offset with payments made by Circuitronix, USA on behalf of CTX-HKG. */s/ Rishi Kukreja*." (ECF-187-2). That is, CTX-US acknowledged that it had indeed made payments for "CCT-HK"-denominated invoices.

CTX-US also presents the red-herring argument that Benlida's initial disclosures did not set forth the accounting methodology by which it determined that CTX-US owed it $13,655,335.93. It's a distraction because FRCP 26 does not require the methodology be set forth in the initial disclosure. Rather, the Rule required Benlida to provide in its initial disclosure "a computation of each category of damages claimed...." The computation of $13,655,335.93 was provided in the initial disclosure, yet CTX-US made no motion to compel Benlida to identify the "theory" upon which the computation was based. Instead, it asked for Benlida's methodology *in its May 4, 2023* interrogatories (ECF-185-4), to which Benlida timely responded *on May 18, 2023*, with amendments on May 24 and June 8, setting forth in detail Benlida's methodology, including FIFO. (ECF-185-5).

**Point II.** **Benlida Raised Disputed Issues of Material Fact on Summary Judgment; Resolution of Those Facts in CTX-US's Favor Was Contrary to Law and Improperly Took the Role of Fact-Finding Away from the Jury.**

There were numerous material facts in dispute that Benlida raised in opposition to summary judgment, including the parties' course of dealing, which raised questions about the veracity of CTX-US's version of events, and the implications of the Business Authorization and 2016 Letter Agreement. CTX-US's brief, while calling them undisputed, highlights additional disputed facts.

**A.** **CTX-US's Liability for CTX-HK's Exclusive Customer Orders is a Central—and Hotly Disputed—Issue of Material Fact.**

Opposing summary judgment Benlida demonstrated—and surely presented sufficient evidence to raise a triable issue of fact—that CTX-US was liable for PCB orders placed by CTX-HK for CTX-US's Exclusive Customers. The question whether CTX-US is liable for CTX-HK's orders for CTX-US's Exclusive Customers is hotly disputed—indeed, it is the central question in the case. CTX-US's characterization that this material fact was "undisputed" is disingenuous. Far from introducing "zero evidence" (appellee br. p.42) of CTX-US's financial responsibility, Benlida pointed to specific provisions of the Manufacturing Agreement governing CTX-US's obligations with respect to its Exclusive Customers, and evidence of the parties' longtime course of dealing, which included CTX-US having paid for "CCT-HK"-denominated invoices, and CTX-HK adding customers to CTX-US's Exclusive Customer list, and then asking Benlida to

manufacture PCBs for such Exclusive Customers, which benefited CTX-US. The
record reflects a significant factual dispute which should have been considered by
the jury, necessitating a new trial.

Huang's declaration stated that not only did CTX-US often pay CCT-HK
invoices, but Benlida sent the invoices to CTX-US and routinely chased CTX-US
for payment of the entire balance due. (ECF-186, ¶¶12, 16, 17, 18, 25). But, in
granting summary judgment to CTX-US, the district court reasoned that Benlida's
"vicarious liability theories" were based on facts that were alternative to those pled
in the TAC (ECF-221, pp.7-9), notwithstanding that the TAC did indeed allege that
CTX-US was liable for the "CCT-HK"-denominated invoices (ECF-26, ¶¶8, 261-
431, 439-40), and vicarious-liability principles have no bearing on breach-of-
contract claims. The district court thus erred, and its decision should be reversed.

**B. Benlida's Evidence Demonstrating the Benefits CTX-US Received
Under the Manufacturing Agreement for Orders Placed for CTX-
US's Exclusive Customers by CTX-HK and Mr. Wu's Declaration
All Raise Triable Issues of Material Fact.**

The district court's erroneous summary judgment decision enabled CTX-US
to obtain an unfair windfall at Benlida's expense. On one hand, CTX-US has been
able to service its Exclusive Customers with top-quality PCB boards manufactured
by "best in class" (Kukreja, TT-269-279, 665-666) Benlida and recoup the benefits
of contractual benefits assessed for all orders placed for its Exclusive Customers—
whether placed by CTX-US, CTX-HK, or CTX-SZ. (ECF 188, pp.3 *et seq.*; TT

745-746). From the other hand, CTX-US swings a fictional sword of corporate separateness to avoid paying for millions of dollars' worth of PCBs that Benlida manufactured at CTX-HK's request for CTX-US's Exclusive Customers, and to enable CTX-US to claw back millions from Benlida based on another fiction, that CTX-US "overpaid" Benlida by millions of dollars for no discernible business purpose.

CTX-US cannot have it both ways. The reality is (and the jury should have been permitted to so find) that CTX-US had not been "overpaying" Benlida, but that CTX-US had been paying down the debt that resulted from orders placed by CTX-HK—placed pursuant to the terms of the Manufacturing Agreement and in accordance with the parties' long-standing course of dealing—for PCBs for CTX-US's Exclusive Customers.

