# PODHURST / ORSECK

Aaron S. Podhurst
Steven C. Marks
Peter Prieto
Stephen F. Rosenthal
Ricardo M. Martinez-Cid
Ramon A. Rasco
Lea P. Bucciero
Matthew Weinshall
Kristina M. Infante
Dayron Silverio
Pablo Rojas
Christina H. Martinez
Zachary S. Gorwitz

Robert Orseck (1934-1978)
Walter H. Beckham, Jr. (1920-2011)
Joel D. Eaton (1943-2024)
Robert C. Josefsberg (1938-2025)
Karen Podhurst Dern
Of Counsel

September 15, 2025

*Sent Via CM/ECF*

David J. Smith
Clerk of the Court
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, GA 30303

    Re:    *Jiangmen Benlida Printed Circuit Co., Ltd. v. Circuitronix, LLC*, No. 23-14102

Dear Mr. Smith:

    Appellee Circuitronix, LLC submits the Court's recent decision in *Caterpillar Financial Services Corp. v. Venequip Machinery Sales Corp.*, 147 F.4th 1341 (11th Cir. 2025), and a case it distinguishes, *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352 (11th Cir. 2020), as supplemental authority. *See* Fed. R. App. P. 28(j). These cases, decided in the Rule 12(b)(6) context, help demonstrate the flaw in Appellant Benlida's contention that it adequately alleged a breach of contract claim such that it was error to grant summary judgment to Circuitronix because Benlida had not pled the bases for liability it pivoted to at summary judgment.

    The debate in the briefs regarding this doctrine comes down to whether the complaint's threadbare claim of breach of contract contained adequate factual allegations to place Circuitronix on notice of any of the theories by which Benlida sought to hold Circuitronix responsible for debts allegedly owed by another corporation, Circuitronix (Hong Kong) Limited ("CTX-HK"). The complaint contained a single vague reference to "the contract" and did not allude

David J. Smith  
Clerk of the Court  
U.S. Court of Appeals for the Eleventh Circuit  
September 15, 2025  
Page 2

to any promise Circuitronix made to pay for the debts of CTX-HK.  Nor did it allege any agreement to allow Benlida to apply Circuitronix's payments to older outstanding debts, for unmentioned invoices, of both Circuitronix and CTX-HK.  Yet in response to Circuitronix's summary-judgment motion, Benlida advanced unpled theories of agency and alter ego to support its claim that Circuitronix was responsible for another corporation's debts.

*Caterpillar* clarifies that while a plaintiff asserting a breach-of-contract claim need not cite the particular terms of the contract allegedly breached, 147 F.4th at 1349, it still must "make a plausible allegation that the defendant did not perform *as promised*," *id*. at 1348 (emphasis added).  That means pleading "allegations about the agreement it alleges [the defendant] breached."  *Id*. at 1348.  Mere conclusory allegations—like those in Benlida's complaint—are inadequate.  The *Caterpillar* Court distinguished the complaint in *Bass*, which conclusorily referenced a contract but "never alleged any promise at all."  *Id*.  Benlida's complaint similarly failed to allege what promise Circutronix breached.  The district court did not err in granting summary judgment against Benlida.

                                              Respectfully submitted,

                                              Stephen F. Rosenthal

PODHURST / ORSECK

2525 Ponce de Leon, Suite 700, Coral Gables, FL 33134 / 305.358.2800 Fax 305.358.2382 / Ft. Lauderdale  954.463.4346    podhurst.com

147 F.4th 1341
United States Court of Appeals, Eleventh Circuit.

CATERPILLAR FINANCIAL SERVICES CORPORATION, Plaintiff-Appellant,
v.
VENEQUIP MACHINERY SALES CORPORATION, Defendant-Appellee.

No. 23-14237
|
Filed: 08/07/2025

**Synopsis**
**Background:** Lender brought breach of contract action against borrower, alleging that borrower breached inventory loan agreement by failing to repay amounts due on loans and impairing prospect of repayment based on default on loan agreement between parties' affiliates. The United States District Court for the Southern District of Florida, No. 22-23002-Civ-Scola, Robert N. Scola, Jr., J., adopted in part report and recommendation of a magistrate judge, 2023 WL 4014801, and granted borrower's motion to dismiss for failure to state a claim, 2023 WL 4540436, then denied lender's motion to alter or amend judgment, requesting leave to file an amended complaint, 2023 WL 8258886. Lender appealed.

**Holdings:** The Court of Appeals, Brasher, Circuit Judge, held that:

lender's complaint sufficiently alleged the existence of an enforceable contract to state claim for breach of contract;

lender sufficiently alleged nonperformance of contract to state claim for breach of contract;

lender's failure to identify which specific provision of agreement was breached did not render complaint too vague to provide fair notice of lender's claims; and

lender sufficiently alleged that it suffered damages to state claim for breach of contract.

Reversed and remanded.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim; Motion to Alter or Amend Judgment; Motion to Amend the Complaint.

Appeal from the United States District Court for the Southern District of Florida, D.C. Docket No. 1:22-cv-23002-RNS

**Attorneys and Law Firms**

Brendan Edward Ryan, Kirkland & Ellis, LLP, Chicago, IL, Maria Daniela Corghi, Cole Scott & Kissane, PA, Miami, FL, Alexandra Marie Dragovich, Mark Kornfeld, Buchanan Ingersoll & Rooney, PC, Tampa, FL, George W. Hicks, Jr., Kirkland & Ellis LLP, Washington, DC, Lauren Virginia Humphries, Banker Lopez Gassler, PA, Tampa, FL, Jordan D. Peterson, Kirkland & Ellis, LLP, New York, NY, Kyle Sebastian Roberts, Buchanan Ingersoll & Rooney, PC, Fort Lauderdale, FL, Peter Stephen Russ, Blackwell & Walker, Miami, FL, for Plaintiff-Appellant.

Gabriel Aizenberg, Howard K. Jeruchimowitz, Craig Ray Martin, Greenberg Traurig, LLP, Chicago, IL, Brigid Finerty Cech Samole, Evelyn Cobos, Gabriel Alejandro Diaz, Greenberg Traurig, PA, Miami, FL, for Defendant-Appellee.

Before William Pryor, Chief Judge, and Luck and Brasher, Circuit Judges.

