# MAZZOLA LINDSTROM LLP

RICHARD E. LERNER
PARTNER
RICHARD@MAZZOLALINDSTROM.COM
O: 646-813-4345
C: 917-584-4864

September 16, 2025

*Via CM/ECF*

David J. Smith
Clerk of the Court
U.S. Court of Appeals for the Eleventh Circuit
56 Forsyth Street, N.W.
Atlanta, GA 30303

Re: *Jiangmen Benlida Printed Circuit Co., Ltd. v. Circuitronix, LLC*, No. 23-14102

Dear Mr. Smith:

Appellant Jiangmen Benlida Printed Circuit Co., Ltd. ("Benlida") submits this letter in response to the 28j letter of Circuitronix, LLC ("CTX-US") dated September 15, 2025 (DE 58). Contrary to CTX-US's argument in its letter, Benlida did allege the promise that CTX-US had breached – *viz.*, the promise to pay for PCBs manufactured by Benlida for CTX-US's exclusive customers.

The facts of this case are like those of *Caterpillar Financial Services Corp. v. Venequip Machinery Sales Corp.*, 147 F.4th 1341 (11th Cir. 2025), a case which directly supports Benlida's argument on appeal.

In *Estate of Bass v. Regions Bank, Inc.*, 947 F.3d 1352 (11th Cir. 2020), the plaintiff sued for breach of contract, but entirely failed to specify a contract, let alone a specific contractual provision, that was breached. *Id.* at 1358. In the words of this Court in *Caterpillar*, the *Bass* plaintiff had "never alleged any promise at all." *Id.* at 1348.

*Caterpillar* stands for the proposition that a breach-of-contract plaintiff must merely make a plausible allegation that the defendant did not perform as promised under a valid contract, and – once that is alleged – "need not allege anything with particularity" such as the specific term breached. *Id.* at 1348-1349. "[W]e have never adopted a heightened pleading requirement for a breach of contract claim." *Id.* at 1349.

Benlida's Third Amended Complaint ("TAC," ECF-26) properly set forth a "short and plain statement of the claim" for breach of contract. FRCP 8(a)(2).

Benlida manufactured and delivered circuit boards for CTX-US pursuant to purchase orders, worth a total of $13,655,335.93. (ECF-26 ¶¶ 8, 12).

These orders were invoiced in the form of 171 "CCT-HK"-denominated invoices, ¶¶ 261-431, and 248 "CCT"-denominated invoices (ECF-26 ¶¶ 13-260), all specifically named in the TAC.

As alleged, CTX-US "agreed" to a "contract" with Benlida that obligated it to pay these invoices, both the "CCT-HK"-denominated ones and the "CCT"-denominated ones. (ECF-26 ¶¶ 439-40). Indeed, CTX-US, in its answer, understood which contract the TAC referred to, and admitted that it existed (ECF-34, p.3, ¶¶ 447-448); and, in its counterclaims, again acknowledged the contract between it and Benlida – specifically identifying by name the Manufacturing Agreement and the 2016 Letter Agreement. (ECF-34, p.15, ¶ 43).

The amount owed on the invoices, as alleged, included a price increase applied across the invoices, and the terms of the price increase are described in the TAC, and CTX-US agreed to them. (ECF-26 ¶¶ 433, 436). All of these goods were "sold to defendant [CTX-US]" (ECF-26 ¶ 439), and **CTX-US did promise to pay for them** (ECF-26 ¶ 439): "the latter [CTX-US] agreed to pay the former [Benlida] therefor.")

Though Benlida performed by delivering the goods (ECF-26 ¶ 440), CTX-US failed to pay for them (ECF-26 ¶ 443), causing $13,655,335.93 in damages to Benlida. (ECF-26 ¶ 445). That is, as alleged, CTX-US breached its promise to pay, and thereby caused damage to Benlida.

CTX-US's argument that "Benlida's complaint … failed to allege what promise [CTX-US] breached" is thus flatly false. Unlike in *Bass*, Benlida plausibly alleged that CTX-US promised and "agreed" to pay the 419 named invoices pursuant to an alleged valid "contract" (ECF-26 ¶¶ 439-440), which CTX-US understood – having so alleged in its answer and counterclaims (ECF-34, p.3, ¶¶ 447-448; ECF-34, p.15, ¶ 43) – to be the Manufacturing Agreement and 2016 Letter Agreement.

