**NOT FOR PUBLICATION**

In the

# United States Court of Appeals

For the Eleventh Circuit

---

No. 23-14102

---

JIANGMEN BENLIDA PRINTED CIRCUIT CO., LTD.,

*Plaintiff-Counter Defendant*
*Appellant,*

ROK PRINTED CIRCUIT CO., LTD.,

*Plaintiff,*

*versus*

CIRCUITRONIX, LLC,

*Defendant-Counter Claimant*
*Appellee.*

---

Appeal from the United States District Court
for the Southern District of Florida
D.C. Docket No. 0:21-cv-60125-RNS

---

Before JILL PRYOR and LUCK, Circuit Judges, and COVINGTON,* District Judge.

PER CURIAM:

This case arises out of a dispute over unpaid invoices for circuit boards. Jiangmen Benlida Printed Circuit Co. (who the parties call Benlida) sued Circuitronix, LLC, alleging that Circuitronix owed more than $13 million in outstanding invoices for circuit boards bought from Benlida. Circuitronix countersued, alleging that it overpaid for the circuit boards and Benlida was the one that owed money. The district court granted summary judgment for Circuitronix on Benlida's claims. And a jury awarded around $7 million to Circuitronix on its counterclaims. Benlida appeals the summary judgment and verdict. After careful review and oral argument, we affirm.

## FACTUAL BACKGROUND

Three agreements controlled the relationship between Benlida and Circuitronix: the manufacturing agreement; the business authorization; and the letter agreement. A brief description of the three will be helpful before dipping into the facts.

### *The Manufacturing Agreement*

Benlida, a Chinese company, makes printed circuit boards. These are plastic boards that serve as the base for complicated

---

* Honorable Virginia M. Covington, United States District Judge for the Middle District of Florida, sitting by designation.

electronics. In 2012, Benlida entered into a manufacturing agreement with Circuitronix, a United States company that sells circuit boards. Under the agreement, Benlida would make circuit boards and sell them to Circuitronix. Circuitronix, in turn, would sell them to its "exclusive" customers in the United States. Benlida agreed not to compete against Circuitronix by selling circuit boards to, or otherwise soliciting or contracting with, Circuitronix's exclusive customers.

*The Business Authorization*

In 2014, a business authorization added that Circuitronix would be responsible for the circuit boards that Circuitronix (Hong Kong), Ltd., its Hong Kong affiliate, ordered from Benlida for the exclusive customers. Specifically, Circuitronix "authorize[d]" Circuitronix-HK to place orders to Benlida on "[Circuitronix's] behalf" and agreed to "assume[] all [Circuitronix-HK's] debts due to th[o]se orders."

*The Letter Agreement*

But the 2014 agreement was superseded by a 2016 "[l]etter [a]greement" that reaffirmed the 2012 manufacturing agreement and added a surcharge that Circuitronix would pay to Benlida. The letter agreement declared that the manufacturing agreement "remain[ed] in full force and effect" except "as expressly modified." The letter agreement "represent[ed] the parties' full and complete understanding" and, along with the manufacturing agreement, "supersede[d] any and all prior agreements or understandings between [Circuitronix] and [Benlida]." That included the business

USCA11 Case: 23-14102 Document: 65-1 Date Filed: 08/17/2026 Page: 4 of 17



authorization that put Circuitronix on the hook for Circuitronix-HK's debts.

*The Proposed Agreement*

In 2018, Benlida sent Circuitronix a proposed agreement that would again obligate Circuitronix to make payments for orders made by Circuitronix-HK. The 2018 agreement, as proposed, would have "entrusted" Circuitronix to "act as [Circuitronix-HK's] legitimate payer, authorizing it to act on behalf of [Circuitronix-HK] for payment, and to pay when [Circuitronix] receive[d] instructions from [Circuitronix-HK]." The proposed agreement also would have made Circuitronix the agent and representative of Circuitronix-HK and bound Circuitronix-HK to "bear all the legal consequences and liabilities of [Circuitronix's] actions." Circuitronix rejected the proposal.

*The Dispute*

Starting in 2018, when Circuitronix ordered circuit boards from Benlida, Benlida filled the orders, invoiced Circuitronix for the circuit boards, and Circuitronix paid its invoices—totaling more than $12.2 million. At the same time, Circuitronix-HK also ordered circuit boards for Circuitronix's exclusive customers. Benlida invoiced Circuitronix-HK for its orders. Circuitronix-HK, however, did not pay on time. Benlida applied the money Circuitronix paid for its orders to Circuitronix-HK's outstanding balance. By 2020, Circuitronix-HK owed Benlida more than $12 million.