Moreover, CTX-US claimed the benefit to itself for orders placed by CTX-HK in the form of lead-time penalties calculated for both CTX-US and CTX-HK purchase orders, as Huang attested (ECF-186, ¶27), and as Kukreja acknowledged at trial. (TT 705-707, 757-759).

As such, in opposition to summary judgment Benlida demonstrated that CTX-US received the benefits of such orders. (See ECF-188, pp.3 et seq.; ECF-186, ¶27). It was also shown that CTX-US benefited from the overall discount that

CTX-US received for volume purchases, and that CTX-US claimed lead-time penalties with respect to orders placed by CTX-HK. (ECF-186, ¶27).

CTX-US contends (p.42) that Benlida's argument that CTX-US benefited from such orders placed by CTX-HK cannot be raised on appeal because it wasn't raised in opposition to summary judgment. This is another red herring belied by the above-cited portions of the record—including the Huang declaration (ECF-186). Kukreja's trial testimony that it benefited from such orders (TT-683-684, 705-707, 745-746; 683-684) merely provides further evidence of how disingenuous CTX-US's arguments are, and how prejudicial it was to preclude Paulikens from testifying at trial.

### C. Whether CTX-HK Was an Agent or Alter Ego of CTX-HK is a Question of Fact that Should Have been Presented to the Jury.

In the Eleventh Circuit, "the existence of an agency relationship is one for the jury to decide as the trier of fact." *Johnson v. Unique Vacations*, 498 F. App'x 892, 894 n.3 (11th Cir. 2012)(citing *Villazon v. Prudential Health Care Plan*, 843 So.2d 842, 853 (Fla. 2003)). "The question can be resolved by summary judgment only in those cases where the evidence is capable of but one determination and there is no evidentiary question for the jury to resolve." *Font v. Stanley Steemer*, 849 So.2d 1214, 1216 (Fla. DCA 2003).

CTX-US argues (p.46-47) that there is no dispute that CTX-US paid the invoices that were issued to it, that there was an overpayment, and that the Wu declaration, which explained the incorrect audit, did not "refute the plain language of the form." However, it was not Benlida's obligation to "refute" in opposition to the motion for summary judgment; rather, its obligation was to demonstrate a triable issue of fact. Wu's declaration evidenced a disputed material fact—namely, whether the audit form was erroneous, and whether Benlida was owed, at that time, over $12 million, as shown on Benlida's books. (ECF-187).

CTX-US's argument that Wu's "perception" did not raise an issue of fact again sidesteps applicable law to reach its desired outcome. The facts supporting Wu's "perception" were stated, are crucial and material, and go to whether CTX-US allowed CTX-HK to place orders for CTX-US's Exclusive Customers, among other factual issues. As previously noted, Kukreja acknowledged that Koul of CTX-HK was authorized to speak for CTX-US. (TT-736, 752).

**D.    The Question of Whether There Was a Breach of the Manufacturing Agreement Was a Question of Fact that Should Have Been Presented to the Jury.**

The UCC implies into every contract principles of good faith and fair dealing, principles of law and equity, the law merchant, the laws concerning principals and agents, and the parties' course of dealing (Fla Stat §§ 671.103, 671.203, & 671.205), but CTX-US turns these principles upside down, arguing

(p.42) that even if CTX-HK placed orders with Benlida for CTX-US's exclusive customers, that just shows *Benlida was in breach of contract*, not that CTX-US assumed liability for the "technically impermissible CTX-HK orders."

Like CTX-US's other claims, this argument is commercially unreasonable and detached from the world of commerce. CTX-US tells this Court that it can "allow" its affiliate CTX-HK to place orders for its Exclusive Customers, yet also posits that it would not have to pay for those PCBs that it "allowed" its affiliate CTX-HK to order, notwithstanding that the "X" numbers for CTX-US's Exclusive Customers applied to CTX-HK as well, and notwithstanding that a CTX-HK purchase order counted as a purchase under the Manufacturing Agreement such that delays by Benlida in producing them would result in penalties in favor of CTX-US. (ECF-186, ¶27). In any event, "whether there has been a breach of the terms of the contract is a question of fact, and the issue of whether there is a defense that excuses the breach is typically a question of fact." *Ness Racquet Club v. Ocean Four 2108*, 88 So. 3d 200, 203 (Fla. DCA 2011)(citing 23 Williston on Contracts § 63.15 (4th ed. 2002)).

### E.  A Determination Whether CTX-US's Payment Instructions Were "Reasonably Prompt" is Another Disputed Issue of Fact.

CTX-US claims that Benlida "largely ignores" CTX-US's payment details, which were sent "after" CTX-US would wire money to Benlida. But Benlida had the right under Florida law, and under customary business practices (which even

CTX-US's expert acknowledged (ECF-201-1, pp.241-242)) to apply moneys received on past-due invoices on a FIFO basis, unless instructions were provided at the time of payment. CTX-US argues that it provided payment instructions "with reasonable promptness," citing the 1934 case *Ott v. Bray*, 114 Fla 547, 154 So. 209, and asks this Court to hold, *as a matter of law*, that they were sent "with reasonable promptness."