**Opinion**

Brasher, Circuit Judge:

**\*1344** This appeal is about the legal standard a district court should apply in assessing whether to dismiss a breach of contract claim under Rule 12(b)(6). Caterpillar Financial Services Corporation and Venequip Machinery Sales Corporation Miami are parties to an inventory loan agreement governed by Tennessee law. Caterpillar Financial alleged that Venequip Miami breached the inventory loan agreement by failing to repay, and it attached the inventory loan agreement to its complaint. Venequip Miami moved for Rule 12(b)(6) dismissal on the grounds that Caterpillar Financial failed to specify which portion of the inventory loan agreement Venequip Miami breached. The district court dismissed the case with prejudice, and Caterpillar Financial appealed. After careful review, we conclude that the complaint sufficiently alleged a breach of contract claim under Tennessee law. Accordingly, we reverse the district court's judgment and remand for further proceedings.

## I.

The relevant facts come from Caterpillar Financial's complaint. First, we describe the inventory loan agreement, which is the allegedly breached contract at the center of this litigation. Next, we explain why a separate Curaçao loan agreement matters to this dispute. Last, we recount the procedural history that led to this appeal.

### A.

On one side of the inventory loan agreement is Caterpillar Financial Services Corporation, a subsidiary of Caterpillar, Inc. On the other side is Venequip Machinery Sales Corporation Miami. Caterpillar Financial attached the inventory loan agreement to its complaint as Exhibit A.

The inventory loan agreement allowed Venequip Miami to request funds from Caterpillar Financial. Whenever Venequip Miami wished to borrow funds from Caterpillar Financial, "it would deliver an executed **\*1345** Note to [Caterpillar Financial]." Compl. ¶ 30(a), Dkt. No. 1. Caterpillar Financial then "had the right, but not any obligation, to grant" the "loan request (subject to the loan ceiling of $5 million) (Clause 2.14)." *Id.* Each note "evidenced a Loan (Clause 2.02) by [Caterpillar Financial], payable to the order of [Caterpillar Financial] with a 12-month (360 days) maturity, with all accrued interest and principal outstanding due at maturity, and each Note otherwise governed by the Inventory Loan Agreement (Clause 2.03)." *Id.* The parties entered into six notes under the inventory loan agreement, "all on identical terms and conditions but-for the amount borrowed." *Id.* ¶ 31; *see id.* ¶¶ 32–38. "In total, the Parties entered into six Promissory Notes ... in principal amounts which totaled $4,772,386.16." *Id.* ¶ 38.

The inventory loan agreement provided that default would occur if Venequip Miami "fail[ed] to repay the amount of principal or interest as they came due, [or for] any other failure to perform obligations under the terms of the agreement." *Id.* ¶ 30(b)–(c); Ex. A § 7.01(a)–(b), Dkt. No. 1-3. Default would also occur "if there was any adverse change with respect to [Venequip Miami's] financial condition which resulted in [Caterpillar Financial's] opinion in a material impairment of the prospect of repayment." Compl. ¶ 30(b)–(c); Ex. A § 7.01(g).

"The Inventory Loan Agreement is governed by the laws of Tennessee," and "any judicial proceedings brought against [Venequip Miami] may be brought at the election of [Caterpillar Financial] in any state or federal court ... in ... Florida." Compl. ¶¶ 26–27; Ex. A §§ 8.08–8.09.

### B.

Another agreement between the parties' affiliates in Curaçao matters to this appeal. Caterpillar Crédito, SA de CV Sociedad Financiera De Objeto Múltiple ENR is a subsidiary of Caterpillar Financial. About ten years before Caterpillar Financial and Venequip Miami entered into the inventory loan agreement, Caterpillar Crédito entered into a loan agreement with VMSC Curaçao, N.A. in which VMSC Curaçao borrowed about $4.9 million. "VMSC Curaçao's obligations under this Original Loan Agreement were secured by a corporate guarantee" between "[Caterpillar] Crédito (as beneficiary of the guarantee), and (i) Venequip S.A. (a Venezuelan company), (ii) Solidus Investments Corporation (a Barbados company) and (iii) [Venequip] Miami." Compl. ¶ 14. By 2015, the existing line of credit for the Curaçao loan agreement was $110 million.

In December 2017, VMSC Curaçao defaulted because it failed "to make all required payments when due." *Id.* ¶ 17. The corporate guarantors (Venequip S.A., Solidus, and Venequip Miami) also failed to honor their obligations under the Curaçao loan agreement. Caterpillar Crédito sued VMSC Curaçao, Venequip S.A., and Solidus in Curaçao court, "seeking to recover over $120 million in principal, interest, default interest, and other damages." *Id.* ¶ 19. Venequip Miami is not a party to the Curaçao proceedings. Caterpillar Crédito filed a separate suit against Venequip Miami in the Southern District of Florida for its alleged breach of the Curaçao loan agreement.

### C.

Caterpillar Financial took notice of the events in Curaçao. After VMSC Curaçao defaulted on the Curaçao loan agreement, Caterpillar Financial "formally declared an event of default ... as to the Inventory Loan Agreement[ ] on the basis that the VMSC Curaçao default constituted material impairment of the prospect that [Venequip] Miami could or would[ ] be financially capable to repay the Inventory Loan **\*1346** Agreement." *Id.* ¶ 39; Ex. A §

7.01(g). Caterpillar Financial then "exercised its right to accelerate repayment of outstanding amounts due ... under the Inventory Loan Agreement." Compl. ¶ 40. Caterpillar Financial notified Venequip Miami "of the 'event of default' under the Inventory Loan Agreement, and demanded repayment of all outstanding principal, interest and other amounts then due under the Inventory Loan Agreement." *Id.*

"Despite written notice as to an event of default and [Caterpillar Financial's] demand for repayment, [Caterpillar Financial] has received no repayment of any kind under the terms of the Inventory Loan Agreement." *Id.* ¶ 42. According to Caterpillar Financial, the outstanding amount due "is in excess of $10 million." *Id.* ¶ 41.

Caterpillar Financial filed suit against Venequip Miami in the Southern District of Florida. Caterpillar Financial's complaint alleged a sole count of breach of contract. In the complaint, Caterpillar Financial explained that the parties entered into the inventory loan agreement, Venequip Miami breached the agreement "by, among other things, failing to make the required repayments," and that because of the breach, Caterpillar Financial suffered monetary damages. *Id.* ¶¶ 44–49.

Venequip Miami moved to stay Caterpillar Financial's action under the international abstention doctrine or, in the alternative, to dismiss Caterpillar Financial's complaint for failure to state a claim under Rule 12(b)(6), Fed. R. Civ. P. Venequip Miami's abstention arguments are irrelevant to this appeal. But as to Rule 12(b)(6) dismissal, Venequip Miami argued that Caterpillar Financial's complaint failed to sufficiently allege a breach of contract.