The complaint was sufficient under *Caterpillar*, as there is no heightened pleading requirement for a breach-of-contract claim, and no greater particularity is needed in order to state such a claim. *Id.* at 1348-1349.

Nor did Benlida "pivot" to a different basis for breach of contract on summary judgment. Benlida's summary-judgment argument was a particularization and elaboration of *how* the terms of the contract made CTX-US

directly liable for these invoices. CTX-US had, as pled, agreed to be responsible for the purchases. And orders of PCBs by CTX-HK for CTX-US's "Exclusive Customers" must have been *CTX-US's* purchases in light of the exclusivity language of the contract.

As a natural consequence of that, Benlida properly applied payments to old "CCT-HK"- and "CCT"-denominated invoices on a FIFO basis, not because the CCT-HK-denominated invoices represented CTX-HK "debts" that CTX-US was vicariously responsible for, but because the "CCT-HK"-denominated invoices represented ***CTX-US's own debts***, by virtue of the fact that orders for CTX-US's "Exclusive Customers" were the responsibility of CTX-US. The only party with payment obligations under the Manufacturing Agreement was CTX-US. This is not a matter of vicarious tort liability; it is a principal of basic contract law.

There was no "pivot" to a basis of liability that was independent of the contract. CTX-US argues, in sum, that all of this "how" should have been pled in the complaint. But that is the heightened pleading requirement of particulars that *Caterpillar* rejects. Had CTX-US desired more particulars in the complaint, it could have moved for a more definite statement, but it did not. FRCP 12(e); *Caterpillar* at 1350. Thus, the new cases that have been brought to the Court's attention by CTX-US actually support Benlida, and mandate reversal of the district court's orders.

Indeed, CTX-US did infer – and thus received ample notice – that Benlida was suing it for the "CCT-HK"-denominated invoices, having stated in its memorandum in support of its motion for summary judgment (ECF-178, p.10) that "one of the primary reasons for entering into the Letter Agreement in 2016 was to **formally** add CTX-HK as a party to the Manufacturing Agreement, allowing it to be a full participant, and eliminating the need for CTX[-US] to provide separate assurances for particular obligations that may be incurred **by CTX-HK on CTX[-US]'s behalf**." (Emphasis added). Clearly, CTX-US understood that CTX-HK had been acting on its behalf – formally or informally – when it placed orders for CTX-US's Exclusive Customers.

Respectfully submitted,
MAZZOLA LINDSTROM LLP
*/s/ Richard E. Lerner*
Richard E. Lerner

## CERTIFICATE OF INTERESTED PERSONS AND
## CORPORATE DISCLOSURE STATEMENT

Appellant submits this list, which includes the trial judge, and all attorneys, persons, associations of persons, firms, partnerships, or corporations that have an interest in the outcome of this review:

1. Circuitronix, LLC

2. Cole, IV, Chauncey

3. Goodman, Jonathan, U.S. District Magistrate Judge

4. Huang, Hanchao (Douglas)

5. Huang, Sulan (Tracy)

6. Huang, Xiangjiang

7. Jiangmen Benlida Printed Circuit Co., Ltd.

8. Kukreja, Rishi

9. Lerner, Richard E.

10. Martinez, Christina H.

11. Mazzola, Jean-Claude

12. Mazzola Lindstrom LLP

13. Parisi, Mark

14. Paulikens, Randall

15. Podhurst Orseck, P.A.

MAZZOLA LINDSTROM LLP

16. ROK Printed Circuit Co., Ltd.

17. Rosenthal, Stephen F.

18. Scola, Jr., Robert N., U.S. District Court Judge

19. Weinshall, Matthew P.

20. Wu, Yukun (Roger Wu)

## Corporate Disclosure Statement

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rules 26.1-1 through 26.1-3, Appellant states:

1. There is no subsidiary, parent corporation, or publicly held corporation that owns 10% or more of the stock of Circuitronix, LLC.

MAZZOLA LINDSTROM LLP
*/s/ Richard E. Lerner*
Richard E. Lerner