**PROCEDURAL HISTORY**

To recoup the $12 million, Benlida sued Circuitronix, alleging that Circuitronix ordered circuit boards from Benlida, Benlida delivered them, and Circuitronix "accepted [them] without complaint." Yet, Benlida alleged, Circuitronix did not pay its invoices and owed more than $13.6 million. Benlida listed the 419 unpaid invoices that Circuitronix had allegedly "expressly agreed to pay." Nearly half of the invoices contained the identifier "HK," as in "BLDCCT-HK190403002" and "CCT-BLD-190329001(HK)." Other invoices listed in the complaint—like "CCT-BLD-190426003"—did not have the HK designation. Benlida's complaint raised two counts—one for breach of the manufacturing agreement and one for account stated.

Circuitronix answered the complaint, alleging that it paid its "alleged debt in full." And it brought two counterclaims against Benlida. First, Circuitronix claimed that Benlida breached the manufacturing and letter agreements by "accepting and retaining, but failing to properly credit, millions of dollars in payments." Second, Circuitronix asserted that Benlida breached its fiduciary duties.

*Circuitronix's Summary-Judgment Motion on Benlida's Claims*

After discovery, Circuitronix moved for summary judgment on Benlida's claims. First, Circuitronix argued that it was not financially responsible for the HK invoices because Benlida admitted those were issued to Circuitronix-HK and not Circuitronix. Since there was no dispute that Circuitronix and Circuitronix-HK were "separate corporate entities," and Benlida "failed to plead any facts"

showing that the parties ignored corporate formalities or agreed to hold one company liable for the debts of another, Circuitronix could not be held liable for Circuitronix-HK's invoices. Partial summary judgment was thus warranted on Benlida's claims based on the Circuitronix-HK invoices.

Second, Circuitronix argued that summary judgment was due on the claims based on its invoices because Benlida admitted that Circuitronix was invoiced for "just over $10 million" but had paid Benlida "over $12.2 million." So, there was no dispute that Circuitronix overpaid for the circuit boards it ordered and for which it was invoiced.

In response, Benlida asserted that Circuitronix was liable for the HK invoices because Circuitronix-HK "functioned" either as Circuitronix's agent or alter ego when it placed orders for Circuitronix's exclusive customers. The record, Benlida wrote, "raise[d] a triable issue of material fact concerning whether [Circuitronix-HK] was [Circuitronix's] agent." And for the Circuitronix invoices, Benlida argued that it applied Circuitronix's payments to both Circuitronix and Circuitronix-HK's outstanding invoices on a "first in, first out" basis, an accepted accounting method "in Florida." That was why there was still a balance due for Circuitronix.

Circuitronix replied that this was the first time Benlida raised its agency and alter-ego theories. Because Benlida failed to plead any facts in its complaint sufficient to give "fair notice" of these theories, Circuitronix asked the district court to disregard them at summary judgment.

*The Summary Judgment on Benlida's Claims*

The district court granted summary judgment for Circuitronix on Benlida's claims. As to the Circuitronix-HK invoices, the district court explained that the complaint "supplie[d] neither any notice nor factual allegations that could be construed as advancing" the agency and alter-ego theories. That failure was fatal, the district court concluded, because the pleading rules required that the complaint put Circuitronix "on notice of, at a minimum, the grounds supporting [Benlida's] claims," which it did not do. Since the complaint failed to put Circuitronix on notice of the "vicarious liability" theories, Benlida could not rely on them in response to Circuitronix's summary-judgment motion. Without the vicarious liability theories, there was no basis to hold Circuitronix responsible for Circuitronix-HK's invoices.

As to the Circuitronix invoices, the district court concluded there was no dispute that Circuitronix had paid Benlida more than $12.2 million for around $10 million worth of circuit boards. And because Benlida did not allege that Circuitronix was vicariously liable for Circuitronix-HK's invoices, there was no basis to hold Circuitronix liable for them. Thus, the district court found "no genuinely disputed issue of material fact as to Circuitronix's liability on either of Benlida's claims."

*The Trial on Circuitronix's Counterclaims*

The case then proceeded to trial on Circuitronix's counterclaims. Benlida proffered Randall Paulikens as an accounting expert. Paulikens, Benlida said, would testify that the money

Circuitronix paid to Benlida was properly applied to Circuitronix-HK's invoices using first-in-first-out accounting principles. Using first-in-first-out principles, and treating Circuitronix-HK as Circuitronix's agent and alter ego, Paulikens applied the money Circuitronix paid on its own invoices to Circuitronix-HK's debt first, leaving Circuitronix with an outstanding balance.