CTX-US, however, failed to make a showing that each such payment was followed, with reasonable promptness, by payment details. Rather, the record shows that payment details, if sent, were typically received by Benlida a month or more after receipt of payment by wire. (See, *e.g.*, ECF-185-7, pp.3,12,24-25). More importantly, CTX-US "largely ignores" that any determination of "reasonable promptness" is a question of fact that should be resolved by a jury. *Hendry v. Grange Mut.*, 372 F.2d 222, 226 (5th Cir. Unit B 1967)("All of the Florida cases bearing upon the question of the requirement of notice…seem to be uniform in the proposition that what is a reasonable time depends upon the surrounding circumstances and is ordinarily a question of fact for the jury.")

CTX-US argues (p.49) that this case is distinguishable from *Randall v. Pettes*, and is instead governed by *Urrea v. Koplow*, 359 So. 3d 1212 (Fla. DCA 2023). Not so. Unlike in *Urrea*, CTX-HK debts *are* CTX-US debts, because CTX-US and CTX-HK are co-obligors with respect to the "CCT-HK" invoices. That

there are two distinct companies controlled by Kukreja does not vitiate CTX-US's status as obligor for PCB orders placed by CTX-HK for CTX-US's Exclusive Customers.

CTX-US also accuses Benlida (p.50, n.12) of lacking grounds for piercing CTX-HK's veil to make CTX-US a co-obligor. But Benlida does not need to pierce CTX-US's or CTX-HK's veils, because CTX-US is contractually obligated to pay for the PCBs ordered by CTX-HK for CTX-US's Exclusive Customers. At least the jury should have been allowed to make such a finding, given that the evidence, considered in the light most favorable to Benlida, would provide a sound foundation for a verdict in Benlida's favor.

**Point III:    The Court Erred in Precluding Paulikens from Offering Rebuttal Testimony.**

CTX-US disingenuously argues that Benlida failed to make an offer of proof as to what Paulikens would have testified to, thereby waiving the argument that the court erred in precluding him. But the district court precluded Paulikens from testifying as to normal and customary accounting and business practices bearing on an accountant's analysis of the financial relationship between the parties, to rebut CTX-US's expert testimony and show that CTX-US was responsible for the "CCT-HK"-denominated invoices (TT-124). Thus, no offer of proof would have overcome the court's ruling. Accordingly, for the reasons set forth in the main brief, the court compounded the error of its summary judgment ruling by then

precluding Paulikens not just from testifying that CTX-US owed money to Benlida for the "CCT-HK"-denominated invoices, but from testifying that it was contrary to accounting and commercial principles for there to be millions of dollars in "overpayments" by CTX-US to Benlida, for which Benlida was liable to CTX-US. There must be a new trial.

## Conclusion

For all the foregoing reasons, it is respectfully submitted that Benlida's claims against CTX-US must be reinstated, and the case must be remanded for a new trial.

Dated: New York, New York
         December 18, 2024

                                          Respectfully submitted,

                                          MAZZOLA LINDSTROM, LLP

                                          By:     /s/ Richard E. Lerner
                                          Counsel for plaintiff-appellant Jiangmen
                                          Benlida Printed Circuit Co., Ltd.
                                          1350 Avenue of the Americas, 2nd Floor
                                          New York, New York 10019
                                          917-584-4864
Of Counsel:
         Jean-Claude Mazzola

## CERTIFICATE OF COMPLIANCE

I, Richard E. Lerner, furnish the following in compliance with Fed. R. P. 32.

1.    I hereby certify that this brief conforms to the rules contained in Fed R.

App. P. 32(a)(7)(B) because:

This brief contains 6,455 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

2.    I hereby certify that this brief conforms the rules contained in Fed. R. App.

P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

This brief has been prepared in proportionally space typeface using

Microsoft Word and 14 point Times New Roman font.


MAZZOLA LINDSTROM, LLP


By: */s/ Richard E. Lerner*
    Richard E. Lerner
Counsel for plaintiff-appellant Jiangmen
Benlida Printed Circuit Co., Ltd.
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
917-584-4864
richard@mazzolalindstrom.com

## CERTIFICATE OF SERVICE

I hereby certify that on December 18, 2024, I caused to be electronically filed the foregoing Reply Brief for Plaintiff-Counter Defendant-Appellant with the Clerk of Court using the CM/ECF system, which automatically sends an electronic notification to CM/ECF participants.

MAZZOLA LINDSTROM, LLP

By: */s/ Richard E. Lerner*
　　Richard E. Lerner
Counsel for plaintiff-appellant Jiangmen
Benlida Printed Circuit Co., Ltd.
1350 Avenue of the Americas, 2nd Floor
New York, New York 10019
917-584-4864
richard@mazzolalindstrom.com