The district court dismissed the action with prejudice. The district court concluded that Caterpillar Financial "fail[ed] to adequately allege nonperformance amounting to a breach because it fail[ed] to adequately set forth the provision of the Inventory Loan Agreement that has been breached." Order Adopting in Part R. & R. at 4, Dkt. No. 52. The district court found that the "significance" of the ambiguity "is underscored by the fact that the Inventory Loan Agreement sets forth eight different potential events of default, so that there are a host of different circumstances in which [Venequip Miami's] alleged nonperformance could amount to a breach." *Id.* at 5. "Thus, specifying the provision breached is necessary to identifying the event of default at issue and any defenses or other deficiencies in the alleged breach." *Id.*

Caterpillar Financial filed a motion under Rules 59(e), 60(b), and 15(a), Fed. R. Civ. P., to alter or amend the district court's judgment. In the motion, Caterpillar Financial requested that the district court allow it to file an amended complaint to cure the deficiencies addressed in the district court's order. Caterpillar Financial attached a proposed amended complaint in support of its motion. The district court denied the motion.

Caterpillar Financial filed a timely notice of appeal.

## II.

"We review the district court's grant of a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) *de novo*, using the same standard as the district court." *Caver v. Cent. Ala. Elec. Coop.*, 845 F.3d 1135, 1147 n.9 (11th Cir. 2017). When reviewing a motion to dismiss, we accept the plaintiff's allegations as true and "constru[e] them in the light most favorable to [the] [p]laintiff[ ]." *Cavalieri v. Avior Airlines C.A.*, 25 F.4th 843, 847 (11th Cir. 2022). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." **\*1347** *Young v. Grand Canyon Univ., Inc.*, 57 F.4th 861, 867 (11th Cir. 2023) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009)). "A claim is facially plausible if the plaintiff 'pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.' " *Id.* (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). This "plausibility standard 'is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.' " *Id.* (quoting *Iqbal*, 556 U.S. at 678, 129 S.Ct. 1937). When making the determination of whether a complaint states a plausible claim, "we 'draw on our judicial experience and common sense.' " *Resnick v. AvMed, Inc.*, 693 F.3d 1317, 1324 (11th Cir. 2012) (citation modified) (quoting *Iqbal*, 556 U.S. at 679, 129 S.Ct. 1937).

## III.

Caterpillar Financial argues that it adequately pleaded breach of the inventory loan agreement and that the district court's Rule 12(b)(6) dismissal was erroneous. We agree.

We use a two-step process to determine whether a claim survives Rule 12(b)(6) scrutiny. At the outset, "we

determine what must be pled for each cause of action." *Id. at 1325*. The complaint alleges breach of contract, and Tennessee law governs the alleged contract—the inventory loan agreement. Under Tennessee law, "[t]he essential elements of any breach of contract claim include (1) the existence of an enforceable contract, (2) nonperformance amounting to a breach of the contract, and (3) damages caused by the breach of the contract." *Leedy v. Hickory Ridge, LLC*, 663 S.W.3d 537, 548 (Tenn. Ct. App. 2022) (citation modified). Then, we "consider the well-pleaded factual allegations ... to determine whether they 'plausibly suggest an entitlement to relief.' " *Resnick*, 693 F.3d at 1326 (quoting *Iqbal*, 556 U.S. at 681, 129 S.Ct. 1937). As we explain below, Caterpillar Financial supplied well-pleaded factual allegations that cover each of the three elements of a breach of contract action.

### A.

First, Caterpillar Financial alleged the existence of an enforceable contract—the inventory loan agreement. In the first paragraph of the complaint, Caterpillar Financial states that it brought this lawsuit under "a straight-forward inventory loan agreement" between it and Venequip Miami. Compl. ¶ 1. It attached the signed inventory loan agreement to the complaint and referenced that attachment in its complaint. The complaint sufficiently alleges the existence of an enforceable contract, and Venequip Miami offers no argument to the contrary.

### B.

Second, Caterpillar Financial alleged nonperformance (breach) of the contract by Venequip Miami. Caterpillar Financial alleged two theories of default. One theory is that Venequip Miami is "in default of its obligations under the express terms of the Inventory Loan Agreement by virtue of its failure to repay amounts as they become due." *Id.* ¶ 5. The other theory is that the amounts became due when Caterpillar Financial formally declared a default event and accelerated the debt because VMSC's Curaçao's default on the Curaçao loan agreement "constituted material impairment of the prospect that [Venequip] Miami could or would[ ] be financially capable to repay the Inventory Loan Agreement." *Id.* ¶ 39. According to the complaint, Venequip Miami never repaid any of the loans.

**\*1348** Notwithstanding these allegations, the district court dismissed the lawsuit. It concluded that Caterpillar Financial "fail[ed] to adequately allege nonperformance amounting to a breach because it fail[ed] to adequately set forth the provision of the Inventory Loan Agreement that has been breached." Order Adopting in Part R. & R. at 4. Venequip Miami makes two arguments in support of the district court's reasoning. We address each in turn.

### 1.

Like the district court, Venequip Miami contends that Caterpillar Financial failed to state a claim because it did not identify the inventory loan agreement provision(s) that Venequip Miami allegedly breached. We disagree that federal law imposes this kind of heightened pleading obligation on a breach of contract plaintiff. "At the pleading stage," all a plaintiff must do is provide a "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ramirez v. Paradies Shops, LLC*, 69 F.4th 1213, 1217 (11th Cir. 2023) (citation modified) (quoting Fed. R. Civ. P. 8(a)(2)). Put another way, "we do not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). So a breach of contract plaintiff must, as Caterpillar Financial did here, make a plausible allegation that the defendant did not perform as promised. It need not allege anything with particularity.

Venequip Miami relies on three of our precedents to support its proposed heightened pleading argument, but none does. Instead, all three precedents stand for the uncontroversial proposition that a plaintiff must allege enough factual material to identify an enforceable promise that the defendant's actions allegedly breached. But, because Venequip Miami relies so heavily on these precedents for its proposed rule, we will discuss them at length.