Circuitronix moved to exclude Paulikens's opinion testimony because the pleadings still had not been amended to add an agency or alter-ego theory that would hold Circuitronix financially responsible for Circuitronix-HK's invoices. Without amended allegations, Paulikens's expert testimony was irrelevant to the counterclaims.

The district court granted Circuitronix's motion, precluding Paulikens from testifying that Circuitronix was financially responsible for Circuitronix-HK's invoices. As the district court explained, "based upon the pleadings," Paulikens's testimony that Circuitronix was financially responsible for Circuitronix-HK's invoices was not relevant. Because Benlida did not plead that Circuitronix was vicariously liable for Circuitronix-HK's debts, it could not introduce expert testimony in support of agency or alter-ego theories.

The jury found for Circuitronix and awarded it $7,585,847 in damages. Benlida appeals the summary judgment on its claims for Circuitronix and the verdict on Circuitronix's counterclaims.

## STANDARD OF REVIEW

We review de novo a district court's summary judgment.

*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, 60 F.4th 1314, 1318 (11th Cir. 2023). And we review for abuse of discretion a district court's exclusion of expert testimony for trial. *Perez v. Owl, Inc.*, 110 F.4th 1296, 1301 (11th Cir. 2024).

**DISCUSSION**

We begin our discussion by reviewing the summary judgment for Circuitronix on Benlida's claims. Then, we consider the one error Benlida raises with the trial on Circuitronix's counterclaims—the exclusion of Paulikens's expert testimony.

*The Summary Judgment for Circuitronix on Benlida's Claims*

The district court granted summary judgment for Circuitronix on Benlida's claims in two parts. First, as to the Circuitronix-HK invoices, the district court granted summary judgment because under Florida law, Circuitronix could not be liable for Circuitronix-HK's invoices absent allegations that Circuitronix-HK was Circuitronix's agent or alter ego. Because Benlida didn't plead either, it was not entitled to damages against Circuitronix for Circuitronix-HK's invoices. Second, as to the Circuitronix invoices, the district court granted summary judgment because the undisputed evidence showed that Circuitronix paid more than it owed. Benlida challenges both parts on appeal.

A. <u>The Circuitronix-HK Invoices</u>

We start with the part of the summary judgment based on the Circuitronix-HK invoices. In federal court, a complaint must "give the defendant fair notice of what the [plaintiff's] claim is and

the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citation modified). The fair notice requirement is embedded in Federal Rule of Civil Procedure 8, which requires the plaintiff to make a "short and plain statement" of its claims "showing that [it is] entitled to relief." Fed. R. Civ. P. 8(a)(2). To meet the short-and-plain-statement requirement, the plaintiff must include "allegations as to every material point necessary to sustain a claim on any legal theory" it pursues. *Ray v. Comm'r, Ala. Dep't of Corr.*, 915 F.3d 689, 697 n.3 (11th Cir. 2019); *see* Fed. R. Civ. P. 12(b)(6) (requiring a plaintiff to plausibly allege facts supporting his claims to avoid dismissal, as interpreted in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)).

If it doesn't—if the complaint "provide[s] no notice whatsoever" of the legal theory, *Hurlbert v. St. Mary's Health Care Sys., Inc.*, 439 F.3d 1286, 1297 (11th Cir. 2006), or no "factual allegations that could possibly be construed" as advancing it, *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1258 (11th Cir. 2012), *abrogated on other grounds by New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1 (2022)—the theory need not be considered, *see Hurlbert*, 439 F.3d at 1297. Although Rule 8 sets forth "a liberal pleading standard for civil complaints," *Gilmour v. Gates, McDonald & Co.*, 382 F.3d 1312, 1314 (11th Cir. 2004), the liberal standard does not allow new theories to be raised for the first time at summary judgment, *see MSP*, 60 F.4th at 1319. Instead, the "proper procedure for the [plaintiff] to assert a new 'basis for entitlement' [i]s to seek to amend [its] complaint." *Sorenson v. Delta Air Lines, Inc.*, 174 F.4th 54, 64 n.3 (11th Cir. 2026) (quoting *Hurlbert*, 439 F.3d at 1297); *see Gilmour*,

382 F.3d at 1315 (providing that a plaintiff "may not amend her complaint through argument in a brief opposing summary judgment").