In the first decision that Venequip Miami cites, we evaluated a shotgun complaint with "incomprehensible allegations" that never alleged any promise at all. *Est. of Bass v. Regions Bank, Inc.*, 947 F.3d 1352, 1358 (11th Cir. 2020). In *Bass*, the plaintiff sued Regions Bank and Fidelity Investments after Fidelity sent him a check according to his instructions, he passed that check to his sister-in-law, she deposited the money in her Regions account, and she spent all the money on herself, against his wishes. Bass alleged that "the parties had a contract that 'controlled, among other things, the manner in which

Fidelity would safeguard Bass's funds, negotiate instruments presented to his account, and handle his funds with the necessary and proper safeguards.' " *Id.* at 1356 (citation modified). Bass then alleged that "by, among other things, negotiating and paying an instrument with a forged, improper, and suspicious endorsement, Fidelity breached the parties' contract." *Id.* (citation modified). We agreed with the district court that Bass's complaint never alleged *any* agreement between the parties; it "was insufficient to state a claim because Bass has not alleged any general or specific provision of any contract that Fidelity might have breached." *Id.* at 1358. We also observed that Bass's complaint contained "incomprehensible allegations" and suggested the district court should have stricken the complaint as a shotgun pleading. *Id.*

Caterpillar Financial's complaint presents nothing like the general and conclusory allegations in *Bass*. Unlike *Bass*, here, there is no dispute that the complaint alleged the "existence of a valid contract." *Id.* Caterpillar Financial, unlike Bass, **\*1349** made allegations about the agreement it alleges Venequip Miami breached. To be sure, Caterpillar Financial did not specifically cite the "Events of Default" section from the inventory loan agreement in its complaint. *See* Ex. A § 7.01. But it all-but quoted from that section several times and attached the entire contract to its complaint.

Second, Venequip Miami relies on a decision where we held that Georgia state law barred a certain type of breach of contract action the plaintiff alleged in her complaint. *See Peterson v. Atlanta Hous. Auth.*, 998 F.2d 904, 913 (11th Cir. 1993). In *Peterson*, the plaintiff sued her public employer after her termination. *Id.* at 906. She brought federal claims, and a claim under Georgia state law for breach of contract under the theory that her policy manual created an employment contract. *Id.* at 906, 913. We affirmed the district court's dismissal of Peterson's breach of contract claim because "[t]he law in Georgia seems fairly well settled that personnel policy manuals, outside of the constitutional context, may not create a cause of action for breach of contract through wrongful termination." *Id.* at 913.

Like *Bass*, our precedent in *Peterson* is inapt. State law does not bar Caterpillar Financial's theory. Again, unlike in *Peterson*, all agree that Caterpillar Financial has alleged an enforceable contract.

Third, Venequip Miami cites a decision in which the written materials attached to the complaint did not contain the promise that the plaintiff alleged. *Young*, 57 F.4th at 871. In *Young*, the plaintiff sued Grand Canyon under various theories, including breach of contract. One central allegation was that Grand Canyon had misrepresented that students could complete a doctoral program in sixty credit hours, but that Grand Canyon made it practically impossible to achieve that goal. *See id.* at 866. Although we agreed that sort of claim was cognizable under Arizona law, *see id.* at 868–69, we affirmed the district court's dismissal of Young's sixty-hour completion claim because Grand Canyon never made such a promise in any of the documents Young attached to his complaint. We said that there was no "provision in any of the relevant documents promising that a student will complete his doctoral degree program in 60 (and no more than 60) credit hours." *Id.* at 871. Instead, we concluded that the materials "belie any such promise" that a student could complete his doctoral degree program in sixty hours. *Id.*

Put simply, our decision in *Young* suggests that, if the documents the plaintiff cites or attaches to its complaint do not actually contain the promises the plaintiff alleged were breached in his complaint, Rule 12(b)(6) dismissal is appropriate. That is not what happened here. Instead, the inventory loan agreement supports Caterpillar Financial's complaint and contains the promises Caterpillar Financial alleges were breached. The inventory loan agreement contained explicit promises by Venequip Miami to repay each loan under the agreement within 360 days, and sooner if a default event occurred.

In short, we have never adopted a heightened pleading requirement for a breach of contract claim. In fact, we have previously rejected the idea that a plaintiff must cite "a term or terms of the contract that were allegedly breached" to survive a motion to dismiss, and we labeled that idea "an erroneous notion." *Cavalieri*, 25 F.4th at 852. We reject it again today. Plausibility is all that is required, and Caterpillar Financial's complaint cleared that threshold. *See Johnson v. City of Shelby*, 574 U.S. 10, 12, 135 S.Ct. 346, 190 L.Ed.2d 309 (2014).

**\*1350** 2.

Venequip Miami also contends that Caterpillar Financial's complaint was too vague to provide fair notice of its claims. *See Twombly*, 550 U.S. at 555, 127 S.Ct. 1955; Fed. R. Civ. P. 8(a)(2). Specifically, it contends that Caterpillar Financial should have identified which specific provision was breached to determine which of the eight potential events of default occurred. We find that argument unpersuasive for three reasons.

First, Caterpillar Financial's complaint asked for relief

based on two of the eight default events. One was a straightforward theory based on Venequip Miami's failure to repay loan amounts when they were due. The other was based on Caterpillar Financial's belief that there was a "material impairment of the prospect that [Venequip] Miami could or would[ ] be financially capable to repay the Inventory Loan Agreement." Compl. ¶ 39. None of the other six events of default were mentioned in the complaint.

Second, "Rule 8(d) of the Federal Rules of Civil Procedure expressly permits the pleading of both alternative and inconsistent claims." *United Techs. Corp. v. Mazer*, 556 F.3d 1260, 1273 (11th Cir. 2009). So Caterpillar Financial's complaint is not subject to dismissal merely because it alleged multiple theories of default. *See id; see also Cleveland v. Pol'y Mgmt. Sys. Corp.*, 526 U.S. 795, 805, 119 S.Ct. 1597, 143 L.Ed.2d 966 (1999) ("Our ordinary Rules recognize that a person may not be sure in advance upon which legal theory she will succeed, and so permit parties to set forth two or more statements of a claim or defense alternately or hypothetically ...." (citation modified)).

Third, to the extent that Venequip Miami was unsure about the default event that was alleged, it should have moved for a more definite statement under Rule 12(e), not to dismiss the complaint under Rule 12(b)(6). *See Fikes v. City of Daphne*, 79 F.3d 1079, 1082–83 (11th Cir. 1996). "The purpose of a motion under Federal Rule of Civil Procedure 12(b)(6) is to test the formal sufficiency of the statement of the claim for relief." 5B *Wright & Miller's Federal Practice & Procedure* § 1356 (4th ed. 2025). A 12(b)(6) motion, however, "is not designed to correct inartistic pleadings." *Id.* Instead, when a defendant faces an ambiguous complaint, the proper remedy is to move for a more definite statement under Rule 12(e). *Id.*; *see also Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1368 (11th Cir. 1997).

We agree that Caterpillar Financial's complaint may not have been ideal. But it alleged a breach of the inventory loan agreement sufficient to put Venequip Miami on notice of the claim.