*Dukes v. Deaton*, 852 F.3d 1035 (11th Cir. 2017), and *MSP* are instructive. In *Dukes*, the plaintiff brought an excessive-force claim against a police officer who injured the plaintiff while executing a search warrant of the plaintiff's boyfriend's apartment by throwing a flashbang grenade into the apartment's bedroom where the plaintiff was sleeping. *Id.* at 1039. The plaintiff also sued the officer's supervisor. *Id.* To successfully bring a claim against the supervisor, who did not throw the grenade, the plaintiff had to plead some theory of supervisory liability. She did that by alleging that the supervisor failed to train the officer who threw the grenade. *Id.* at 1045. But in her summary-judgment response, the plaintiff tried to add a new, alternative theory of liability that the supervisor was a direct participant in using the flashbang. *Id.* at 1046. We held that the personal-participation theory was new—a "distinct ground" for liability—and could not be raised for the first time at summary judgment. *Id.*

And in *MSP*, the plaintiff alleged that a primary insurer was contractually obligated to pay a Medicare beneficiary's medical expenses. 60 F.4th at 1319–20. The parties litigated the case as if the contractual obligation came from the insurance policy. *See id.* Yet in response to the defendant's summary-judgment motion, the plaintiff, for the first time, mentioned that the contractual obligation was based on a settlement agreement. *Id.* at 1319. We agreed

with the district court that this was a new theory of liability that had not been alleged in the complaint, even though the complaint generally referred to a breach of contract. *Id.* at 1319–20. The complaint, we explained, "did not give [] notice" of the theory and the plaintiff could not press it at summary judgment for the first time. *Id.*

Benlida's new agency and alter-ego theories of liability suffer from the same problem: Benlida did not allege that Circuitronix was liable for Circuitronix-HK's invoices as its principal or alter ego. Then, for the first time at summary judgment, Benlida argued that Circuitronix-HK was Circuitronix's agent or alter ego, and thus Circuitronix was financially responsible for Circuitronix-HK's invoices. These were new theories of liability that had not been alleged in the complaint. The district court was right not to consider them. *See Dukes*, 852 F.3d at 1046; *MSP*, 60 F.4th at 1319–20.

Benlida offers two responses. First, it argues that it was not required to allege an agency or alter-ego theory because, in Florida, those theories are implicit in a breach-of-the-manufacturing-agreement claim. But the pleading rules are procedural, not substantive, and when a case arises under diversity jurisdiction in federal court, as here, we apply federal, not state, procedural law. *See Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014). Under the federal pleading rules, agency and alter ego must be pleaded in the complaint.

*Molinos Valle Del Cibao, C. por A. v. Lama*, 633 F.3d 1330 (11th Cir. 2011), shows how the federal pleading rules work for agency

or alter ego under Florida law. In *Molinos*, the plaintiff's complaint asserted an alter-ego theory to hold the individual defendants liable for the actions of corporate entities. *Id.* at 1335–36, 1338, 1348, 1351. But the complaint did not allege that the individual defendants were agents for the corporate entities. *Id.* at 1351. The plaintiff did not use the word "agent" until trial. *Id.* at 1347–48, 1352. When the plaintiff tried to bring up an agency theory for the first time at trial, the district court refused to consider the new theory of liability. *Id.* We held that the district court properly refused to consider the new agency theory because it was not pleaded in the complaint. *Id.* at 1352. To raise an agency theory, we said, the plaintiff should have "move[d] to amend the complaint." *Id.*

That's what Benlida needed to do here. Benlida did not plead that Circuitronix was liable for Circuitronix-HK's invoices as its principal or alter ego, and it did not suggest otherwise until the response to Circuitronix's summary-judgment motion. *See id.* at 1351–52. Benlida, in fact, alleged less than the *Molinos* plaintiff. While the *Molinos* plaintiff alleged some facts about other corporate entities involved in the agency relationship, Benlida didn't mention Circuitronix-HK, much less include any factual allegations about its role in the transactions or its relationship with Circuitronix.[1] *See id.* at 1338, 1351. The failure to include agency or alter-ego theories in its complaint—or any facts that would give fair

[1] At no point in the complaint, for example, did Benlida allege that Circuitronix-HK placed orders "on behalf of" or "for" Circuitronix or that Circuitronix "controlled" or "acted as" Circuitronix-HK.

notice that Circuitronix was liable for Circuitronix-HK's invoices under one or both of these theories—precluded Benlida from raising these theories at summary judgment.[2] *See Hurlbert*, 439 F.3d at 1297; *GeorgiaCarry.Org*, 687 F.3d at 1258.

Second, Benlida contends that by listing the invoices with the HK identifier it plausibly alleged that Circuitronix was obligated to pay for them under the manufacturing agreement. But Benlida only alleged that Circuitronix failed to pay for the circuit boards it ordered and accepted on its own behalf. Nothing in the complaint suggests—or explains how—Circuitronix was responsible for orders placed by a separate corporate entity.