C.

Turning to the last element of a contract claim under Tennessee law, there is no dispute that Caterpillar Financial alleged that it suffered damages due to Venequip Miami's failure to repay the loans. The complaint states, "[a]s a direct result of [Venequip Miami's] breaches, [Caterpillar Financial] has suffered and will continue to suffer significant monetary damages ...." Compl. ¶ 49. Accordingly, Caterpillar Financial alleged a breach of contract claim under Tennessee law that was sufficient to survive Rule 12(b)(6) review.

IV.

We **REVERSE** the district court's judgment and **REMAND** for further proceedings consistent with this opinion.

**All Citations**

147 F.4th 1341

KeyCite Yellow Flag
Declined to Extend by Beus Gilbert PLLC v. Donald L. Robertson Trust, 10th Cir.(Utah), April 30, 2021

947 F.3d 1352
United States Court of Appeals, Eleventh Circuit.

ESTATE OF David BASS, Plaintiff – Appellant,
v.
REGIONS BANK, INC., Fidelity Investments Institutional Services Company, Inc., Defendants – Appellees.

Nos. 17-13048, 18-12917
|
(January 21, 2020)

**Synopsis**
**Background:** Administrator of account holder's estate brought separate actions against investment services provider and bank, alleging claims for conversion, negligence, breach of contract, breach of fiduciary duty, and violation of Georgia's banking laws and Uniform Commercial Code (UCC) arising out of defendants' alleged removal and disbursement of funds in third-party's general business account that contained holder's retirement savings account. The United States District Court for the Northern District of Georgia, Nos. 1:17-cv-00309-LMM, 1:18-cv-00409-LMM, Leigh Martin May, J., 2017 WL 4466469, granted provider's motion to dismiss for failure to state a claim, and granted bank's motion to dismiss for lack of subject matter jurisdiction. Administrator appealed.

**Holdings:** The Court of Appeals, Tjoflat, Circuit Judge, held that:

administrator failed to plead sufficient facts to state breach of contract claim that was plausible on its face;

administrator failed to state breach of fiduciary duty claim against provider; and

Georgia UCC provision governing conversion of instruments preempted administrator's common law conversion and negligence claims against bank.

Affirmed in part, vacated in part, and remanded.

**Procedural Posture(s):** On Appeal; Motion to Dismiss for Failure to State a Claim; Motion to Dismiss for Lack of Subject Matter Jurisdiction.

**Attorneys and Law Firms**

\*1355 Jason H. Coffman, Law Office of Jason H. Coffman, ATLANTA, GA, for Plaintiff - Appellant.

William James Holley, II, Erik J. Badia, Parker Hudson Rainer & Dobbs, LLP, ATLANTA, GA, for Defendant - Appellee REGIONS BANK, INC.

John Norman Bolus, Christopher Charles Frost, Jennifer A. Stanley, Maynard Cooper & Gale, PC, BIRMINGHAM, AL, for Defendant - Appellee FIDELITY INVESTMENTS INSTITUTIONAL SERVICES COMPANY, INC.

Appeals from the United States District Court for the Northern District of Georgia, D.C. Docket Nos. 1:17-cv-00309-LMM; 1:18-cv-00409-LMM
Before JORDAN and TJOFLAT, Circuit Judges, and SCHLESINGER,[*] District Judge.

[*] Honorable Harvey Schlesinger, Senior United States District Judge for the Middle District of Florida, sitting by designation.

TJOFLAT, Circuit Judge:

I.

A.

David Bass instructed Fidelity Investments ("Fidelity") to write a check to his sister-in-law, Ruth Barr, consisting of his entire retirement savings from his Fidelity 401k account. The purpose of the check was to set up an IRA account for Bass that would be administered by Ruth.

Pursuant to Bass's instructions, Fidelity sent a check to Bass made out to "Ruth A. Barr Plan Admin TR IRA FBO: David Bass." Bass reviewed the check and gave it to Ruth, who deposited the check into her general business account, entitled "B&B Accounting and Tax

Services," at Regions Bank ("Regions"). She proceeded to spend all of Bass's money for personal purposes. Bass died shortly thereafter, and the administrator of his estate brought separate actions against Regions and Fidelity.[1]

[1] The complaints were filed separately against Regions and Fidelity, but they were consolidated in this appeal.

B.

Bass[2] filed multicount complaints against both Regions and Fidelity. Counts I and II in both complaints were essentially identical.

[2] For simplicity, Bass's estate will be referred to merely as Bass himself.

Count I in both complaints alleges common law conversion claims against Regions and Fidelity, stating that "Defendant converted to its own use the money it removed improperly from Plaintiff's accounts."

Count II in each complaint explicitly purports to contain two theories of recovery: (1) the common law, and (2) the Georgia Uniform Commercial Code (the "Georgia UCC"). First, Count II against both Fidelity and Regions alleges common law claims for "Negligence, Lack of Good Faith, [and] Failure to Exercise Ordinary Care." Count II states that Regions and Fidelity acted negligently, with a lack of good faith, and failed to exercise reasonable care in handling Bass's funds/account—presumably because Regions allowed Ruth to place the proceeds of the check in her general business account without inquiring whether the deposit was authorized or proper—and Fidelity disbursed the funds in the same manner. **\*1356** Second, Count II alleges that, by engaging in such conduct, Regions "violat[ed] the banking laws and [Georgia] Uniform Commercial Code, including, but not limited to, Article 3 and Article 4," and Fidelity "violated the banking laws, including, but not limited to, [Georgia UCC] section 11-4-103."

Additionally, Count II in both complaints "incorporates by reference each and every allegation contained" in the preceding paragraphs of the complaints—as did all of the counts in both complaints.[3] And because Count II incorporates Count I, Bass also arguably alleges a conversion claim against both defendants under the Georgia UCC and "the banking laws."[4]

[3] This is known as a "shotgun pleading." As of 2008, we had "explicitly condemned shotgun pleadings upward of fifty times." *Davis v. Coca-Cola Bottling Co. Consol.*, 516 F.3d 955, 979 n.54 (11th Cir. 2008), *abrogated on other grounds by Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L.Ed.2d 929 (2007). Shotgun pleadings are unacceptable for many reasons, but this case illustrates an important one: they result in unintelligible pleadings that violate the basic specificity requirements of Federal Rule of Civil Procedure 8(a)(2) and *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). *See infra* nn. 4–5.