We do not "easily disregard" corporate formalities to hold one entity liable for another without a valid legal theory like agency or alter-ego liability. *See Molinos*, 633 F.3d at 1349 (citing *Roberts' Fish Farm v. Spencer,* 153 So. 2d 718, 721 (Fla. 1963)). Circuitronix could not be held responsible for invoices for another corporate entity since the complaint never alleged any basis for such liability. *See id.*; *see also Palma v. S. Fla. Pulmonary & Critical Care, LLC*, 307 So. 3d 860, 866 (Fla. 3d DCA 2020) (noting that it is a "deeply ingrained" principle that limited liability companies are

[2] Benlida also asserts that the district court should have afforded it leave to amend the complaint to add an allegation about agency or alter-ego liability. But the district court was not required to grant leave to amend sua sponte when Benlida never moved to amend on that basis. *See Wagner v. Daewoo Heavy Indus. Am. Corp.*, 314 F.3d 541, 542 (11th Cir. 2002) (en banc). Nor are we required to remand to permit amendment when Benlida never requested to do so below. *See id.* at 544–45.

"autonomous legal entit[ies]" under Florida law). Thus, the district court did not err in granting summary judgment for Circuitronix on Benlida's claims based on the Circuitronix-HK invoices.

B. <u>The Circuitronix Invoices</u>

That leaves the part of the summary judgment based on the Circuitronix invoices. As to that part, it is undisputed that Circuitronix paid the full amount: Benlida admitted that Circuitronix paid more than $12.2 million for about $10 million worth of circuit boards that it received from Benlida. In other words, Circuitronix overpaid.

While Benlida argues it used a first-in-first-out accounting practice to apply Circuitronix's payments to Circuitronix-HK's invoices, that argument fails for the same reasons we explained above. Benlida's accounting practice relies on applying Circuitronix's payments to a different corporate entity, Circuitronix-HK. But Benlida didn't plead an agency or alter-ego theory that would put Circuitronix on the hook for Circuitronix-HK's invoices. Without those allegations, there was no basis to hold Circuitronix liable for Circuitronix-HK. *See Molinos*, 633 F.3d at 1349; *Palma*, 307 So. 3d at 866. The district court, therefore, did not err in granting summary judgment for Circuitronix on Benlida's claims based on the Circuitronix invoices.

*The Exclusion of Benlida's Expert Testimony at Trial*

Benlida raises one issue with the trial on Circuitronix's counterclaims. It contends that the district court abused its discretion by excluding Paulikens's expert testimony.

Benlida proffered that Paulikens would testify that, under first-in-first-out accounting practices, Circuitronix did not overpay for the circuit boards because the excess money Circuitronix paid on its invoices was applied to the outstanding balance for Circuitronix-HK's invoices.

The district court did not abuse its discretion in excluding this testimony. Under Florida law, one corporate entity is not responsible for the debts of another absent an agency relationship or allegations that the entities were the alter ego of each other (or some other theory of vicarious liability). *See Palma*, 307 So. 3d at 866; *Spencer,* 153 So. 2d at 721; *cf. Urrea v. Koplow*, 359 So. 3d 1212, 1215 (Fla. 3d DCA 2023) (concluding that a common law rule in Florida that a creditor "was free to apply the funds to whichever of the debtor's multiple debts . . . it desired" did not apply when the debts were for "two separate debtors"). Because Benlida did not plead that Circuitronix-HK was Circuitronix's agent or alter ego, then, Circuitronix was not financially responsible for Circuitronix-HK's invoices. By trial, Benlida still had not amended its pleadings, so it was not entitled to introduce evidence on an unpleaded theory of liability.

*Molinos* is directly on point. There, as here, the plaintiff tried to raise a new agency theory at trial. *See* 633 F.3d at 1351. The district court excluded the agency theory because the plaintiff did not plead it. *See id.* at 1351–52. We held that the district court properly refused to consider the new theory because the plaintiff never moved to amend its complaint to add the agency theory. *Id.*

As in that case, we "follow the district court's lead and refuse to consider" Benlida's agency and alter-ego theories because Benlida did not plead them. *See id.* at 1352.

In response, Benlida argues that it alleged offset in its answer and the offset allegation was sufficient to plead that Circuitronix was financially responsible for Circuitronix-HK's invoices. But pleading offset did not give Circuitronix fair notice that Benlida was trying to pierce the corporate veil to hold one entity liable for the debts of the other.

## CONCLUSION

In sum, we affirm the district court's summary judgment for Circuitronix on Benlida's claims and the judgment for Circuitronix on its counterclaims.

**AFFIRMED**.