[4] This is a perfect example of how a shotgun pleading can render the allegations of an otherwise simple complaint unintelligible. Both complains state in Count II that, "[i]n acting in such a manner, Defendant breached Plaintiff's rights and violated the banking laws." Ordinarily, we could assume that "acting in such a manner" related only to the factual allegations in Count II. However, because Count II incorporates Count I, the scope of "acting in such a manner" is significantly expanded, and that problem is drastically exacerbated each time a new count is added to a complaint. For example, by the time a hypothetical Count IX would be alleged, no one would be able to understand what "acting in such a manner" would mean. *See, e.g.*, *infra* n.5.

Count III, brought against only Fidelity, alleges a breach of contract. The complaint states that the parties had a contract that "controlled, among other things, the manner in which [Fidelity] would safeguard [Bass's] funds, negotiate instruments presented to his account, and handle his funds with the necessary and proper safeguards." Bass alleges that "[b]y, among other things, negotiating and paying an instrument with a forged, improper, and suspicious endorsement, [Fidelity] breached the parties' contract."

Count IV, also brought against only Fidelity, alleges a breach of fiduciary duty. The general factual predicates that precede the specific counts in the complaint state that "[d]ue to among other things, the contract and [Bass's] depositing funds with [Fidelity] for retirement, [Fidelity] owed [Bass] a fiduciary duty." Count IV asserts that Fidelity had a duty, among other things, to "conduct itself in the manner appropriate in the industry and for

professionals of this type, safeguard [Bass's] funds, negotiate instruments presented to his account, and handle his funds with the necessary and proper safeguards," and that Fidelity violated this duty "[b]y, among other things, negotiating and paying an instrument with a forged, improper, and suspicious endorsement."[5]

[5] The complaints also seek costs, attorneys' fees, and punitive damages in separate counts. These claims further exemplify the *Iqbal* problems created by shotgun pleadings. For example, the complaints state that "Defendant's conduct has caused Plaintiff unnecessary trouble and expense and required him to hire counsel and institute this legal action. ... As a result of Defendant's intentional conduct and bad faith, Plaintiff is entitled to recover from Defendant all of his costs and legal expenses incurred in this action." Further, they assert that "[b]ecause the conduct of Defendant was intentional, deliberate, reckless, and in conscious disregard for the consequences of its actions[,] ... Defendant is liable for punitive damages." These assertions result in the obvious question—what "conduct" is Bass referring to? No one could know. We would have to guess at what "conduct" the complaint was referring to because, when dealing with a shotgun complaint, the answer is always "everything that the plaintiff has previously mentioned anywhere in the complaint." Complaints with such obvious deficiencies clearly run afoul of the specificity required by Rule 8(a)(2) and *Iqbal*, and therefore we reiterate that they are unacceptable in this Circuit.

***1357** C.

Both Regions and Fidelity moved to dismiss Bass's complaints pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6).

Although Count II alleged only that Regions and Fidelity had violated unspecified provisions of the Georgia UCC and "the banking laws," Regions and Fidelity argued that Bass's Georgia UCC and "banking law" claims should be dismissed under Rule 12(b)(1), *in their entirety*, because Bass allegedly did not have standing to bring a conversion claim under *one specific section* of the Georgia UCC—namely, Georgia Code § 11-3-420.[6] As we discuss below in Part V, this argument is nonsensical because Count II in each complaint alleges that Regions and Fidelity violated unspecified provisions of the Georgia UCC and "the banking laws," generally. Therefore, it does not matter whether Bass lacks standing to bring a claim under one specific section of the code—namely, § 11-3-420[7]—because he may have standing to bring a claim under quite literally any other provision of the Georgia UCC or "the banking laws."

[6] The full text of the statute is as follows:
The law applicable to conversion of personal property applies to instruments. An instrument is also converted if it is taken by transfer, other than a negotiation, from a person not entitled to enforce the instrument or a bank makes or obtains payment with respect to the instrument for a person not entitled to enforce the instrument or receive payment. An action for conversion of an instrument may not be brought by (i) the issuer or acceptor of the instrument; or (ii) a payee or indorsee who did not receive delivery of the instrument either directly or through delivery to an agent or a co-payee.
Ga. Code Ann. § 11-3-420(a).

[7] We have grave doubts that Bass lacks standing to bring his claims under § 11-3-420. *See infra* n.11.

Regions and Fidelity also argued that Bass's Georgia UCC and "banking law" claims should be dismissed under Rule 12(b)(6) because (1) he could not state a prima facie case of conversion under § 11-3-420, and (2) his common law claims were preempted by § 11-3-420.

Regarding the breach of contract and breach of fiduciary duty claims brought only against Fidelity in Count III and Count IV, Fidelity moved to dismiss under Rule 12(b)(6), arguing that neither count stated a claim for relief.

The District Court granted both Regions's and Fidelity's Rule 12(b)(1) motions, finding that Bass lacked standing to bring the Georgia UCC claims. The Court also agreed with Regions and Fidelity that Bass's common law claims for conversion, negligence, breach of contract, and breach of fiduciary duty were preempted by Georgia's UCC.

Apart from preemption, the Court also dismissed Bass's Count III and Count IV claims against Fidelity for breach of contract and breach of fiduciary duty under Rule 12(b)(6) because he "fail[ed] to state sufficient facts regarding the specific nature of the breach or the existence of the contract itself," and because he did not

"plausibly ple[a]d [that] a fiduciary relationship existed between [himself] and [Fidelity]"—he "merely assert[ed]" that Fidelity owed him a fiduciary duty "without any factual support." Bass appeals.

**\*1358** D.

We conclude that the District Court properly granted Fidelity's Rule 12(b)(6) motion regarding Bass's Count III breach of contract and Count IV breach of fiduciary duty claims. However, we vacate the District Court's Rule 12(b)(1) dismissals of Bass's Count II Georgia UCC claims in both complains because those rulings are incapable of meaningful review. Finally, we affirm the District Court's dismissal of Bass's Count I common law conversion and Count II common law negligence claims because they are preempted by Georgia Code § 11-3-420.

Accordingly, we affirm in part, vacate in part, and remand for further consideration.

II.

We review a district court's dismissal pursuant to Rule 12(b)(1) or Rule 12(b)(6) of the Federal Rules of Civil Procedure de novo. *Lord Abbett Mun. Income Fund, Inc. v. Tyson*, 671 F.3d 1203, 1205–06 (11th Cir. 2012).

III.

A civil complaint filed in federal court must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under well-settled Supreme Court precedent, this means that "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 570, 127 S. Ct. at 1974).

When a plaintiff files a shotgun pleading, he fails to satisfy these basic requirements. Such a pleading is never plain because it is impossible to comprehend which specific factual allegations the plaintiff intends to support which of his causes of action, or how they do so. It is not the proper function of courts in this Circuit to parse out such incomprehensible allegations, *see Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1355 n.6 (11th Cir. 2018), which is why we have stated that a district court that receives a shotgun pleading should strike it and instruct counsel to replead the case—even if the other party does not move the court to strike the pleading, *id.* at 1357–58. Accordingly, here, the District Court should have struck the complaints and given Bass an opportunity to amend them in compliance with Rule 8(a)(2) and *Iqbal*. But the Court did not do so. Therefore, once again, we are forced to review a judgment that should never have been entered. Below, we review that judgment to the extent that it is scrutable.

IV.

We first address Bass's Count III breach of contract claim against Fidelity. We agree with the District Court that Bass has failed to state a claim.

To prove a breach of contract claim under Georgia law, a plaintiff must show (1) breach, (2) the resultant damages that he suffered, and (3) that he "has the right to complain about the contract being broken." *Kuritzky v. Emory Univ.*, 294 Ga.App. 370, 669 S.E.2d 179, 181 (2008).

The District Court noted that Bass only "generally asserted" a breach of contract, without identifying "any provisions or any specific agreements that were breached, nor excerpt[ing] any relevant portions of an agreement to allege the existence of a valid contract." We agree that this was insufficient to state a claim because Bass has not alleged any general or specific provision of any contract that Fidelity might have breached.[8] Bass, **\*1359** therefore, failed to meet his pleading requirements. *See Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949 ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.' " (quoting *Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965)). Consequently, the District Court properly dismissed Bass's breach of contract claim.

[8] Moreover, we cannot see how Fidelity could have breached any contract regarding the handling of Bass's funds when Fidelity followed Bass's precise instructions and the check was personally examined and approved by Bass before he gave it to Ruth.

V.

We next address Bass's Count IV breach of fiduciary duty claim against Fidelity. We agree with the District Court that Bass has failed to state a claim.

To prove a breach of fiduciary duty under Georgia law, a plaintiff must show "(1) the existence of a fiduciary duty; (2) breach of that duty; and (3) damage proximately caused by the breach." *Griffin v. Fowler*, 260 Ga.App. 443, 579 S.E.2d 848, 850 (2003). A fiduciary duty exists "where one party is so situated as to exercise a controlling influence over the will, conduct, and interest of another or where, from a similar relationship of mutual confidence, the law requires the utmost good faith." Ga. Code Ann. § 23-2-58.

Bass's complaint states that "[d]ue to among other things, the contract and [Bass's] depositing funds with [Fidelity] for retirement, [Fidelity] owed [Bass] a fiduciary duty." We agree with the District Court that this legal conclusion lacks factual support, and therefore we are not bound to accept the assertion as true. *See Twombly*, 550 U.S. at 555, 127 S. Ct. at 1965 (noting that "courts 'are not bound to accept as true a legal conclusion couched as a factual allegation.' " (quoting *Papasan v. Allain*, 478 U.S. 265, 286, 106 S. Ct. 2932, 2944, 92 L.Ed.2d 209 (1986))).

The complaint does not state any facts that establish that Fidelity "exercise[d] a controlling influence over [Bass's] will," or owed him "the utmost good faith" under Georgia Code § 23-2-58. Nor does the complaint allege the duties, if any, imposed by contract between Bass and Fidelity. *See Hines v. FiServ, Inc.*, No. 8:08-cv-2569-T-30AEP, 2010 WL 1249838, at *2–*3 (M.D. Fla. March 25, 2010) (finding that the custodian of a non-discretionary IRA did not owe fiduciary duties to the IRA beneficiaries where the IRA agreements did not create such duties). So far as we can tell, Fidelity and Bass had an arm's-length business relationship in which Fidelity was required to handle Bass's money as he directed. And that is exactly what Fidelity did here. Fidelity followed Bass's exact instructions in issuing the check, which was personally examined and approved by Bass, to Ruth. Absent any facts that explain how, in so acting, Fidelity breached any contractual agreement between the parties, or the source, scope, and nature of an extra-contractual fiduciary duty that Fidelity owed Bass, Bass cannot state a claim for breach of fiduciary duty.

Accordingly, the District Court properly dismissed Bass's breach of fiduciary duty claim because Bass failed to adequately plead (1) that a fiduciary duty existed under Georgia Code § 23-2-58, and (2) that Fidelity breached any duty it owed to Bass when it followed his explicit instructions regarding the check.

### VI.

We now turn to the District Court's dismissals of the Count II Georgia UCC claims under Rule 12(b)(1). We find that these rulings are incapable of meaningful review, and we therefore vacate them and remand the matter to the District Court.

Bass's Count II Georgia UCC claims generally alleged that Regions and Fidelity violated unspecified provisions of Georgia's ***1360** UCC and "the banking laws."[9] It is true that Bass specifically mentioned Georgia Code § 11-4-103 and Articles 3 and 4 of the Georgia UCC, but his claims are explicitly not limited to those provisions.[10] Therefore, even if the District Court was correct that Bass does not have standing to bring a claim under Georgia Code § 11-3-420,[11] he may have standing to bring any number of claims under any other provision of the Georgia UCC or "the banking laws." As a result, the District Court's ruling is either irrelevant because Bass's Count II Georgia UCC claims were not brought under § 11-3-420, or it is incomplete because Bass might have standing to bring a claim under a different provision of the Georgia UCC. Therefore, we vacate the District Court's dismissals under Rule 12(b)(1). On remand, we suggest that the District Court instruct Bass to reallege his Georgia UCC claims, provided they have support in the law, in accordance with the pleading requirements of Rule 8 set forth by the Supreme Court in *Twombly* and *Iqbal*, so that it can enter a proper judgment on the issue.

[9] Remember, this is only a portion of the Count II claims because Count II in each complaint also contained a common law claim for negligence.

[10] Even if his claims were confined to Articles 3 and 4 of the Georgia UCC, those articles encompass more than 175 pages of text in the print version of the statute.

[11] We have serious doubts that such a ruling would be correct. The primary support for this position is *Midwest Feeders, Inc. v. Regions Bank, Inc.*, No. 1:15-CV-00013, 2016 WL 5796894, at *1 (M.D. Ga. Sept. 30, 2016), aff'd, 707 F. App'x 952 (11th Cir. 2018), an unpublished district court opinion from the Middle District of Georgia. But the

District Court—and this Court on appeal—misinterpreted (1) the Georgia UCC and (2) Georgia precedent.

First, the District Court in *Midwest Feeders* ignored that the reference to Georgia Code § 11-3-301 in § 11-3-420 is only relevant for determining whether a *third party*—i.e., the person whom the bank allegedly improperly paid—was entitled to enforce an instrument. Therefore, there is no statutory basis to conclude that § 11-3-301's incorporation into § 11-3-420 limits a plaintiff's standing to bring a claim under § 11-3-420.

Second, the District Court in *Midwest Feeders* misapplied Georgia precedent, and therefore there is no basis in Georgia caselaw to justify the District Court's holding. The District Court relied on *Jenkins v. Wachovia Bank, Nat'l Ass'n*, 309 Ga.App. 562, 711 S.E.2d 80 (2011), for the proposition that a "plaintiff with no right to enforce an allegedly converted check lack[s] standing to bring a conversion claim under the Georgia UCC." *Midwest Feeders*, 2016 WL 5796894, at *4. But that is not what *Jenkins* held. *Jenkins* held that a plaintiff cannot recover under various tort provisions of the Georgia Code (1) if the plaintiff has no ownership or legal interest in a check because the language of § 11-3-420, itself, explicitly precludes her from bringing a conversion claim, and (2) if the plaintiff also is not entitled to enforce the check at issue under § 11-3-301, because in such circumstances the plaintiff has suffered neither a violation of a legal right to the check nor any damages. 711 S.E.2d at 84. Therefore, *at most*, being entitled to enforce the check at issue is *one factor* to be considered in determining whether the Georgia Code provides a statutory right to recover in tort when a check is allegedly misappropriated. Accordingly, it is clear that the District Court in *Midwest Feeders*—and this Court on appeal—erred in holding that *Jenkins* established a *per se* rule that a lack of entitlement to enforce a check under § 11-3-301 is sufficient, standing alone, to bar a plaintiff's conversion claim in federal court on Article III standing grounds.

### VII.

Finally, we address the District Court's preemption rulings. We find that the District Court properly dismissed Bass's common law conversion and negligence claims on preemption grounds.[12]

[12] Unlike the District Court's rulings regarding standing, which we found incapable of meaningful review, we can adequately review the District Court's preemption rulings because Bass's common law claims are preempted if *any* provision of the Georgia UCC preempts his claims. Therefore, the vagueness of the complaint does not preclude our review because § 11-3-420, by itself, is sufficient to preempt Bass's common law conversion and negligence claims.

***1361** Georgia Code § 11-1-103(b) states that "the principles of law and equity, including the law merchant and the law relative to capacity to contract, principal and agent, estoppel, fraud, misrepresentation, duress, coercion, mistake, bankruptcy, and other validating or invalidating cause shall supplement [the Georgia UCC's] provisions." Therefore, "[a] common law tort action ... may sometimes lie even where the transaction is one governed by the U.C.C., because the U.C.C. does not purport to preempt the entire body of law affecting the rights and obligations of parties to a commercial transaction." *Crosson v. Lancaster*, 207 Ga.App. 404, 427 S.E.2d 864, 866 (1993). However, there is one exception where the Georgia UCC preempts common law claims—namely, if the cause of action is "displaced by the particular provisions" of the Georgia UCC. Ga. Code Ann. § 11-1-103(b).

One such provision is Georgia Code § 11-3-420, which governs the conversion of instruments. More specifically, for our purposes, § 11-3-420 dictates under what circumstances a person can recover from a bank when the bank improperly pays the proceeds of a check to a third party. Ga. Code Ann. § 11-3-420(a). Therefore, our task is to determine whether § 11-3-420 displaces Bass's common law conversion and negligence claims. We conclude that it does.

Although no Georgia court has ever stated a precise test for determining whether a common law cause of action is "displaced by the particular provisions" of the Georgia UCC, courts have noted a few considerations that are important: (1) whether the code "provides a comprehensive remedy for the parties to a transaction," *First Ga. Bank v. Webster*, 168 Ga.App. 307, 308 S.E.2d 579, 581 (1983); (2) whether the code "expressly articulates the legal duties of the parties," *Promissor, Inc. v. Branch Bank and Tr. Co.*, No. 1:08-CV-1704-BBM, 2008 WL 5549451, at *3 (N.D. Ga. Oct. 31, 2008); (3)

whether a common law action would generally "thwart the purposes of the Code," *id.*; and (4) whether allowing a parallel common law action would "introduc[e] conflicting burdens of proof and potentially allow[ ] for inconsistent verdicts." *Id.* at *4.

Here, we agree with the District Court that § 11-3-420 preempts Bass's common law claims for conversion and negligence. First, § 11-3-420 provides Bass with a "comprehensive remedy" for the exact conduct alleged in his complaints—namely, that Regions and Fidelity improperly paid the proceeds of the check into the suspicious account of a third party. Second, allowing a parallel common law action would "thwart the purposes of the Code" by introducing conflicting burdens of proof and potentially allowing for inconsistent verdicts because common law claims for conversion and negligence both require proof of completely different elements than those required to state a § 11-3-420 claim.[13] In other words, because the **\*1362** Georgia UCC explicitly defines when a plaintiff may recover in circumstances such as this, it would undermine the statutory scheme to allow Bass to circumvent the Georgia UCC's provisions by simultaneously litigating the same claims under two different legal standards—i.e., the common law and the Georgia UCC. Therefore, the District Court properly held that § 11-3-420 preempts Bass's common law conversion and negligence claims.

[13] For example, a common law conversion claim under Georgia law requires proof of "(1) title to the property or the right of possession, (2) actual possession in the other party, (3) demand for return of the property, and (4) refusal by the other party to return the property," *Johnson v. First Union Nat'l Bank*, 255 Ga.App. 819, 567 S.E.2d 44, 48 (2002), and a common law negligence claim requires proof of "[(1)] [a] legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm," (2) a breach, "(3) a legally attributable causal connection between the conduct and the resulting injury," and (4) damages. *Lee St. Auto Sales, Inc. v. Warren*, 102 Ga.App. 345, 116 S.E.2d 243, 245 (1960). Most of these elements, if not all, are completely different than those required to prove a claim under Georgia Code § 11-3-420, which would require Bass to prove only that Regions and Fidelity made a payment to someone "not entitled to enforce the instrument or receive payment." Ga. Code Ann. § 11-3-420(a).

VIII.

Accordingly, the judgment of the District Court is

**AFFIRMED in part, VACATED in part, and REMANDED for further consideration.**

**All Citations**

947 F.3d 1352, 101 UCC Rep.Serv.2d 50, 28 Fla. L. Weekly Fed. C 755

End of Document

© 2025 Thomson Reuters. No claim to original U.S. Government Works.